discretion in admitting the [recorded telephone conversation between Higgs and Grayson] and charging the jury that Higgs' silence could be considered an admission." *Id.* In other words, appellate counsel's Sixth Amendment argument on direct appeal, which the Fourth Circuit was certainly aware of, gave it no pause and presented no obstacle.

Even if appellate counsel failed to adequately raise the Sixth Amendment objection, their performance would still have been reasonable. As of the time of Higgs' direct appeal in 2003, there was clear legal support for the admission of the recording as an adoptive admission because, not long before, the Fourth Circuit had ruled that "a party may manifest adoption of a statement in any number of ways, including [through] words, conduct, or silence." *United States v. Robinson*, 274 F.3d 371, 383 (4th Cir. 2001) (citing *Marshall v. Young,* 833 F.2d 709, 716 n. 3 (7th Cir.1987)). Furthermore, as just observed in the context of trial counsel's failure to raise a Sixth Amendment objection, case law suggested that, when a statement forms the basis for an adoptive admission, the defendant has no claim under the Confrontation Clause. Accordingly, any further argument by appellate counsel would in all likelihood have been similarly futile. Appellate counsel could have reasonably decided to forego any further Sixth Amendment objection in this case. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000) (holding that failure to make a futile objection does not amount to ineffective assistance).

Because both trial and appellate counsel did not perform deficiently in respect of Confrontation Clause and due process issues, there was no prejudice to Higgs as to the probable outcome of his case.

### Claim 6: Denial of Effective Assistance of Counsel at Sentencing

Higgs next argues his trial attorneys rendered ineffective assistance at sentencing by failing to: 1) obtain his school records, which would have illustrated that he was diagnosed as

learning disabled from an early age and was emotionally disturbed and depressed due at least in part to his mother's death; 2) obtain a pre-sentence report from a criminal fraud proceeding against Higgs that was prepared in 1996; 3) secure the testimony and criminal records of Higgs' father, Alphonso Higgs, who would have admitted that he was an absentee father with serious drug addictions, who would have testified that he verbally and physically abused both Higgs' mother and Higgs himself; 4) locate and present testimony of Higgs' mother's younger sister, Nancy Lee Riley, and her older brother, Richard Bennett, who would have corroborated the testimony regarding Alphonso Higgs' abuse, and who would have testified to the impact Higgs' mother's death had on 10-year-old Higgs; and 5) provide the defense's retained mental health experts with mitigating evidence in the form of Higgs' school records and testimony from Higgs' father, aunt, and uncle detailing Higgs' abusive upbringing. Higgs also argues that his trial attorneys rendered ineffective assistance during the penalty phase by deciding to limit mitigating evidence when the Government decided to drop a claim of future dangerousness from its presentation of aggravating circumstances. Specifically, he says trial counsel's decision to limit evidence of his personal history to events before he was 18, in order to avoid opening the door to bad acts evidence in rebuttal, was strategically unsound because evidence of his past bad acts had already been introduced during the guilt phase and already suggested through evidence of other aggravators, and because the decision was the result of a less than thorough investigation.

The Government argues that Higgs has failed to demonstrate that counsel erred or that he was in any way prejudiced by counsel's acts or omissions.

## A.

Higgs must establish that counsel's performance "fell below an objective standard of reasonableness" and that in the absence of counsel's errors a reasonable probability exists that

"the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687-88. Again, when analyzing the unreasonableness prong, the Court must defer to counsel's decisions and tactical judgments made after full investigation, though to be sure the Court need not defer when such decisions and judgments are based upon less than a full investigation. *Wiggins v. Smith*, 539 U.S. 510, 522 (2003). As for prejudice, Higgs must show a reasonable probability that, but for counsel's allegedly deficient performance, the outcome of the case would have been different. *Strickland*, 466 U.S. at 694. The Court weighs the totality of reasonably available mitigation evidence presented at trial against the totality of evidence presented in aggravation. *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000).

**B.**

The Court considers the various ways in which counsel's investigation for and presentation at sentencing were allegedly deficient.

**1.**

Higgs argues first that counsel failed to obtain certain school records, which would have demonstrated his troubled childhood and youth.

Higgs is correct that an attorney representing a capital defendant has a constitutionally-mandated duty to conduct a thorough investigation of any potential mitigation evidence in preparation for a capital sentence proceeding. *Id*. at 415 (O'Connor, J., concurring). A "thorough investigation" requires diligent "efforts to discover *all reasonably available* mitigating evidence." *Wiggins*, 539 U.S. at 524 (emphasis in *Wiggins*; citation omitted). However, the duty only arises where an attorney has information suggesting that such investigation is necessary. *See Ames v. Endell*, 856 F.2d 1441, 1444-45 (9th Cir. 1988) (failure to investigate a plausible scenario in defense of client when attorney and client agreed the scenario had not happened was

not ineffective); *see also Hedrick v. True*, 443 F.3d 342, 350 (4th Cir. 2006) (failure to investigate potentially mitigating evidence at sentencing regarding defendant's difficult childhood after a psychological expert did not suggest that further exploration was warranted was not ineffective); *Bacon v. Lee*, 225 F.3d 470, 481 (4th Cir. 2000) (failure to fully investigate defendant's difficult childhood was not ineffective because counsel could have reasonably concluded that the evidence presented was sufficient).

Here, counsel in fact pursued Higgs' school records, but had no reason to believe further investigation was necessary. Higgs does not dispute that when counsel requested the records, the school system provided only a transcript indicating that it purged "full cumulative" student records six years after high-school graduation, the implication being that Higgs' records had been purged. Though in fact it appears the school system retained special education records indefinitely, counsel had no reason to know or suspect that. Indeed, even if counsel had researched the district's policies, there is no reason to suppose they would have found any basis for contradicting the school system's stated policy that the record-retention schedule required only a six-year retention of special education records. Nor would counsel's knowledge that Higgs was a special education student have necessarily prompted further investigation. The school system's response regarding "full cumulative" records and its stated policy led counsel to reasonably believe that Higgs' records had been destroyed. It was not, therefore, unreasonable for counsel to fail to search further.

In any event, Higgs cannot show prejudice. Though the school records might have provided additional information indicating Higgs' struggles passing his courses as well as instances of emotional disturbance and depression, they also demonstrated that he consistently rejected efforts to assist him to grow into responsible adulthood. No reasonable probability

57

exists that the jury would have returned a more favorable verdict had the special education

records been discovered. *Williams v. Taylor*, 529 U.S. 362, 397-98 (2000).

**2.**

In his Brief, Higgs also faults counsel for failing to obtain a pre-sentence investigation

report prepared by the Maryland Department of Parole and Probation in connection with 1996

fraud charges. Here Higgs defeats his own argument that counsel's omission – assuming it

occurred – was constitutionally deficient, since he concedes that the report "would have

confirmed and corroborated [his] history of drug and alcohol abuse." Petitioner's Brief at 75. In

other words, the evidence in the report would simply have tracked other evidence already in the

case, hardly a compelling argument that counsel's performance should be judged to be

constitutionally sub-standard.

**3.**

Higgs' next claim relates to counsel's failure to secure testimony and criminal records of

Higgs' father.

Here, too, Higgs fails to demonstrate that counsel's performance "fell below an objective

standard of reasonableness." *See Strickland*, 466 U.S. at 687-88. Though Alphonso Higgs now

claims that he would have offered testimony on behalf of his son, the defense's

mitigation/specialist, Joel Sickler, testified that he had attempted to reach Alphonso Higgs prior

to the trial, but received information from two of Alphonso Higgs' children that he did not want

to participate in his son's defense. Higgs fails to acknowledge his own investigator's

unsuccessful attempts to contact Alphonso Higgs directly.

Higgs also fails to demonstrate that he was prejudiced by the absence of his father's

testimony. Alphonso Higgs' credibility would certainly have been challengeable, not only

because of his relationship to Defendant Higgs, but also because he was a convicted felon who admitted he was abusing drugs during the time period to which he would testify. In any event, the jury considered the fact that Higgs' father was an absentee parent who had a drug problem. Investigator Sickler testified that Alphonso Higgs had problems with a narcotics addiction, had a substantial criminal history including time in jail for trafficking a controlled substance, and had provided little financial or emotional support to his son. There is no reason to believe that Alphonso Higgs' verbally recounted recollections of physical abuse he was responsible for would have significantly changed the jury's verdict in this case.

**4.**

Higgs claims that counsel provided ineffective counsel by failing to present the testimony of Nancy Lee Riley (his mother's sister) and Richard Bennett (his mother's brother).

There is, however, no evidence that Higgs' lawyers were ever made aware of any particular information that these witnesses possessed that should have led the lawyers to further investigation. Beyond stating in general terms that Alphonso Higgs on occasion abused Marilyn Bennett in Defendant Higgs' presence, the witnesses' declarations would have offered no new concrete facts or specific incidents relevant to Defendant Higgs' background. Their purported testimony would have essentially tracked that of Investigator Sickler. The cases Higgs cites – which have found counsel ineffective where reasonable diligence would have *added* relevant undiscovered mitigating evidence – are distinguishable because here the additional evidence would either have been irrelevant or substantially similar to that already introduced. *See Williams,* 529 U.S. at 391-99; *Wiggins*, 539 U.S. at 510; *Rompilla v. Beard*, 125 S. Ct. 2456 (2005).

Not only has Higgs failed to demonstrate that his counsel's performance was deficient, he again fails to demonstrate prejudice. No reasonable probability exists that inclusion of the Riley-Bennett testimony would have altered the jury's understanding of Higgs' upbringing or how it may have affected his actions on the night of the murders, such that a more favorable penalty-phase verdict would have resulted. *See Williams*, 529 U.S. at 397-98. Riley and Bennett offer at best generalizations, not specific instances of abuse. Moreover, the credibility of both is open to question, given that only now, years after trial, have they come forward with statements. Finally, the jury heard testimony regarding the heavy impact Higgs' mother's death had on Higgs. Constance McKinnon, who lived with Higgs after his mother's death, specifically testified regarding the emotional impact on Higgs.

No ineffective assistance was rendered when counsel did not pursue or present the testimony of Alphonso Higgs, Nancy Lee Riley, or Richard Bennett.

**5.**

Higgs' argument regarding mental health experts Lawrence Donner, Ph.D. and Susan Feister, M.D. is somewhat hard to follow.

In his opening Motion, Higgs argues that counsel were deficient because they failed to "[enlist] the aid" of these experts. Petitioner's Motion at 67. But counsel did in fact consult these experts, which Higgs concedes was "a step in the right direction." *Id.* What Higgs apparently contends was deficient on counsel's part is that the experts were not provided "access to relevant records or lay witnesses" – presumably the school records, Alphonso Higgs, Nancy Lee Riley, and Richard Bennett. *Id.* The short answer to that argument, of course, is that since counsel were not deficient in not accessing the records or witnesses themselves, they would not be deficient for failing to transmit them to the mental health experts.

60

Higgs also appears to fault counsel for not calling either of these experts to testify – they were not in fact called – but this argument is not carried forward in his Brief in Support of his Motion or his Memorandum in Reply to the Government's Opposition. But, again, the failure to call argument, insofar as it has not been abandoned, is still premised on the fact that the experts were not provided with information that counsel cannot be faulted for not obtaining.

**6.**

As for the suggestion that counsel made an unsound decision to limit Higgs' mitigating evidence to events before his eighteenth birthday, that clearly was a matter of tactical choice. Certainly evidence of Higgs' wayward life after age eighteen was already in the mix, but counsel could fairly have decided to minimize emphasis on the multiple bad acts of Higgs adulthood, especially in recognition of the fact that future dangerousness would not be pursued as aggravation. Counsel's decision in this regard did not constitute ineffective assistance.

**Claim 7: Racial Discrimination in the Administration of the Death Penalty**

Higgs's seventh claim is that trial counsel were ineffective for failing to raise equal protection and Eighth Amendment challenges to the Federal Government's decision to pursue the death penalty against him. In support of this claim, he cites statistics maintained by the Federal Death Penalty Resource Counsel which, he maintains, suggest that the Department of Justice has sought the death penalty in a racially discriminatory manner during the years since its reintroduction.

The Court finds the equal protection and Eighth Amendment claims to be procedurally defaulted. As he concedes, until now Higgs has never argued that the Federal Government's decision to pursue the death penalty against him violated these rights. Though a procedural

61

default can be excused upon a demonstration of cause and prejudice, *see Massaro*, 538 U.S. at 504, no such relief is warranted here. Higgs has shown neither cause nor prejudice.

Statistics alone do not support a finding of discriminatory intent sufficient to strike down a death penalty scheme on equal protection grounds. *McCleskey v. Kemp*, 481 U.S. 279 (1987); *see also United States v. Bin Laden*, 126 F. Supp. 2d 256, 261 (S.D.N.Y. 2000) ("At its core, therefore, *McCleskey* stands for the notion that, by themselves, systemic statistics cannot prove racially discriminatory intent in support of an equal protection claim by a particular capital defendant."). Since petitioner has offered no proof that the Government actually decided to pursue the death penalty *in this case* for biased reasons, he may not show that his attorneys were ineffective for choosing not to raise the issue.

Nor is there the slightest basis for concluding that discovery would reveal any racial bias on the part of prosecutors. Accordingly, Higgs' request for discovery on Claim 7 is denied.

### Claim 8: Admissibility of Portions of Co-Defendant Haynes' Statements During Penalty Phase

Higgs next says that trial counsel rendered ineffective assistance during the penalty phase when they failed to raise Fifth Amendment Due Process and Sixth Amendment Confrontation Clause objections to testimony with respect to several statements made by his Co-Defendant Haynes.

Specifically, United States Park Police Captain Robert Rule testified that, according to Haynes, "[a]fter they returned to Mr. Higgs' apartment at the end of the evening . . . they went into the apartment, began cleaning up the apartment and throwing out various items." TT 10/18/00, 150. As to the "murder weapon . . . Mr. Higgs drove the van down to Anticostia [sic] Park and pulled over on a spot on Anticostia [sic] Drive not far from the Anticostia [sic] Rec Center pool, and [Mr. Haynes] ran and threw the gun into the river." *Id.* at 150-151. Captain

62

Rule thus supplied critical evidence concerning the aggravating factor of obstruction of justice eventually found by the jury.

Higgs continues:

Haynes' statements were made to a law enforcement officer in the midst of a custodial interrogation and accordingly fall within the core class of statements deemed "testimonial" by the Supreme Court under *Crawford*, 541 U.S. at 68. Because he had no opportunity to cross-examine Haynes, the admission of Haynes' statements violated Higgs' right to confrontation under the Sixth Amendment. Moreover, since Haynes had a strong motive to place blame on Higgs rather than himself, his testimony implicating Higgs was presumptively unreliable.

While trial counsel objected to this evidence, unsuccessfully as it turned out, arguing that it was more prejudicial than probative, it is true that they did not specifically base their objections on Fifth or Sixth Amendment grounds. Appellate counsel, for the first time, attempted to argue that the evidence violated Higgs' Sixth Amendment Confrontation Clause right, but the Fourth Circuit deemed the argument waived because it was not raised at trial. The Fourth Circuit, in any event, rejected the claim under the plain-error doctrine, finding that the evidence was harmless. *See Higgs-1*, 353 F.3d at 323-25.

Higgs now argues that trial counsel were ineffective for failing to raise the Fifth and Sixth Amendment objections at trial.

Of the two, he appears to rely principally on his Sixth Amendment Confrontation Clause argument. While he concedes that the Federal Rules of Evidence do not ordinarily apply at sentencing, he suggests that this does not mean that the Confrontation Clause is inapplicable at sentencing, especially the sentencing phase of a capital case when the proffered statements inculpate the defendant. Such evidence, says Higgs, is "presumptively unreliable," citing *Lee v.*

63

*Illinois*, 476 U.S. 530, 545 (1986), and, as such, it also violated his due process rights. Because Haynes' statement clearly inculpated Higgs, and was an important piece of evidence establishing the obstruction of justice aggravator, Higgs submits that trial counsel's failure to object to the admission of the testimony on Fifth and Sixth Amendment grounds fell below an objective standard of reasonableness.

Higgs concedes, as he must, that the Fourth Circuit considered the Confrontation Clause argument on direct appeal, and found, given other overwhelming evidence of Higgs' guilt, that Officer Rule's testimony did not affect Higgs' substantial rights. But he argues here that that determination should be reconsidered in light of the Supreme Court's holding in *Crawford v. Washington*, issued post Higgs' trial, where the Court found that the Constitution demands that "testimonial" statements trigger a right to confrontation. According to Higgs, because Haynes' confession fell within the core class of statements deemed "testimonial" by the Supreme Court, it should have been subject to confrontation.

Finally, Higgs argues that even if counsel's failure to object on Fifth and Sixth Amendment grounds is found not to be prejudicial, he is still entitled to relief because of the cumulative prejudicial impact of counsel's errors. In support of this proposition he cites *Williams,* 529 U.S. at 398-99 (finding ineffective assistance where the entire postconviction record, viewed as a whole including the mitigation evidence, demonstrated prejudice with respect to a sentencing proceeding).

In response, the Government argues that counsel's failure to make an evidentiary objection on constitutional grounds is procedurally barred. In any event, the Government argues that the Fourth Circuit's holding that Higgs' substantial rights were not affected by the admission of Officer Rule's testimony forecloses the question of prejudice as a matter of law. The

64

Government also argues that the Fourth Circuit has expressly rejected the cumulative impact argument in ineffective assistance cases. *Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998). In sum, the Government submits that the claim of ineffective assistance lacks merit because Higgs has failed to demonstrate that his attorneys provided constitutionally deficient, much less prejudicial, representation.

**A.**

Higgs is procedurally barred from relitigating the question of counsel's failure to object to the testimony regarding Haynes' statement. Because he effectively litigated the prejudicial effect of the Haynes confession on direct appeal, he may not revisit the issue by way of collateral attack. *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

**B.**

That said, on the merits the claim fails in any event. Higgs must establish that counsel's performance "fell below an objective standard of reasonableness," and that in the absence of the alleged error a reasonable probability exists that "the result of the proceeding would have been different." *See Strickland*, 466 U.S. at 687-88.

The Court agrees that the Fourth Circuit's rationale on direct appeal has answered the fundamental question of the reasonable probability *vel non* that Rule's testimony affected the trial's outcome: "Given the cumulative nature of the precise evidence challenged, and the overwhelming evidence otherwise proffered in support of the obstruction aggravator, we cannot say that Rule's limited testimony regarding Haynes' statements affected Higgs' substantial rights." *Higgs-I*, 353 F.3d at 324-325. Substantial rights are affected only where there is "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004) (quoting *Bagley*,

65

473 U.S. at 682). In agreement with the Fourth Circuit, this Court is unable to find it reasonably probable that the testimony regarding Haynes' statement prejudiced the outcome of this case. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").[22]

## C.

Higgs has not, in any case, shown that his attorneys' conduct in omitting a Confrontation Clause objection to Haynes' confession fell below an objective standard of reasonableness. The Court "judge[s] the reasonableness of counsel's challenged conduct on the facts of a particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (citing *Strickland*, 466 U.S. at 690). Courts are obliged to defer to counsel's tactical decisions at trial. *See Gardner v. Ozmint*, 511 F.3d 420 (4th Cir. 2007).

Given the uncertainty of the state of the law at the time of trial as to whether the Confrontation Clause applies to capital sentencing proceedings, trial counsel were under no obligation to make such an objection. *See Strickland*, 466 U.S. at 688. Indeed, the Fourth Circuit stated on direct appeal in this case that "[I]t is far from clear that the Confrontation Clause applies to a capital sentencing proceeding." *Higgs-I*, 353 F.3d at 325. While the Fourth Circuit has yet to conclusively rule on the issue, two years after Higgs' trial the Seventh Circuit did, holding that while the Confrontation Clause applies to the guilt phase of trial, it does *not* apply to the sentencing phase, even when a death penalty proceeding is involved. *Szabo v. Walls*, 313 F.3d 392, 398 (7th Cir. 2002).

---

[22] The lack of prejudice finding also definitively puts to rest any due process argument under the Fifth Amendment that Haynes' testimony was presumptively unreliable.

66

Nor is Higgs persuasive in his argument that his lawyers had a duty to anticipate *Crawford* and object to Haynes' statement. *Crawford,* decided four years after Higgs' trial, broke new ground by distinguishing "testimonial" statements as a species of evidence particularly offensive to the Confrontation Clause. *Crawford,* 541 U.S. at 71-72 (Rehnquist, C.J., concurring) (noting that the Court had never drawn a distinction between testimonial and nontestimonial statements). As a result, the Supreme Court held that *Crawford* is not to be applied retroactively to cases on collateral review. *Whorton v. Bockting,* 549 U.S. 406, 417-21 (2007).[23] Trial counsel cannot therefore be found ineffective for failing to foresee this subsequent change in the law. *See United States v. Davies*, 394 F.3d 182, 189-91 (3d Cir. 2005) (finding counsel had no duty to predict that arguments in an earlier case would become law and did not act unreasonably in failing to rely on its teachings); *See also United States v. Smith*, 241 F.3d 546, 548 (7th Cir. 2001); *Parker v. Bowersox*, 188 F.3d 923, 929 (8th Cir. 1999); *Pitts v. Cooks*, 923 F.2d 1568, 1573 (11th Cir. 1991).

### D.

Higgs' final claim in this regard is that trial counsel provided ineffective assistance during the penalty hearing by limiting their mitigating evidence in response to the Government's decision to drop future dangerousness as an aggravating circumstance. He says, for example, that his counsel's closing argument barely addressed the influence of Higgs' childhood experiences on the direction of his life, as a result of which none of the jurors found that to be a mitigating factor.

---

[23] The cases relied upon by Higgs in support of the proposition that counsel should have foreseen the *Crawford* doctrine are unpersuasive. Though noting a need for greater reliability in capital sentencing proceedings, the Supreme Court gave no indication prior to Higgs' trial that its opinion in *Crawford* was in the offing; hence counsel had no reason to anticipate its arrival. *See Monge v. California,* 524 U.S. 721, 727-28 (1998); *California v. Ramos,* 463, U.S. 992, 1013-14 (1983).

The Fourth Circuit has been "highly deferential" to strategy decisions of lawyers, even indulging a presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." *Byram*, 339 F.3d at 209 (quoting *Strickland*, 466 U.S. at 689). Here, trial counsel's strategic decision to limit mitigation evidence so as not to open the door to bad act rebuttal evidence was not unreasonable. The decision was made after counsel conducted a reasonable investigation into Higgs' admittedly traumatic childhood, then weighed the other negatives of his serious adult misconduct. Counsel's choice was strategic; in no sense was it substandard.

Higgs has also failed to demonstrate prejudice. No reasonable probability exists that further emphasis on Higgs' troubled childhood would have persuaded the jury to find it as a mitigating factor or that it would have persuaded a juror to vote for other than the death penalty.

**Claim 9: Victim Impact Evidence**

As a ninth claim, Higgs asserts that defense counsel was ineffective for failing to object to the admission of victim impact evidence that he contends violated his Eighth Amendment rights. Specifically, he maintains that: (1) the victim impact testimony, statements, photographs, and videotapes presented to the jury during the sentencing phase were highly emotional, rendering the sentencing proceedings inflammatory and fundamentally unfair; (2) the prosecutor's use of imagery and metaphor during closing argument was inflammatory and rendered trivial and meaningless any mitigating evidence submitted by the defendants; (3) the prosecutor improperly and unconstitutionally alluded to the sentencing preferences of family members; and (4) the Court failed to provide the jury with guidance as to how they should weigh the victim impact evidence among other aggravating and mitigating factors, which resulted in an unreliable death verdict in violation of the Eighth Amendment.

## A.

The Court finds no deficiency in counsel's actions in the cited respects. In consequence, any objection by counsel to the victim impact evidence would have been futile.

## B.

The law concerning victim impact evidence is well settled. In a capital case, victim impact statements that identify the extent and scope of the injury and loss suffered by the victim and the victim's family members are admissible. *See* 18 U.S.C. § 3593(a); *see also Payne v. Tennessee*, 501 U.S. 808, 827 (1991) (holding that the Eighth Amendment erects no *per se* bar to the admission of victim impact testimony during the sentencing phase of a defendant's capital trial). Moreover, the Eighth Amendment does not prohibit prosecutorial argument on the subject of victim impact. *Payne*, 501 U.S. at 827. Only where victim impact evidence would be so unduly prejudicial as to render the defendant's trial unfair does due process mandate its exclusion. *See id.* at 825. However, the bar for demonstrating undue prejudice is quite high. *See, e.g.*, *United States v. Barnette*, 211 F.3d 803, 818-19 (4th Cir. 2000) (allowing family members to present stories of victims' childhoods, family experiences, and trauma resulting from victims' deaths, as well as poems reflecting deep sadness and regret); *United States v. McVeigh*, 153 F.3d 1166, 1218-22 (10th Cir. 1998), *overruled on other grounds by* 184 F.3d 1206 (10th Cir. 1999) (permitting a total of 38 witnesses to recount, among other things: last contacts with victims, efforts to discover victims' fates, discovery of body parts months after victims' deaths, uncontrollable screaming and crying upon hearing of victims' deaths, victims' life histories and personal accomplishments, and innocence and unconditional love manifested by child victims).

69

Here, the testimony of the victims' family members, though unquestionably emotional, was highly relevant to the impact that the murders had on the families. Several of the victims' relatives testified that they had suffered severe emotional anguish as a result of the murders. The mother of one victim testified that her marriage nearly dissolved in the wake of her daughter's murder. Another testified that she "fell to the ground and . . . screamed" when the police informed her of her daughter's death. Some witnesses presented photographs and videotapes that chronicled the lives of the victims. The evidence in this case was wholly consistent with that found proper in *Barnette* and *McVeigh*, where family members recounted stories of the victims' lives, past family experiences, and the anguish they suffered after the victims' deaths. *Barnette*, 211 F.3d at 818; *McVeigh*, 153 F.3d at 1218-22. The Court concludes that the victim impact testimony and exhibits in this case were well within bounds. Counsel cannot be faulted for failing to object to them.

The Court also rejects the argument that the prosecutor's use of imagery and metaphor during closing argument—specifically, comparing the family members' anguish to the weight of a heavy rock—rendered trivial and meaningless any mitigating evidence submitted by the defendants. The use of poetic license by a prosecutor in a closing argument is not *per se* impermissible. *See, e.g.*, *United States v. Fields*, 483 F.3d 313, 340-41 (5th Cir. 2007) (permitting the use of a "picture in picture" metaphor in a capital sentencing closing, whereby the prosecutor invited the jury to imagine the victim's murder displayed on one "screen," and the actions of the defendant before, during, and after the murder on the other); *Bussard v. Lockhart*, 32 F.3d 322, 324 (8th Cir. 1994) (permitting the poetic, metaphoric use of a Biblical quote in a closing argument); *United States v. Canales*, 744 F.2d 413, 429-30 (5th Cir. 1984) (finding no grounds for reversal where the prosecution implored the jury to "cut out" the "cancer" of vote

70

buying in Duval County, where the larger matter of widespread vote buying was not at issue in the case). Indeed, the use of a simple rock metaphor while displaying an actual rock is hardly an inflammatory image. It does not begin to approach the level of egregiousness required to create undue prejudice. Counsel had no reasonable cause to object to the prosecution's argument.

The Court also finds groundless Higgs's argument that the prosecutor unconstitutionally alluded to the sentencing preferences of family members during sentencing. To be sure, the Eighth Amendment precludes the admission of a victim's family members' characterizations and opinions regarding the crime, the defendant, or the appropriate sentence, because such evidence could "inflame the jury and divert it from deciding the case on the relevant evidence concerning the crime and the defendant." *Booth v. Maryland*, 482 U.S. 496, 508 (1987), *overruled on other grounds by* 501 U.S. 808, 830 (1991). Similarly, a prosecutor must refrain from presenting family member opinions regarding the crime or the defendant. *See Gathers v. South Carolina*, 490 U.S. 805, 811 (1989), *overruled on other grounds by* 501 U.S. 808, 830 (1991) (holding that assertions that would violate *Booth* are not a permissible subject of prosecutorial argument). Here, however, Higgs's effort to construe the prosecutor's statement—"you ask each one of those family members here what they wouldn't give for their daughters to be in Lewisburg Penitentiary rather than where they are"—as a statement of the victims' family members' sentencing preferences is simply inaccurate. The prosecutor did not state or imply that the family members had any opinions with respect to an appropriate punishment for Higgs. Rather, she made the statement to counter defense counsel's assertion that life imprisonment would harshly and adequately punish the defendant for his crimes. To construe the statement as Higgs does, as an allusion to the sentencing preferences of the family members, calls for an inference

71

that logic does not justify. Defense counsel had no reason to interpose an objection on these grounds.

Finally, Higgs's assertion that the Court's instructions failed to provide the jury with guidance as to how it should weigh the victim impact evidence among other aggravating and mitigating factors has no basis in fact. True, in a capital sentencing proceeding, the judge's instructions to the jury should make it clear that the jurors must consider both mitigating and aggravating factors and in no event should a judge give the impression that the two need not be considered in tandem. *See Mills v. Maryland*, 486 U.S. 367, 400 (1988). However, the record shows that the Court gave the appropriate instructions with respect to the weighing of aggravating and mitigating factors:

> In carefully weighing the various factors at issue in this case, you are called upon to make a unique individualized judgment about the appropriateness of imposing either the death penalty or life imprisonment without the possibility of parole or release on the defendant for each count. . . . [Y]ou must consider the weight and the value of each factor in making your decision. Any one aggravating factor . . . may outweigh several mitigating factors. . . . On the other hand, you must also recognize that a single mitigating factor . . . may outweigh several aggravating factors. . . . At this final weighing stage in the process you are not called upon simply to find relevant factors. You are called upon to make a reasoned moral judgment based on all the evidence before you as to whether the death penalty is justified for the defendant and for the offense. After consideration of the aggravating and mitigating factors, you must unanimously determine [the penalty].

TT. Oct. 24, 2000 at 177-79. This instruction properly provided the jury with sufficient guidance as to the weighing of aggravating and mitigating factors.

Counsel were in no sense deficient in not objecting to the prosecution's use of victim impact evidence or the Court's jury instructions.

**Claim 10: Previous Conviction of a Violent Felony Involving a Firearm**

**A.**

Higgs contends that during the sentencing phase, when considering the aggravating factor of previous conviction for a violent felony involving a firearm, the jury improperly considered his involvement in the Cherry Lane shooting.

In the Cherry Lane case, Higgs pleaded guilty to reckless endangerment and assault, neither crime necessarily involving the use of a firearm. Accordingly, he argues that the Cherry Lane event could not have formed the basis for the previous-firearm-conviction aggravating factor, according to the "categorical approach" adopted by the Fourth Circuit in *United States v. Washington* 404 F.3d 834 (4th Cir. 2005), decided after its opinion on Higgs's direct appeal.[24]

In *Washington*, the Fourth Circuit reversed a sentence that had been based on the defendant's prior conviction for breaking and entering, a crime which does not necessarily involve violence. *Id.* at 843. The court determined that, in order to comply with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the judge must determine a sentence using a "categorical approach;" he can only consider whether the elements of a defendant's previous crime, and not the facts behind the actual incident, meet the statutory requirements for a sentence enhancement. *See Washington,* 404 F.3d at 843.

There is no need to delve into the merits of this claim for two reasons. First, Higgs' claim fails because, as he concedes, he previously litigated this issue on direct appeal. *See Boeckenhaupt*, 537 F.2d at 1183. Second, the rule enunciated in *Washington* came into existence *after* his conviction became final and, as an evidentiary or procedural rule, it cannot be applied retroactively.

---

[24] Higgs' direct appeal was denied by the Fourth Circuit on December 22, 2003. *See Higgs-1*, 353 F.3d at 316. *Washington* was decided on April 15, 2005.

73

While Higgs relies on *United States v. Davis*, 417 U.S. 333, 346 (1974), *Davis* considered retroactivity in the context of new *substantive* laws only. Thus, in *Davis* the court allowed retroactive application of an intervening law that decriminalized the conduct for which the defendant had been convicted and sentenced. *Davis v. United States,* 417 U.S. 33, 346 (1974). In so doing, the court reasoned that the "there can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and presents exceptional circumstances that justify collateral relief under § 2255." *Id.* Generally, *Davis'* holding that intervening law can be applied retroactively covers only substantive, not procedural laws. *See Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (holding that substantive laws warrant retroactive application due to the "significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose").[25] However, in *Teague v. Lane,* 489 U.S. 288 (1989), in which the Supreme Court invalidated the retroactive application of a procedural rule, the Supreme Court held that procedural rules can be applied retroactively on collateral review, but only in "exceptional circumstances." *See also Schriro*, 542 U.S. at 351 ("when a decision . . . results in a 'new rule', that rule applies to all criminal cases still pending on direct review. As to convictions that are already final, however, the rule applies only in limited circumstances").

*Teague* establishes a three-step analysis to determine whether a new rule of criminal procedure should apply retroactively: first, the conviction for which the petitioner filed a §2255 motion must have been final when the new law was enunciated; second, the new law must in fact be "new"; and third, the new rule must be of watershed magnitude. *United States v. Morris*, 429 F.3d 65, 69-70 (4th Cir. 2005) (citing *Teague v. Lane*, 489 U.S. 288 (1989)).

---

[25] A procedural law "regulate[s] only the manner of determining the defendant's culpability," while a substantive law "alters the range of conduct or the class of persons that the law punishes." *Schriro*, 542 U.S. at 353.

74

Proceeding directly to the third factor, the "categorical approach" rule of *Washington* fails to satisfy the *Teague* analysis because it was not a watershed decision. *See id.* at 71. To qualify as a watershed decision, the new rule must seriously diminish the likelihood of obtaining an accurate conviction and must alter one's understanding of the bedrock procedural elements essential to the fairness of a proceeding. *Id.* The possibility that *Washington* was a watershed decision is foreclosed by the Fourth Circuit's decision in *United States v. Morris. See Morris*, 429 F.3d at 71-72. There, the court held that the *Booker* decision, which required that a sentence be based on the facts found by the jury alone, was not watershed because it did not implicate the "fundamental fairness that require[s] retroactive application on collateral attack." *Id.* The *Washington* rule– a close relative of the one announced in *Booker* and an extension of *Apprendi*, which the Fourth Circuit has also decided was not of watershed magnitude, *United States v. Sanders*, 247 F.3d 139, 146 (4th Cir. 2001)– leads to a similar conclusion. The new rule limiting the ability of a court to stray from the bare elements of a previous conviction during sentencing did not alter the bedrock principles of fairness in criminal procedure. *See id*; *United States v. Sanders*, 247 F.3d 139, 148 (4th Cir. 2001). Accordingly, the *Washington* rule does not apply retroactively and does not support Higgs's § 2255 motion.

**B.**

Higgs also submits that he is entitled to relief because counsel provided ineffective representation in failing to object when the Government submitted to the jury the previous-firearm-conviction aggravating factor based on his guilty plea to the Cherry Lane shooting.

Section 3592(c)(2) of Title 18 allows a jury to consider, as an aggravating factor, whether "the defendant has *previously* been convicted of a Federal or State offense punishable by a term of imprisonment of more than 1 year, involving the use or attempted or threatened use of a

75

firearm (as defined in Section 921) against another person" when sentencing a defendant to death. 18 U.S.C. § 3592(c) (2004) (emphasis added). Higgs contends that counsel should have argued that the word "previously" refers only to convictions occurring before commission of the *crime* which is the subject of this prosecution, not convictions occurring before *sentencing* for that crime. Although the Cherry Lane shooting took place on December 10, 1995, approximately six weeks before the January 1996 murders in this case, Higgs was not convicted of assault and reckless endangerment for the Cherry Lane shooting until April 1997, over a year after the January, 1996 murders. Again, the jury returned its death sentence verdict in this case on October 26, 2000.

As a preliminary matter, Higgs is procedurally defaulted on this claim because he did not raise it before trial, at trial, or on direct appeal. *See Massaro,* 538 U.S. at 504. Nor has he avoided the procedural bar, since his claim of ineffective assistance of counsel ultimately fails the *Strickland* test.

For counsel's failure to object to purportedly objectionable material to be constitutionally ineffective, the objection must have been so obvious that it would have "struck those learned in the law like a bucket of ice water." *Humphries v. Ozmint,* 366 F.3d 266, 276 (4th Cir. 2004). Here, arguing that the word "previously" referred only to convictions occurring prior to the pending capital offense (as opposed to prior to sentencing) was not an obvious choice for Higgs' counsel because, at the time, the law supporting that argument was not clear and obvious.[26]

---

[26] During the penalty phase of the trial, defense counsel did raise an objection to the use of Higgs's May 12, 1997, guilty plea to federal drug offenses to support a finding under 18 U.S.C. § 3592(c)(12) (2004), pertinent to the following aggravating factor: "The defendant had previously been convicted of violating title II or III of the Controlled Substances Act for which a sentence of 5 or more years may be imposed. . . ." *Id.* Defense counsel argued that "had previously" meant previous to the murders and not the sentencing. However, counsel's decision to object to using the drug convictions has no bearing on the reasonableness of his failure to object to using the Cherry Lane shooting. The ineffective assistance reasonableness standard is an objective, not a subjective, one. *See Strickland,* 466 U.S. at 688 ("[T]he defendant must show that counsel's representation fell below an *objective* standard of reasonableness." (Emphasis added)); *United States v. Little,* 14 F.App'x. 200, 205 (4th Cir. 2001)

76

Indeed, by the time of trial, the Fourth Circuit had issued two seemingly contradictory statements as to the meaning of the word "previously" for purposes of sentencing enhancement: in *United States v. Hobbs,* 136 F.3d 347, 387, n. 3 (4th Cir. 1998), the court, in *dicta*, stated that the word "previous" in a § 922 sentencing provision referred only to convictions occurring prior to the subject offense. In contrast, in an unpublished opinion, *United States v. Hamilton*, No. 93-5393, 30 F.3d 131, 1994 WL 381735 (4th Cir. July 22, 1994), a separate Fourth Circuit panel had interpreted the same provision as including all previous convictions, regardless of when they were incurred.

But, says Higgs, using the post-dated Cherry Lane conviction to support the prior-firearm-conviction as an aggravating factor contradicted the established meaning of "previously," as set forth in decisions from other Circuits, albeit decisions establishing that the word "previously" in a different sentencing statute, 18 U.S.C. § 924(e), referred only to convictions occurring prior to the subject offense.[27] However, it is clear even if the other circuits had interpreted the specific statute at issue here, which was not the case, counsel was under no obligation to follow the law of other circuits, especially when the Fourth Circuit had yet to clarify its own position on the matter. *See United States v. Roane*, 378 F.3d 382, 397 (4th Cir. 2004) (failing to follow another Circuit's law, when that law had not been adopted in the applicable Circuit was not unreasonable); *United States v. McNamara*, 74 F.3d 514, 517 (4th Cir. 1996) (not ineffective assistance when counsel followed controlling circuit law at the time). Although the Fourth Circuit has since issued decisions that arguably bring into question the

---

(holding that the subjective beliefs behind counsel's strategic decisions at trial are irrelevant to an ineffective assistance claim). It makes no difference if the objection should have occurred to Higgs's defense attorney. The proper question is whether it should have occurred to a reasonably able attorney.

[27] The Armed Career Criminal Act, provides for enhancement of the sentence of a defendant who "has three *previous* convictions . . . for a violent felony or a serious drug offense, or both." 18 U.S.C. § 924(e) (emphasis added). Under 18 U.S.C. § 3592(c), the statute in question here, a defendant is eligible for the death penalty if he "*has previously* been convicted of a Federal or state offense . . . involving the use...of a firearm." Emphasis added.

continuing validity of a firearm conviction post-crime but pre-sentence as an aggravating factor, *see United States v. Pressley*, 359 F.3d 347, 350 (4th Cir. 2004); *United States v. Ryan*, 187 F. App'x 287 (4th Cir. 2006), counsel's failure to anticipate this new law did not constitute ineffective assistance. *See United States v. Stewart*, 36 F.App'x. 520, 521 (4th Cir. 2002); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983). Nor was appellate counsel's failure to object to this aggravating factor on direct appeal objectively unreasonable. To constitute ineffective assistance of counsel for failing to raise an issue on appeal, counsel must have "omitted significant and obvious issues, while pursuing issues that were clearly and significantly weaker." *United States v. Fox*, No. 94-6710, 1996 WL 359574 at *2 (4th Cir. June 28, 1996) (quoting *Mayo v. Henderson*, 13 F.3d 528 (2nd Cir. 1994)).

Given the Fourth Circuit's conflicting interpretations of the statute and the factual dissimilarities between the death penalty statute at issue here and the sentencing statute addressed in the other circuits' decisions, the prior firearm conviction issue was not "significant and obvious." *See Fox*, 1996 WL 359574 at *3 (holding that counsel did not provide ineffective assistance when he chose not to raise an issue on appeal because the law on the topic was unclear in a relevant circuit and decisions in the other circuits were factually dissimilar). Nor can it be said that counsel, especially appellate counsel, failed to pursue this issue in deference to, and significantly weaker, issues. Even granting that the issue had substance, counsel's failure to pursue it was not tantamount to ineffective assistance. *See Fox*, 1996 WL 359574 at *2 ("failure to raise all non-frivolous issues on appeal is not ineffective assistance").

### Claim 11: Previous Conviction of a Federal Drug Offense

Apart from raising it in the context of ineffective assistance, Higgs argues that the Fourth Circuit's decision in *Pressley* defining the word "previous" under the Armed Career Criminal

78

statute constituted a relevant new rule which should apply retroactively to his case, vitiating one of the aggravating factors that led the jury to vote for the death penalty.

Since *Pressley* was decided while Higgs' conviction was on direct appeal,[28] Higgs is entitled to raise the issue at this time and no *Teague* analysis is required. *See Linkletter v. Walker*, 381 U.S. 618, 627 (1965), *overruled on other grounds by* 479 U.S. 314, 320 (1987) ("a change in law will be given effect while a case is on direct review"). But there are at least two reasons why the Court declines to embrace this argument.

First, *Pressley* interprets a discrete provision of a *non-capital* sentencing statute, not the *death penalty* statute at issue here. *See Pressley*, 359 F.3d at 348. The fact that both statutes contain similar language is not dispositive, since the Fourth Circuit in *Pressley* was interpreting the issue there based on the specific Congressional intent embodied in the statute itself. *Id.* at 349. Arguably, then, the holding in *Pressley* is limited to the unique circumstances surrounding that statute, and cannot be extended to the death penalty context. Second, this Court has no authority to overrule the Fourth Circuit's decision in *Higgs-I*, 353 F.3d 281, 318 (4th Cir. 2003), that relied on a different interpretation of "previous" to uphold the previous-drug-conviction aggravating factor. *See Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 642. (4th Cir. 1975) (holding that findings by the Court of Appeals are binding upon a district court until they are considered *en banc*). That decision, and not *Pressley*, remains the controlling authority on this issue. *Id.*

---

[28] *Pressley* was decided on February 27, 2004, but Higgs' conviction did not become final until the Supreme Court denied his writ of certiorari on November 29, 2004. *See Clay v. United States*, 537 U.S. 522, 527 (2003) (finding that a conviction becomes final when the Supreme Court affirms a conviction on the merits on direct review, denies a petition for a writ of certiorari, or the time for filing certiorari expires).

**Claim 12: Multiple Killings**

Higgs argues that the Fourth Circuit erred in *Higgs-I* when it chose not to overturn his death sentence despite the erroneous submission to the jury of the statutory aggravating factor alleging his involvement in multiple killings. *See* 18 U.S.C.A. § 3592(c)(16)

In *Higgs-I*, the Fourth Circuit acknowledged that "'multiple killings' was not added to the [Federal Death Penalty Act] as a statutory aggravating factor until April 1996, three months after the murders were committed." *Higgs-1*, 353 F.3d at 300. Accordingly, it determined that "the 'multiple killings' aggravator was improperly submitted to the jury as a statutory aggravating factor." *Id.* at 319. Nevertheless, the court decided that the error was harmless and did not invalidate his death sentence because the jury had found additional aggravating factors beyond a reasonable doubt. *Id.*

Higgs challenges the Fourth Circuit's analysis as being inconsistent with *Stringer v. Black*, 503 U.S. 222, 237 (1992), which held that a sentencer's reliance on an invalid aggravating factor in a "weighing" jurisdiction, such as the federal system, "invalidates the sentence and at the very least requires constitutional harmless-error analysis or reweighing . . . ." In *Higgs-I*, he claims, the Fourth Circuit improperly assumed that the invalid "multiple killings" aggravator made no difference to the weighing process.

Higgs also argues that the decision in *Higgs-I* runs afoul of the Supreme Court's decision in *Brown v. Sanders*, 546 U.S. 212 (2006), which eliminated the distinction between "weighing" and "non-weighing" jurisdictions and held that in any jurisdiction "(a)n invalidated sentencing factor . . . will render the sentence unconstitutional by reason of its adding an improper element to the aggravation scale in the weighing process *unless* one of the other sentencing factors enables the sentencer to give aggravating weight to the same facts and circumstances." *Brown v.*

80

*Sanders*, 546 U.S. 212, 220 (2006). Higgs submits that none of the other five sentencing factors found by the jury in his case would have permitted aggravating weight to be given to the evidence of multiple killings, and urges the Court to invalidate his sentence under *Sanders*, if not under *Stringer*.

## A.

The Court begins by noting once again that it does not have the authority to review the Fourth Circuit's decision in *Higgs-I. See Charleston Area Medical Center, Inc.,* 529 F.2d at 642. Higgs cannot raise an issue already litigated on direct appeal under the guise of a collateral attack. *See Withrow v. Williams,* 507 U.S. 680, 720-21 (1993) (Scalia, J., concurring). Since the Fourth Circuit has already rejected the claim that the jury improperly relied upon the multiple murder aggravator, Higgs is not permitted to revisit the issue.

## B.

Even so, analyzing Higgs' claim under *Sanders* (which has substantially superceded *Stringer*) the Court would nonetheless find Higgs's death sentence constitutional. So long as some other sentencing factor enabled the jury to give aggravating weight to the multiple killings, the death sentence will stand. *Sanders*, 546 U.S. at 220. The nonstatutory aggravating factor of "victim impact" did just that, allowing the jury to consider the number of deaths in this case.

The penalty phase jury instructions framed the victim impact factor as follows:

"The defendant caused injury, harm, and loss to the victim and the victim's family because of the effect of the offense on the victim, the victim's personal characteristics as an individual human being and the impact of the death upon the victim and the victim's family." In proving this factor, the prosecution introduced testimony during the penalty phase from family members of each of the three victims – Tamika Black, Mishann Chinn, and Tanji Jackson. From

81

this evidence alone, the jury could infer the existence of multiple killings, to say nothing of the evidence of multiple murders presented during the guilt phase of the trial. *See generally United States v. Flaharty*, 295 F.3d 182, 196 (2nd Cir. 2002) (in determining facts material to sentencing, district court may rely on evidence admitted at trial); *United States v. Dailey*, 918 F.2d 747, 748 (8th Cir. 1990) (same). Since, the victim impact factor alone "enable[d] the sentencer to give aggravating weight to the same facts and circumstances" as the arguably invalid multiple killings factor, Higgs' *Sanders* claim must fail. *Brown v. Sanders*, 546 U.S. 212, 220 (2006).

**Claim 13: Failure to Interview & Call Witnesses Gerald Vaughn and Kevin Anderson**

Higgs argues that counsel were ineffective for failing to interview and call Kevin Darnell Anderson and Gerald Vaughn as witnesses during both the guilt and penalty phases of the trial. Both individuals were incarcerated with Haynes at the Charles County Detention Center and both claimed to have had conversations with him regarding the murders.[29]

Higgs suggests that the potential testimony of these witnesses would have supported the defense theory that Haynes shot the victims for his own reasons, not at the command of Higgs. According to Higgs, Anderson would have testified that Haynes told him he killed one of the women because she "set him up." Anderson would purportedly have said that he witnessed a confrontation between Haynes and another inmate, in which the inmate commented "you think [you're] big stuff because you killed [three] women" and Haynes responded "I'll kill whoever the f--- I want to kill." As for Vaughn, Higgs contends his testimony would have demonstrated that Haynes never accused Higgs of forcing him to kill the victims. *See United States v. Haynes*, 26 F. App'x 123, 128 (4th Cir. 2001) (summarizing testimony of Vaughn at Haynes' trial). In

---

[29] At Haynes' trial, which took place before Higgs' trial, Vaughn gave live testimony and the defense submitted written statements from the Government's May 2000 interview of Anderson.

fact, Higgs says, Vaughn's testimony would have shown that Haynes bragged about the murders, that Haynes told Vaughn he killed the women because one of them owed Haynes $250,000, and that Haynes later told Vaughn that he killed the women because they cheated on him. *See id.*

Higgs argues that during the guilt phase the Vaughn-Anderson testimony would have shown that Haynes, the actual triggerman, was responsible for the murders. During the penalty phase, Higgs says, the evidence would have provided "powerful support for the mitigating factor advanced by the defense that an equally culpable co-defendant had received a life sentence." According to Higgs, counsel's failure to interview or call these witnesses amounted to ineffective assistance.

### A.

To demonstrate ineffective assistance of counsel, a defendant must demonstrate both that (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *See Strickland*, 466 U.S. at 687 (1984). A criminal defendant is prejudiced by counsel's performance when there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Under this standard, Higgs' claim fails.

### B.

Higgs is procedurally barred from relitigating the issue of whether the absence of Anderson's statements prejudiced his case. A litigant cannot, under the guise of a collateral attack, raise an issue already litigated. *See Withrow*, 507 U.S. at 720-21 (Scalia, J., concurring) ("prior opportunity to litigate an issue should be an important equitable consideration in *any* habeas case, and should ordinarily preclude the court from reaching the merits of a claim, unless it goes to the fairness of the trial process or to the accuracy of the ultimate result"); *see also*

*Boeckenhaupt*, 537 F.2d at 1183 (affirming that the petitioner may not "recast, under the guise of collateral attack, questions fully considered by [the] Court").

On direct appeal, Higgs' counsel argued for a new trial and sentencing based on the Government's failure to identify Anderson as a potential witness and to provide Higgs with a copy of the Government's notes of its May 2000 interview with Anderson.  The Fourth Circuit found that Anderson's absence from the witness stand had no prejudicial effect on the outcome because Haynes' comments regarding the murders were unreliable.  *Higgs-II*, 95 F. App'x at 43. The Fourth Circuit also stated that there was "no reasonable probability that the jury would not have convicted Higgs of the kidnappings and murders had they been aware of the undisclosed statements made by Haynes to Anderson," *id.*, since "the evidence set forth at Higgs's trial provides 'strong support for the conclusion that [Higgs] would have been convicted of capital murder and sentenced to death, even if Haynes' statement to Anderson had been introduced into evidence." *Id.* at 44 (citation omitted).

Though the Fourth Circuit's ruling was in the context of an alleged *Brady* violation, the relevance of its analysis in the current context is obvious because the same prejudice standard applies in a *Strickland* analysis. *See Strickland*, 466 U.S. at 687.  Anderson's statements cannot be relitigated here.

## C.

Procedural bar aside, counsel's decision not to call Anderson and Vaughn as witnesses at trial did not amount to ineffective assistance.

## 1.

With respect to Anderson, even if counsel knew of his existence, they would not have been deficient for failing to interview or call him as a witness.  Whatever Higgs might make of

Anderson's statements to suggest Haynes may have had his own motive for the murders, the Court agrees with the Fourth Circuit that Haynes' statements were thoroughly unreliable. *See Higgs II*, 95 F. App'x at 43. At different times, Haynes gave multiple and inconsistent reasons for the killings,[30] such that anything he might have said to Anderson added nothing to his credibility. Counsel could reasonably have concluded that offering further evidence of Haynes' conflicting statements, subject as they would have been to strong impeachment, would have served no useful purpose. Moreover, as the Fourth Circuit recognized, Anderson's statements do not necessarily suggest that "Haynes acted alone or that Higgs was not involved" because they leave open the possibility that Haynes and Higgs shared a "joint motive" to kill the women. *See id.* at 43. Further, counsels' reference to Haynes' statement that he "will kill whoever the f--- [he] want[s] to kill" does not clearly relate to Haynes motive in the present case because the "tough guy" statements were made in the context of a blustery altercation with another inmate. *See id.* at 41.

Higgs also fails to demonstrate prejudice as a result of counsel's decision not to interview or call Anderson. As the Fourth Circuit noted, "the evidence of Higgs's involvement in the pursuit, kidnapping, and murders of the three women is overwhelming, as is the evidence of his predominant role in the events that took place that evening and early morning." *See Higgs-II*, 95 Fed. Appx. at 44. There is no "reasonable probability" that the result of his trial would have been different had Anderson been called as a witness. *See Strickland*, 466 U.S. at 694.

---

[30] Haynes confessed to the police that he killed the women because he believed that had he not, Higgs would have done so. However, he apparently told Anderson that he killed one of the victims because she may have "set him up," then told Vaughn that he either killed the women because one owed him money or because they cheated on him.

## 2.

With respect to Vaughn, Higgs' claim fails for similar reasons. Counsel's decision not to interview or call him was reasonable. His potential testimony – that Haynes killed the women either because one of them owed him money (as Vaughn had testified in the Haynes trial) or because they cheated on Haynes (as Vaughn apparently told a defense investigator) – was of equally doubtful reliability. As with Anderson's statements, Vaughn's purported testimony would simply have multiplied the inconsistent explanations Haynes gave for why he supposedly committed the killings. *See Higgs-II*, 95 F. App'x at 43 (holding that the absence of Anderson's testimony did not prejudice the defense because it was unreliable). Vaughn's potential testimony would not necessarily have shown that Higgs did not coerce Haynes to commit the murders. It is entirely plausible, indeed highly probable, that it was Higgs who directed Haynes to murder the women, but, to impress his fellow inmates, Haynes subsequently took credit for them.

Regardless, Higgs cannot demonstrate prejudice as a result of counsel's decision not to interview or call Vaughn. The evidence against Higgs was overwhelming. Vaughn's testimony had no reasonable probability of changing the result of the trial. *See Strickland*, 466 U.S. at 694.

### Claim 14: Insufficiency of the Indictment

Higgs contends that *Blakely v. Washington*, 542 U.S. 296 (2004) should be applied retroactively to invalidate his conviction on the grounds that his indictment failed to allege any of the intent or aggravating factors that were considered during the sentencing phase of his trial. He submits that *Blakely* calls into question the Fourth Circuit's denial of this precise objection in *Higgs-I* and therefore compels this Court to vacate his conviction and sentence.

86

On appeal, the Fourth Circuit found that the indictment in this case was constitutionally adequate, *Higgs-I*, 353 F.3d at 295-304, and that the claimed defects with respect to it were harmless. *Id* at 304-07. Because Higgs has previously litigated this claim, he is procedurally barred from relitigating it at this time. *Boeckenhaupt*, 537 F.2d at 1183.

On the merits, the claim also fails. Despite *Blakely*, *Higgs-I* remains the controlling authority on the matter, obliging the Court to accept the decision that Higgs' indictment is constitutionally sound. *Etheridge v. Norfolk & Western Ry. Co.*, 9 F.3d 1087, 1090 (1990) ("a decision of a panel of [the Fourth Circuit] becomes the law of the circuit . . . unless it is overruled"). But *Blakely* may be distinguishable in any event, since it addresses Sixth Amendment sentencing requirements, whereas here Higgs raises the issue in the context of Fifth Amendment indictment requirements. It may be doubted that *Blakely* established new law relevant to the present issue that would overrule *Higgs-I*. But insofar as *United States v. Green*, 372 F. Supp. 2d 168 (D. Mass. 2005) holds to the contrary, the Court rejects that holding.

### Claim 15: Reasonable Doubt Error in Jury Instructions

Higgs next challenges the omission of any jury instruction in the penalty phase to the effect that it could recommend a death sentence only in the event that it found the aggravating factors to outweigh the mitigating factors *beyond a reasonable doubt*.[31] He claims that the lack of a reasonable doubt instruction ran afoul of the Sixth Amendment as interpreted by the Supreme Court's decisions in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002).

---

[31] In pertinent part, the jury was instructed to decide "whether all the aggravating factor or factors found to exist sufficiently outweigh all the mitigating factor or factors found to exist to justify a sentence of death, or, in the absence of a mitigating factor, whether the aggravating factor or factors alone are sufficient to justify a sentence of death." (Emphasis added)

87

Higgs challenges the omitted jury instruction by framing it as a § 2255 ineffective assistance of counsel claim, which triggers analysis under the *Strickland* test. However, Higgs submits that the alleged mistake amounts to a serious structural error that "necessarily render[ed] the trial fundamentally unfair," *Rose v. Clark*, 478 U.S. 570, 577 (1986); *Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), in consequence of which the Court should presume that his claim satisfies *Strickland*'s prejudice requirement, leaving only *Strickland*'s reasonableness inquiry to be pursued. *See Bell v. Jarvis*, 236 F.3d 149, 180 (4th Cir. 2000) (holding that a structural error cannot be dismissed as harmless and therefore presumptively satisfies *Strickland*'s prejudice requirement and requires scrutiny only under *Strickland*'s reasonableness prong).

## A.

This claim is procedurally defaulted. As Higgs concedes, he has never before argued that his death sentence was obtained in violation of his constitutional rights by reason of the Court's failure to instruct the jury that it had to find that the aggravating factors outweighed the mitigating factors beyond a reasonable doubt before they could return a death penalty verdict. Though a procedural default can be excused upon a demonstration of cause and prejudice, *see Massaro*, 538 U.S. at 504, no such relief is warranted here. He has shown neither cause nor prejudice, nor is prejudice to be presumed.

## B.

Beyond procedural default, Higgs' claim fails on the merits. Although the Supreme Court has stated that a faulty reasonable doubt instruction during the guilt phase of an ordinary criminal trial amounts to a structural error, *see Sullivan v. Louisiana*, 508 U.S. 275, 281 (1993), it is by no means clear that that pronouncement applies to the sentencing phase of a death penalty proceeding. *See, e.g., Brice v. State*, 815 A.2d 314, *324 -327 (Del. 2003) (noting that the

88

Supreme Court has employed structural error analysis only when reviewing constitutional errors occurring during the guilt/innocence phase of a trial and suggesting that such analysis does not apply to the sentencing phase). But assuming without deciding that a structural error occurred and that prejudice may be presumed, *see Bell,* 236 F.3d at 180, Higgs' motion would fail under the first prong of *Strickland*; counsel did not act unreasonably by failing to raise an *Apprendi*-objection to the penalty phase jury instruction.

The alleged error at issue did not involve a straightforward and obvious application of *Apprendi*'s principles that would have "struck those learned in the law like a bucket of ice water." *Humphries*, 366 F.3d at 276. Even since the trial in this case courts have refused to extend the Supreme Court's decisions in *Apprendi* and *Ring* to require a jury recommending capital punishment to find that aggravating factors outweigh mitigating factors *beyond a reasonable doubt. See e.g. Ritchie v. State*, 809 N.E.2d 258, 264 -268 (Ind. 2004) ("[Richie] contends that the trial court should have instructed the jury that it must apply a reasonable doubt standard in finding that the State proved that the aggravating circumstances outweigh the mitigating factors. . . . [W]e conclude that this process is not subject to a reasonable doubt standard."); *Brice*, 815 A.2d at 327 ("nothing in *Ring* suggests that the trial judge may not retain the responsibility of making the ultimate sentencing decision"); *Ex parte Waldrop*, 859 So.2d 1181, 1190 (Ala. 2002); ("*Ring* and *Apprendi* do not require that a jury weigh the aggravating circumstances and the mitigating circumstances."); *but see Johnson v. State*, 59 P.3d 450, 460 (Nev. 2002) (concluding that *Ring* requires a jury, and not a panel of judges, to find beyond a reasonable doubt that there are no mitigating circumstances sufficient to outweigh the aggravating circumstance or circumstances found).[32]

---

[32] For post-*Apprendi* cases that do not discuss *Apprendi* or *Ring* in reaching the conclusion that the reasonable doubt standard does not apply to penalty phase weighing, *see e.g., United States v. Sampson*, 335 F. Supp. 2d 166, 238 (D.

In *Apprendi*, the Supreme Court held that "any *fact* that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (emphasis added). It does not necessarily follow that this rule should extend to the weighing process that takes place during the penalty phase of a capital trial. Whether the aggravating factors presented by the prosecution outweigh the mitigating factors presented by the defense is a *normative* question rather than a *factual* one. When jurors weigh aggravating and mitigating factors, they draw upon their sense of community norms in light of the totality of circumstances surrounding the criminal and the crime to determine a just punishment. In marked contrast, in order to find a first-order fact to be true, the jurors must evaluate the evidence presented to determine whether they believe in the truth of the fact beyond any reasonable doubt. In reaching this determination, jurors rely on their deductive and inductive reasoning and not upon normative considerations. While the line between facts and norms is not always a clear one, the process of determining a just punishment rests securely at the normative end of the fact/norm continuum. As the Eleventh Circuit put it in *Ford v. Strickland*, "[P]etitioner confuses proof of *facts* with the weighing

---

Mass. 2004) ("Although important to the defendant and society, the sentencing decision in a capital case is, in its most important respects, fundamentally different than any other task that a jury is called upon to perform in our criminal justice system. The jury is not acting as a finder of fact. Rather, it is exercising discretion in sentencing that is ordinarily exercised by judges. Whether a jury's sentencing decision is right or wrong is not something that is capable of proof in the traditional sense."); *State v. Rizzo*, 833 A.2d 363, 378 (Conn. 2003) ("specific standards for balancing aggravating against mitigating circumstances are not constitutionally required" (quoting *Zant v. Stephens*, 462 U.S. 862, 875-76 n.13 (1983) and *Jurek v. Texas*, 428 U.S. 262, 270 (1976)).

For pre-*Apprendi* cases reaching the same conclusion, *see e.g. Ford v. Strickland*, 696 F.2d 804, 818 (11th Cir. 1983) ("While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, the relative *weight* is not.(citations omitted)); *Fleenor v. State*, 514 N.E.2d 80, 92 (Ind. 1987) ("[T]he determination of weight to be accorded the aggravating and mitigating circumstances is not a 'fact' which must be proved beyond a reasonable doubt but is a balancing process." (citing *Daniels v. State*, 453 N.E.2d 160, 171 (Ind. 1983)).

For a pre-*Apprendi* case finding that the reasonable doubt standard applies to penalty phase weighing, *see People v. Tenneson*, 788 P.2d 786, 793-94 (Colo. 1990).

process undertaken by the sentencing jury and judge. . . . [T]he latter process is not a fact susceptible of proof under any standard . . . ." 696 F.2d 804, 818-19 (11th Cir. 1983) (citations omitted).

This is not to say that a state could not require that a jury recommending the death penalty must find that aggravating factors outweigh mitigating factors beyond a reasonable doubt. *See e.g. Tenneson*, 788 P.2d at 794 ("We are persuaded that the term 'beyond reasonable doubt' serves well to communicate to the jurors the degree of certainty that they must possess that any mitigating factors do not outweigh the proven statutory aggravating factors before arriving at the ultimate judgment that death is the appropriate penalty.").[33] But the point is that *Apprendi* and *Ring* do not require this. The Federal Death Penalty Act, which requires a jury recommending death to find that "the aggravating factor or factors found to exist *sufficiently* outweigh all the mitigating factor or factors," 18 U.S.C. 3593(e) (emphasis added), articulates a standard (sufficiency) that satisfies constitutional reliability requirement. At least one federal court has held under the Act that a reasonable doubt instruction is not required when a death penalty jury is weighing aggravating and mitigating factors. *See U.S. v. Lawrence*, 477 F. Supp. 2d 864 (S.D. Ohio 2006). This Court sees no reason to take a different view.

## C.

As for Higgs' claim that he was deprived of effective assistance when his counsel failed to raise an *Apprendi* challenge to the lack of a reasonable doubt weighing instruction, the Court concludes that counsel were not ineffective. The attorney's performance must have fallen below an objective standard of reasonableness and a reasonable probability must exist that Defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687 (1984). Since the

---

[33] The Colorado death penalty statute considered in *Tenneson* did not specify any standard for weighing aggravating and mitigating factors. 788 P.2d at 789-90.

91

propriety *vel non* of a reasonable doubt instruction in regard to the weighing of aggravating and mitigating factors during the penalty phase of a death penalty case was (and remains) highly questionable, counsel's failure to pursue it did not amount to constitutionally deficient representation.

**Claim 16: Failure to Instruct Jury Regarding Parole Ineligibility as a Mitigating Factor**

Higgs next argues that the Court's failure to instruct the jury that his ineligibility for parole could be found to be a mitigating factor, as requested by counsel during the penalty phase, violated his Eight Amendment rights. Following an objection by the Government, the Court declined to give the instruction on the grounds that parole ineligibility is not a "fact about [Higgs], not a fact about the crime. It's a fact about the punishment." The Court did, however, twice instruct the jurors that they had only two options: to sentence Higgs to death or to life without the possibility of parole.[34]

Higgs contends that this general instruction was insufficient because a sentence of life imprisonment without parole would eliminate any risk of future danger from him. Consequently, the jury should have been allowed to expressly consider parole ineligibility as a mitigating factor.

Higgs also alleges ineffective assistance of counsel of appellate counsel for failing to raise this issue on appeal.

**A.**

Higgs is procedurally barred from raising this claim because he failed to raise it on appeal. *See Massaro*, 538 U.S. at 504. His argument that the Court should consider the merits

---

[34] Specifically, the Court told the jury, "You must . . . answer the question as to whether or not the defendant, Dustin John Higgs, should be sentenced to death or life imprisonment without the possibility of parole or release. No other lesser sentence is authorized under the law for the offenses of which he has been convicted." On another occasion, the Court reiterated the jury's only two options, stating "you must now decide whether the appropriate sentence for the defendant is, one, death or two, life in prison without the possibility of parole or release."

of his claim because he can establish actual innocence as well as cause and prejudice is unpersuasive. *See Schlup,* 513 U.S. at 314-15, 327-30 (holding that a procedural default can be excused upon the requisite showing of actual innocence).

To demonstrate actual innocence, a movant must establish that based on the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Id.* at 327-28. This remedy, however, is reserved for extremely "extraordinary" situations, where the defendant's conviction amounts to a constitutional violation. *See Murray v. Carrier,* 477 U.S. 478, 496 (1986). Given the overwhelming evidence of Higgs' guilt and the fact that the Court twice instructed the jury that it might consider Higgs' parole ineligibility, Higgs falls well short of this standard.[35]

Higgs fails to demonstrate cause or prejudice on the basis of appellate counsel's failure to raise the issue on his parole eligibility as a mitigating factor. Appellate counsel may well have judged that the matter of whether Higgs' ineligibility for parole mitigated against the death penalty was adequately covered by the Court's instructions and/or by the arguments counsel would be making (and did make) in closing during the penalty phase. As for prejudice, Higgs offers nothing more than the assertion that it is "reasonably likely that [his] death sentence would have been vacated on direct appeal."

## B.

The procedural bar aside, Higgs' claim also fails on the merits. A capital sentencing jury must unquestionably give effect to all relevant mitigating evidence, as required by the Eighth Amendment. *See Buchanan v. Angelone,* 522 U.S. 269, 276 (1998); *see also Skipper v. South Carolina,* 476 U.S. 1, 4 (1986). The Supreme Court has made clear that mitigating evidence

---

[35] As discussed previously in connection with Claims 1 and 4, *supra*, to the extent that Higgs argues that he is entitled to relief solely because he is actually innocent, the Court again notes that he has not met the "extraordinarily high" standard for such a claim, if such claim even exists. *Herrera,* 506 U.S. at 417.

93

includes "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *See Lockett v. Ohio*, 438 U.S. 586, 604 (1978). It remains doubtful, however, that parole ineligibility meets the criteria for being a mitigating factor, since it relates to neither to the defendant's character or record or any of the circumstances of the offense in question. *See id.*

Higgs is correct to argue that a court must inform a capital jury of a defendant's parole ineligibility if his future dangerousness is raised as an issue. *See Simmons v. South Carolina*, 512 U.S. 154, 168-69 (1994) (holding that when the Government points to defendant's future dangerousness, due process requires that the defendant should have an opportunity to raise the fact that the alternative sentence is life without parole); *see also Townes v. Murray*, 68 F.3d 840, 850 (4th Cir. 1995). But that requirement was satisfied here. When the Government raised the prospect of Higgs' future dangerousness in its closing statement, the Court satisfied the requirement articulated in S*immons* when it twice told the jury that the only alternative sentence to death was life imprisonment without parole. *See Simmons*, 512 U.S. at 168-69.

But Higgs claims that the Court should have specifically told the jury to list parole ineligibility as a mitigating factor on the verdict form and, in support of his argument, he cites two cases from state courts. *See Turner v. State*, 645 So.2d 444, 448 (Fla. 1994) (reversing death sentence where the court overrode the jury's life sentence recommendation because defendant's fifty-year minimum sentence was a mitigating issue upon which the jury "could have relied" when imposing a life sentence) *and State v. Henderson*, 789 P.2d 603, 606-07 (N.M. 1990), *overruled on other grounds by* 882 P.2d 527 (N.M. 1994) (finding error in the court's refusal to instruct the jury that the defendant would only be parole eligible after he served thirty years).

94

A close reading of *Turner* and *Henderson*, however, indicates that neither case addresses the specific issue of whether parole ineligibility must be listed on the verdict form as a mitigating factor. The Florida court in *Turner* found that there was ample mitigation evidence that the jury could have relied on when sentencing the defendant to life imprisonment, including, among the factors, the defendant's parole ineligibility. 645 So.2d at 448. It did not, however, specifically instruct the jury to consider his parole ineligibility as a mitigating *factor*. *See id.* *Henderson* dealt only with the issue of whether an instruction regarding parole ineligibility is required. 789 P.2d at 607. The Court, moreover, is not persuaded that *Skipper*, cited by Higgs for the proposition that parole ineligibility must be specifically identified as a mitigating factor, actually stands for that proposition. There the Supreme Court held only that "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating." *See Skipper*, 476 U.S. at 5. None of the cases he cites teaches that parole ineligibility must be expressly <u>listed</u> as a mitigating factor. At most, they stand for the proposition that the jury must be made aware of this fact, which in this case they clearly and repeatedly were.

The Court finds that the jury received an appropriate instruction regarding Higgs' ineligibility for parole. He is not entitled to collateral relief based on this claim.

## C.

Given that there was no error in the Court's ruling as to the requested instruction, appellate counsel cannot be faulted for failing to raise the issue.

### Claim 17: Materiality under *Brady*

Higgs argues that the Fourth Circuit erred in its analysis of whether, under *Brady v. Maryland,* the Government's failure to turn over the names of certain witnesses was material to the outcome of his trial.

Apparently appellate counsel, while preparing Higgs' direct appeal to the Fourth Circuit, became aware of the existence of two witnesses the Government knew of, but had not disclosed during trial – Gerald Vaughn and Kevin Anderson. As discussed in connection with Claim 13, *supra*, both witnesses purportedly heard Co-Defendant Haynes make statements suggesting that Haynes' involvement in the murders was more extensive than indicated by the testimony of key Government witness Victor Gloria, who portrayed Higgs in the more culpable light. Arguing a violation of *Brady v. Maryland*, counsel filed motion for a new trial and new sentencing hearing. The Court denied the motion and the Fourth Circuit affirmed.

Higgs submits that the Fourth Circuit incorrectly applied *Brady* as it relates to the sentencing phase of trial when it wrote,

> [T]o establish materiality, Higgs was required to demonstrate a reasonable probability that the evidence would have persuaded a juror to reach the conclusion that Haynes was "equally culpable" to Higgs in the murders, *and* that this mitigating factor, combined with the others, would have tipped the balance and led the juror to also conclude that the mitigating factors outweighed the aggravating factors so as to foreclose the sentence of death.

*Higgs-II*, 95 F. App'x 37, 43 (4th Cir. 2004) (emphasis in original). Focusing on the word "outweighed," Higgs submits that the Fourth Circuit deviated from the statute, which requires the jury, in order to impose a death judgment, to determine whether all the aggravating "factors found to exist *sufficiently* outweigh all the mitigating . . . factors found to exist." 18 U.S.C. § 3593(e) (emphasis added). Higgs argues that it is reasonably probable that the introduction of evidence casting Haynes in a light equally culpable with Higgs would have resulted in at least one juror finding that the aggravating factors did not *sufficiently* outweigh the mitigating factors, causing the juror to oppose the death penalty. Higgs thus reasons that the Fourth Circuit erred in affirming this Court's denial of his motion for a new sentencing hearing.

96

## A.

As stated previously, a habeas court does not ordinarily consider issues that have already been resolved and decided on direct review. *Boeckenhaupt*, 537 F.2d at 1183.

Higgs raised this *Brady* violation claim in the course of his direct appeal to the Fourth Circuit. *Higgs-II*, 95 Fed. Appx. at 43. Therefore, this Court need not reach the merits of the claim.

## B.

Still, lest there be any doubt, the Court accepts that the Fourth Circuit applied the correct legal standard. As the Fourth Circuit opined, the Supreme Court has held that "[e]vidence is 'material' for purposes of the *Brady* inquiry 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Higgs-II*, 95 F. App'x at 41 (quoting *Bagley*, 473 U.S. at 682).[36] In the present case, the Fourth Circuit did not simply find that the mitigating factors would not have outweighed the aggravating factors. It referred to the necessity of the mitigating factors "tipp[ing] the balance . . . so as to foreclose the sentence of death." *Higgs-II*, 95 F. App'x at 43. This additional language is in accord with the statutory standard for imposition of a death sentence, i.e., that the aggravation must "sufficiently outweigh" the mitigation.

As for this Court's denial of Higgs' request for a new sentencing and the Fourth Circuit's affirmance of that decision, the appellate court found that this Court did not abuse its discretion because, as is true throughout, "the evidence set forth at Higgs' trial provides 'strong support for the conclusion that [Higgs] would have been convicted of capital murder and sentenced to death

---

[36]At one point, the Government, citing Higgs' Brief, characterizes his claim to be that "the materiality test does not require a showing that it is reasonably probable that the result of the proceeding would have been different, had the evidence been disclosed to the defense." This characterization of Higgs' claim seems to be inconsistent with other parts of Higgs' Brief, which correctly state that the "*Brady* materiality analysis does require a showing that it is reasonably probable that the result of the proceeding would have been different, had the evidence been disclosed to the defense."

even if'" the witness statements had been introduced into evidence. *Higgs-II*, 95 F. App'x at 44 (citing *Strickler v. Greene*, 527 U.S. 263, 294 (1999)).[37]  There is no basis for disturbing this ruling.

### Claim 18: Post-Arrest Silence

Higgs next contends that the testimony of Government witness Domenick Williams regarding Higgs' post-arrest silence during a police interview violated Higgs' rights under the Fifth and Sixth Amendments.

Williams, facing charges of his own, was incarcerated with Higgs prior to Higgs' trial. At trial, Williams testified that Higgs told him of an instance in which police officers approached Higgs, who was at the time incarcerated, in an attempt to get Higgs to cooperate against Haynes. Higgs told Williams that he refused to discuss the case with the officers.

Higgs argues that Williams' testimony about Higgs' silence when questioned by the police violated Higgs' Fifth Amendment right to remain silent and his Sixth Amendment right to counsel. Higgs says that the use of his post-arrest silence against him, following the administration of *Miranda* warnings  by the police, violated his right against self-incrimination and his right to due process. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *United States v. Quinn*, 359 F.3d 666, 677 (4th Cir. 2004) ("*Doyle* forbids the government to use a defendant's silence against him at trial where the government implicitly or explicitly advised the defendant upon arrest that he should keep silent."). Higgs also claims his trial and appellate counsel were ineffective for failing to raise this issue.

---

[37] There is obviously no basis for an ineffective assistance of counsel claim in this regard since counsel raised and the Fourth Circuit decided the issue.

## A.

Both the Fifth and Sixth Amendment claims are procedurally defaulted. Higgs concedes that he has not previously argued that Williams' testimony violated these rights. As recognized throughout, though a procedural default can be excused upon a demonstration of cause and prejudice, *see Massaro*, 538 U.S. at 504, Higgs merely posits that his counsel's inneffective assistance constitutes "cause." *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (noting that ineffective assistance is "cause" for a procedural default), and submits that he was prejudiced as a result. He has demonstrated neither.

## B.

Procedural default aside, Higgs' claims fail on the merits. In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held that the privilege against self-incrimination protects individuals from "informal compulsion exerted by law-enforcement officers during in-custody questioning." In *Doyle*, the Court extended the privilege to preclude admission of evidence that a defendant exercised his right to remain silent during an interrogation, as defined by *Miranda*. *Doyle*, 426 U.S. at 618. "Interrogation" is defined as actual "questioning initiated by law enforcement officers," *Miranda*, 384 U.S. at 444, or "its functional equivalent." *Arizona v. Mauro*, 481 U.S. 520, 526 (1987) (citing *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Courts have interpreted the "functional equivalent" to include "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Innis*, 446 U.S. at 301; *see also Illinois v. Perkins*, 496 U.S. 292, 296 (1990); *United States v. Wright*, 991 F.2d 1182, 1186 (4th Cir. 1992) (*Miranda* only applies while "the defendant is being interrogated").

99

On the other hand, "[v]olunteered statements of any kind are not barred by the Fifth Amendment." *Innis*, 446 U.S. at 300 (citing *Miranda*, 384 U.S. at 478).

Insofar as his statements to Williams were concerned, Higgs was not in police custody at the time. *See Doyle*, 426 U.S. at 618. Williams was neither a police officer nor a person that police were using to elicit an incriminating response from Higgs. In fact, Williams had not even asked Higgs a question; Higgs volunteered the information about his silence. Thus, even if Williams had been a police officer, this volunteered statement would not have been barred by the Fifth Amendment. *See Innis*, 446 U.S. at 300.

## C.

Higgs submits that trial and appellate counsel's failure to object to or otherwise litigate these issues violated his Sixth Amendment right to effective counsel because, he says, there could have been no strategy behind the failure to object. The Court disagrees. Where an objection to evidence would have been futile, counsel is not constitutionally ineffective for failing to make the objection. *See Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). Because, as demonstrated above, any Fifth and Sixth Amendment objections on this point would have failed, counsel's failure not to make them did not violate Higgs' Sixth Amendment right to effective representation.[38]

### Claim 19: Jury Instruction Challenge

Higgs argues that his Fifth Amendment rights were violated when the Court failed *sua sponte* to instruct the jurors at the close of the penalty phase that they were not permitted to draw adverse inferences of guilt based on Higgs' decision not to testify. While he concedes that the Court gave a no-adverse inference instruction during the guilt phase, he believes the risk of a

---

[38] It is not clear whether Higgs is also arguing that, when approached by the police officers, he was denied a Sixth Amendment right to counsel. To the extent that he is, the point is academic because Higgs made no statement to the officers.

juror drawing an improper inference from the Court's failure to provide this instruction in the penalty phase was heightened. He argues that trial counsel's failure to request this instruction during the penalty phase, as well as appellate counsel's failure to raise the issue on appeal, constituted ineffective assistance.

### A.

This claim is procedurally barred. Higgs concedes that counsel failed to timely raise it at either the trial level or on appeal which, unless excused, precludes its subsequent litigation. *See United States v. Frady*, 456 U.S. 152 (1982). Again, a procedural default may be excused where the defendant establishes a cause for the omission and prejudice. *Massaro*, 538 U.S. at 504. Higgs has shown neither.

He argues that counsel's ineffectiveness constitutes cause but, as discussed below, the Court finds counsel's performance to have been adequate. *See Murray*, 477 U.S. at 488 ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective under the standard established in *Strickland v. Washington, supra*, we discern no inequity in requiring him to bear the risk of attorney error that results in procedural default.") In any event, Higgs has not shown a "substantial likelihood" that the Court's failure to provide a non-adverse-inference instruction during the penalty phase, after having given the instruction in the guilt phase, prejudiced the outcome. *Frady*, 456 U.S. at 174.

### B.

On the merits, this claim fails.

### 1.

The Court had no obligation to *sua sponte* provide a cautionary jury instruction regarding Higgs' failure to testify during the penalty phase.

101

To be sure, under the Fifth Amendment, a defendant's silence at trial cannot be used as evidence of his guilt. U.S.C.A. Const. Amend. V; *see also Griffin v. California*, 380 U.S. 609, 615 (1965) (the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt"); *Malloy v. Hogan*, 378 U.S. 1, 8 (1964) (the Fifth Amendment protects a defendant's right to remain silent "unless he chooses to speak in the unfettered exercise of his own will") The right to remain silent extends to the sentencing phase. *Mitchell v. United States*, 526 U.S. 314, 327 (1999) (a defendant may assert the privilege against self-incrimination in sentencing proceedings); *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981) (there is no basis for distinguishing "between the guilt and penalty phases of respondent's trial so far as the protection of the Fifth Amendment privilege is concerned"). To protect this right, a defendant may request that the court instruct the jury not to draw any adverse inference from his silence. *United States v. Francis*, 82 F.3d 77, 78 (4th Cir. 1996) (upon request the court gave the customary instruction regarding defendant's right not to testify and that no adverse inference could be drawn from the exercise of that right). However, in the absence of such a request, the court has no obligation to provide such an instruction. *See Carter v. Kentucky*, 450 U.S. 288, 305 (1981) (state trial judge was required to give the jury an adverse inference instruction only "upon proper request")

Higgs admits that counsel failed to request a no-adverse-inference instruction during the penalty phase. Accordingly, the Court had no duty to provide one. *See Carter*, 450 U.S. at 305. Beyond that, however, a cautionary instruction during the penalty phase was wholly unnecessary because the Court made clear to the jury during the penalty phase that its instructions during the guilt phase carried over into the penalty phase and such an instruction had been given during the guilt phase. *See Wilson v. State*, 525 S.E.2d 339, 347 (Ga. 1999), *overruled on other grounds by*

102

670 S.E.2d 388, 398 (Ga. 2008) (holding that the jury understands continuing applicability of jury instructions throughout the duration of the trial); *See also People v. Wharton*, 809 P.2d 290, 339 (Cal. 1991) (a reasonable jury would correctly assume "generic" instructions continued to apply); *State v. Wessinger*, 736 So.2d 162, 193-194 (La. 1999) (finding no error in failure to repeat cautionary guilt phase instruction during sentencing phase); *People v. Sanders*, 905 P.2d 420, 469 (Cal. 1995) (court was not required to repeat at penalty phase instruction on credibility of witnesses and circumstantial evidence which were given at guilt phase).

Thus, during the guilt phase, the Court instructed the jury as follows:

The defendant did not testify in this case. Under the United States Constitution he has no obligation to testify or to present any other evidence because it is the Government's burden to prove the defendant guilty beyond a reasonable doubt. [¶] The burden remains with the prosecution throughout the entire trial. It never shifts to the defendant. Any defendant is never required to prove that he is innocent, and you may not attach any significance to the fact that the defendant did not testify. No adverse inference against him may be drawn by you because he did not take the witness stand. You may not consider this against the defendant in any way in your deliberations in the jury room.

During the penalty phase the Court informed the jury:

The instructions that I gave you earlier in the case about witness credibility and so on and so forth still apply, so keep those in mind. But there are some specific instructions that I now direct to you in this phase of the case.

Since the Court made clear that the penalty phase instructions were *in addition* to those provided at the guilt phase, it strains credulity to suggest that the jurors might infer that they were now free to draw inferences of guilt from Higgs' silence during the penalty phase. A redundant jury instruction would have served no purpose. *See United States v. Soria*, 959 F.2d 855, 857 (10th Cir. 1992) (finding no general requirement for redundant instructions).

103

## 2.

As for the ineffective assistance of counsel claim relative to this issue, counsel's failure to request a cautionary instruction did not constitute ineffective assistance. For a conviction to be reversed on the grounds of ineffective assistance, a defendant must show that (1) the attorney's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced him. *Strickland*, 466 U.S. at 694. There is no basis to criticize trial counsel for not requesting a redundant instruction or appellate counsel for deciding not to raise the issue on appeal.

## Claim 20: Occurrence of the Offenses Within the Special Maritime and Territorial Jurisdiction of the United States

Higgs claims that the Government failed to establish federal jurisdiction over the Patuxent Wildlife Refuge where the killings occurred; that the Court improperly instructed the jury regarding the matter of jurisdiction; and that counsel's failure to object to these alleged errors constituted ineffective assistance.

## A.

Higgs begins by arguing that the Government failed to provide sufficient evidence that the Wildlife Refuge falls "within the special maritime and territorial jurisdiction of the United States," as required by 18 U.S.C. § 1111(b).

The term "special maritime and territorial jurisdiction of the United States" includes land "under the exclusive or concurrent jurisdiction of the United States." 18 U.S.C. § 7(3). To prove jurisdiction in this case, the Government offered the testimony of Douglas Vandergraft, Chief Cartographer for the United States Fish and Wildlife Service. Vandergraft's testimony, says Higgs, was objectionable because he was never qualified as an expert, but was permitted to

104

render a number of expert opinions with respect to jurisdiction. *See* Fed. R. Evid. 701 (barring lay opinions based on "scientific, technical or other specialized knowledge"). Higgs takes particular issue with Vandergraft's reliance on Fish and Wildlife maps of the Refuge. Those maps, according to Higgs, showed *ownership* of the Refuge, but not *jurisdiction*. Higgs contends that Vandergraft's reliance on the maps was improper because he never testified that the maps were accurate, stating only that the maps were "hopefully" up-to-date.

The Government rejects Higgs' arguments in every respect and the Court does as well. Higgs' challenge to Vandergraft's testimony qua expert is procedurally barred since it could have been raised on direct appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982). While this procedurally barred claim may be considered if Higgs can show "cause" for the default and "prejudice" as a result, again he has shown neither.

A court considering the sufficiency of evidence underlying a conviction will uphold a guilty verdict and deny habeas relief if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Williams v. Ozmint*, 494 F.3d 478, 489 (4th Cir. 2007) (applying *Jackson* standard to habeas petition to determine sufficiency of evidence sustaining state court conviction); *Arigbede v. United States*, 732 F. Supp. 615, 621-22 (D. Md. 1990) (applying *Jackson* standard to habeas petition to determine sufficiency of evidence sustaining district court conviction). Courts defer to the jury's determination of credibility and view the record "in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319.

Assuming Vandergraft's testimony was offered as lay testimony, it was properly admitted. A lay witness may testify about information from records of which he has personal knowledge and over which he maintains personal control. *MCI Telecomms. Corp. v. Wanzer*,

105

897 F.2d 703, 706 (4th Cir. 1990) (holding that a lay witness may testify to conclusions about "records … predicated on her personal knowledge and perception" and is not required to be identified as an "expert" witness). Vandergraft stated that he had worked in the Cartography Office of Fish and Wildlife for 15 years and that he personally maintained the Fish and Wildlife maps. Referring to those maps, he testified that the crime scene was within the Government's territorial ownership and jurisdiction. Indeed, Vandergraft specifically affirmed that the maps "accurately reflect the ownership, as well as the jurisdiction" of the Patuxent Wildlife Research Center as of January 1996, which directly refutes Higgs' argument that Vandergraft testified only to Government ownership, as opposed to jurisdiction.

Nor is it accurate to state that Vandergraft failed to authenticate the maps. While Vandergraft did state that Fish and Wildlife maps were "hopefully" up-to-date, he later testified that he had conducted a search to ensure that the particular maps he relied on with respect to the Refuge were accurate.[39]

Under the *Ozmint* and *Jackson* standards, Vandergraft's testimony, buttressed by the maps themselves, sufficed to establish that the Refuge was within the "special maritime and territorial jurisdiction of the United States." 18 U.S.C. § 1111(b).

## C.

Higgs nonetheless maintains that the Court's instructions regarding jurisdiction confused the jury. This is what the Court told the jury:

> The second element with regard to the first degree murder charge that the Government must prove beyond a reasonable doubt is that the killings occurred within the maritime and territorial jurisdiction of the Untied States. The Government has offered evidence that the killings occurred on the grounds of the Patuxent National Wildlife Refuge and that the Patuxent National Wildlife Refuge is owned by the federal government and is within its special maritime and territorial jurisdiction.

---

[39] As properly authenticated public records, the maps themselves were admissible on the issue of Government ownership of the land, *see* Fed. R. Evid. 803(8).

Thus, if you find that the killing occurred in the Patuxent National Wildlife Refuge, then you should consider the remaining elements. If, however, you find that the killing did not occur, killings, the killings [sic] did not occur in the Patuxent National Wildlife Refuge, or if you have a reasonable doubt as to this element, then it is your duty to find the defendant not guilty.

According to Higgs, this language on the one hand instructed the jury to find that the offenses occurred within the special maritime and territorial jurisdiction of the United States, but on the other hand merely required that the jury find the offenses occurred within the Refuge.

This argument lacks merit. To begin, the claim is procedurally defaulted for the same reason that the claim with respect to Vandergraft's testimony is procedurally defaulted; it could have been raised on direct appeal. Apart from the default, the claim is still deficient. While the jury is obliged to make the factual determination of whether the crime at issue occurred on a particular piece of property, the court, as a matter of law, has the authority to determine whether federal jurisdiction extends to a particular piece of property. *United States v. Bridges*, No. 94-5130, 1994 WL 687301, at *1 (4th Cir. Dec. 9, 1994) (finding that it is "well established that a court may determine, as a matter of law, the existence of federal jurisdiction over the geographic area, but the locus of the offense within that area is for the trier of fact"); *United States v. Roberts*, 185 F.3d 1125, 1139 (10th Cir. 1999) (finding that it is the role of the trial court to decide jurisdiction of a specific area).

Accordingly, the Court in this case had the authority to determine, and did in fact determine, that the Refuge was "within the special maritime and territorial jurisdiction of the United States," 18 U.S.C. § 1111(b), while leaving the jury to decide whether "the killing[s] occurred in the Patuxent National Wildlife Refuge." There was no jury confusion with respect to the Court's instructions.

**D.**

Finally, Higgs claims trial counsel were ineffective for failing to object to Vandergraft's testimony and the jury instruction, and for failing to move for judgment of acquittal pursuant to Fed. R. Crim. P. 29. He also claims that appellate counsel were ineffective for failing to challenge the jury instruction.

Higgs must show both that (1) his attorney's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that he was prejudiced by that performance. *Strickland*, 466 U.S. at 687. Where an objection would have been futile, counsel is not constitutionally ineffective for failing to make such an objection. *See Harris*, 204 F.3d at 683. Since any objection to Vandergraft's testimony or the Court's instruction on jurisdiction would have been futile, it follows that Higgs' counsel – trial and appellate – were not constitutionally ineffective.

**Claim 21: Government's Failure to Provide All Park Police and FBI Witness Statements and Reports**

Higgs contends that, in violation of his Fifth Amendment due process rights, the Government withheld evidence in the form of witness statements and reports collected by the Park Police and FBI. While he concedes that he is not making any "specific allegation that the Government failed to disclose particular law enforcement reports or witness statements," he suggests that somewhere there may be some undisclosed documents that would have materially affected his guilt and mitigated his punishment. He warns against prosecutors who "tack too close to the wind" by disclosing less material evidence than required. *Kyles*, 514 U.S. at 439 (finding that prudent prosecutors who are uncertain regarding how much evidence to disclose should disclose more information rather than less). He therefore requests that the Court order the

108

Government to review its evidence for any relevant documents that might have been *Brady* or

*Giglio* in nature, but which were not disclosed.[40]

## A.

Higgs is procedurally barred from litigating this issue since it was not preserved at trial or

raised on direct appeal. *See Massaro*, 538 U.S. at 504. Again, while Higgs may bypass

procedural default upon a showing of either actual innocence or cause and prejudice, he has

failed to demonstrate either. *See Bousley v. United States*, 523 U.S. 614, 622 (1998).

## B.

Higgs' argument is devoid of merit. Under *Brady*, the Government is only required to

disclose evidence that would be "material" to the defense. 373 U.S. at 87. The Supreme Court

has defined as material evidence that would create a "reasonable probability that, had the

evidence been disclosed to the defense, the result of the proceeding would have been different."

*United States v. Bagley*, 473 U.S. 667, 682 (1985). Here Higgs offers absolutely no facts, not

even a slight suspicion, that the Government failed to turn over material evidence.

As the Government correctly notes, a petitioner making § 2255 claims must set forth

specific facts in support of each ground of relief asserted. *See Blackledge v. Allison*, 431 U.S.

63, 74 (1977) (holding that a habeas petitioner must make specific allegations; "conclusory

allegations unsupported by specifics," or "contentions that in the face of the record are wholly

incredible" will not entitle one to discovery or a hearing); *see also Taylor v. United States*, 287

F.3d 658, 661 (7th Cir. 2002) (finding that a mere impression of what happened, rather than

specific allegations, does not satisfy the requirements for a collateral attack).

---

[40] Higgs states that at a later time he will move for discovery of all witness statements and reports generated during the investigation of these murders.

109

The "belief" of Higgs' habeas attorneys that trial counsel may not have been furnished with all exculpatory evidence that was available and their supposition that an error may have occurred finds no anchor in fact or law. Absent facts tending to show that relevant information was not turned over, the Court cannot possibly conclude that undisclosed "evidence" may have been material to his defense or that he was prejudiced as a result of the withholding.

### Claim 22: Cumulative Errors

Nearing the finish, Higgs argues that the cumulative effect of counsels' errors, as well as the alleged prosecutorial and Court errors, marred the fairness of his trial and sentencing proceedings. As a result, he says, his conviction and sentence should be overturned or, alternatively, that his sentence should be vacated. The Court rejects this claim.

In the first place, the Court has found no errors of counsel, the prosecution, or the Court in this case.

But the cumulative error argument itself is not recognized in this Circuit.

As for ineffective assistance of counsel claims, the Fourth Circuit has emphasized that it evaluates such claims on an individual rather than cumulative basis. *Compare Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998) (finding that "ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively"), *with Kubat v. Thieret*, 867 F.2d 351, 370 (7th Cir. 1989) (finding the consideration of combined errors to be appropriate). The same goes for alleged cumulative errors of the trial court. *See Arnold v. Evatt*, 113 F.3d 1352, 1364 (4th Cir. 1997) (rejecting a claim of cumulative effect of trial court's errors based on rejection of each of the individual court error claims), *cert. denied*, 522 U.S. 1058 (1998); *Mohr v. United States*, No. 03-2893, 2007 WL 2903235, at *10 (D. Md. Sept. 30, 2007) (holding that once the court found no attorney error, there could be no

110

cumulative error); *Robinson v. Conroy*, No. 01-1671, 2002 WL 32785545, at *4 (D. Md. Jan. 16,

2002) ("Because none of the issues raised by Robinson could be considered error, he cannot

string them together in hopes of forming a constitutional violation.")  Here, because Higgs has

failed to prove individual constitutional errors by counsel, his claim of cumulative error would

fail, even if the law of this Circuit recognized the cumulative error argument.  *See Fisher*, 163

F.3d at 852 ("Having just determined that none of counsel's actions could be considered

constitutional error … it would be odd … to conclude that those same actions, when considered

collectively, deprived [the defendant] of a fair trial.").  The same goes for alleged cumulative

errors of the Court.

The Supreme Court cases Higgs cites do not require a contrary conclusion.  In *Kyles v.*

*Whitley*, 514 U.S. 419, 436-37, 441 (1995), the Court held that, on habeas review, when

evaluating whether the evidence is material in violation of *Brady v. Maryland*, suppressed

evidence should be considered cumulatively.  But the materiality of suppressed evidence is not

the issue here.  Moreover, in *Taylor v. Kentucky*, 436 U.S. 478, 487-88 (1978), the Court found

reversible error on a *direct appeal* based on the cumulative effect of trial court and prosecutorial

errors that might otherwise be individually harmless.  *See also United States v. Martinez*, 277

F.3d 517, 532-33 (4th Cir. 2002) (recognizing that under "cumulative error doctrine," defendant

could establish reversible error on direct appeal through the combined effect of otherwise

harmless errors).  *Taylor* and *Martinez* are therefore distinguishable.  Higgs' has already

exhausted his direct appeals and is now seeking collateral relief.  But, as noted, in the context of

collateral relief the Fourth Circuit has clearly stated that individual constitutional errors must

exist before a court can consider cumulative relief.  *Fisher*, 163 F.3d at 852; *see also Greene v.*

*Hoke,* No. 08-294, 2009 WL 774491, at *6 (S.D.W.Va. Mar. 20, 2009) (adopting magistrate

111

judge's holding that petitioner was not entitled to cumulative relief where petitioner failed to establish individual errors committed by either trial court or counsel); *Aldridge v. Ballard*, No. 05-827, 2009 WL 772933, at *6 (S.D.W.Va. Mar. 18, 2009) (confirming magistrate judge's finding that cumulative error cannot be found where there are "no error[s] of federal law, constitutional or otherwise"). Higgs' claim of cumulative error in this habeas proceeding is without merit.

### Claim 23: Request for Evidentiary Hearing

Higgs argues that because he has alleged a multitude of facts supportive of his request for relief, he is entitled to an opportunity to prove them in an evidentiary hearing. The Court thinks not. A court may grant a motion for an evidentiary hearing when the defendant has pled facts that, if established, entitle him to relief, and there is a material dispute regarding those facts. *See Townsend v. Sain*, 372 U.S. 293, 312 (1963), *overruled on other grounds by* 504 U.S. 1 (1992) (holding that a federal court has the power to try facts anew if the petitioner "alleges facts, which if proved, would entitle him to relief"). Higgs acknowledges the wide discretion vested in courts during § 2255 proceedings in respect of matters involving disputed material facts. However, as the Government correctly argues, most of Higgs' claims "suffer from some procedural flaw that should prove fatal" and those that survive procedural challenge do not allege any facts which are "either potentially credible or, if taken as true, would merit relief." *See Engelen v. United* States, 6 F.3d 238, 240 (8th Cir. 1995) (holding that a habeas "petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact"). The Court finds no reason to hold an evidentiary hearing and the request for such a hearing is denied.

**Claim 24:  Juror Misconduct**

Higgs contends that his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments were violated based on juror misconduct during trial.

He argues that this misconduct included, but was not limited to, improper consideration of matters extraneous to the trial, improper exposure to publicity and community sentiment, improper exposure to witnesses and others who claimed to have knowledge or opinions about Higgs and the case, false or misleading responses of jurors on the voir dire, improper biases which infected the jury's deliberations, improper exposure to the prejudicial opinions of third parties, improper communications with third parties and/or the trial judge, and improper prejudging of the guilt/innocence and penalty phases of Higgs' trial.  Higgs also argues that his rights to a fair trial and due process were violated when the jury was not sequestered to avoid contact with the public.  He claims that trial and appellate counsel were ineffective for failing to raise these issues.  He asks for leave to interview jurors to prove the basis for these claims, arguing that his request is justified by the need for heightened standards for reliability in death penalty cases.

**A.**

These juror misconduct claims are procedurally defaulted.  As Higgs concedes, until now he has never argued that juror misconduct violated his Fifth, Sixth, Eighth, and Fourteenth Amendment rights.  He has shown neither cause nor prejudice to excuse the default.

**B.**

Nor is the claim valid on the merits.  While due process requires that a jury consider only the evidence developed before it at trial, and not information received from outside sources, *see Davis v. Zahradnick*, 432 F. Supp. 444, 447 (W.D. Va.), *aff'd en banc on other grounds*, 601

113

F.2d 153 (4th Cir. 1979), and 646 F.2d 123 (4th Cir. 1981), Higgs alleges no specific incident to support his assertion that there was juror misconduct, sending up trial balloons of unsupported claims of misconduct. Given this lack of specificity, including a total failure to demonstrate how the lack of a sequestration order prejudiced him, there is no basis to grant him relief or discovery. *See Taylor v. United States*, 287 F.3d 658, 661 (7th Cir. 2002) ("[A § 2255] motion 'shall specify all the grounds for relief which are available to the movant and of which he has or, by the exercise of reasonable diligence, should have knowledge and shall set forth in summary form the facts supporting each of the grounds thus specified.'").

Higgs would apparently have the Court find that, because of the severity and irreversibility of the death penalty, the Eighth Amendment requires a heightened standard for determining that death is the appropriate punishment, and for that reason it should permit him to conduct juror interviews. This theory finds no support in the law. While courts have surely required a heightened standard for determining that death is the appropriate punishment for certain crimes, *see Woodson v. North Carolina,* 428 U.S. 280, 305 (1976), no authority supports the proposition that juror interviews may be undertaken post-trial in death-penalty cases in a hunt for facts that might demonstrate juror misconduct.

Higgs argues that, under the American Bar Association Guidelines, "it is clear that, *where permitted*, post-conviction counsel have a duty to interview jurors." ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, 10.15.1, commentary, pg. 123 (rev. ed. 2003) (emphasis added). For good reason, however, post-trial interviews of jurors are highly restricted in this District pursuant to Local Rule 107.16, which states, "[u]nless *permitted* by the presiding judge, no attorney or party shall directly or through an agent interview or question any juror, alternate juror, or prospective juror, with respect to that

114

juror's service." L.R. 107.16 (emphasis added). This District takes the position that jurors should not have to account to interested parties, especially those who may be disposed to challenge the verdict and press the jurors to explain how and why they decided as they did. The Court, finding that the underlying claim is factually baseless, denied the request to interview jurors once before; it has no reason to modify its decision at this time.

### C.

While Higgs submits that trial and appellate counsel's failure to litigate these issues violated his Sixth Amendment right to effective counsel, he has not and cannot show that counsel's performance fell below an objective standard of reasonableness or that a reasonable probability exists that he was prejudiced by their allegedly deficient performance. *See Strickland*, 466 U.S. at 687. Because the underlying claims would have failed, counsel's decision not to litigate the issues in the trial court or raise them on direct appeal did not amount to ineffective assistance.

### Claim 25: Lethal Injection as Cruel and Unusual Punishment

Higgs' final argument is that execution by lethal injection, which he faces in Maryland, violates the Eighth Amendment prohibition against cruel and unusual punishment, and that both the U.S. Government Execution Protocol and the Maryland Execution Protocol exceed their respective statutory authorities.

### A.

With respect to the Eighth Amendment argument, Higgs argues that the potentially insufficient administration of the anesthetizing agent during the execution process, combined with the administration of a muscle paralyzing agent, may lead him to suffer an agonizing death without the ability to communicate any consciousness or feeling. He further argues that the

115

procedures used to administer the lethal injection, including the lack of expertise of the personnel performing the procedure, substantially increase the risk of painful death.

**1.**

This claim is not yet ripe for review because the instant Petition and appeals from it remain and Higgs has not yet been given an execution date. U.S. Const. art. III, § 2; *see Kennedy v. Block*, 784 F.2d 1220, 1222 (4th Cir. 1986). Moreover, litigation may modify the Maryland Protocol prior to Higgs' actual execution. Accordingly, there is no "direct and immediate dilemma for the parties" that compels judicial resolution of the issue at this time. *See New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1500 (10th Cir. 1995).

This claim also fails because it is improperly brought as a § 2255 claim. Under § 2255, federal courts have jurisdiction to consider errors leading to a criminal conviction and those committed at sentencing, but they do not have the jurisdiction to determine the legality of the rules for implementing that judgment. *United States v. Addonizio*, 442 U.S. 178, 185 (1979). Higgs is not contesting the validity of his conviction or sentence; he only attacks the method of imposing his sentence. Such a challenge, when timely, would properly be brought pursuant to 28 U.S.C. § 2241, *United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004).

**2.**

Even if the present claim were properly before the Court, it is of highly doubtful prospect. The Supreme Court has decided that capital punishment is constitutional, *Gregg v. Georgia*, 428 U.S. 153, 177 (1976), and, since Higgs' trial, that the three-drug protocol for execution used by the Federal Government and the State of Maryland does not constitute cruel and unusual punishment. *Baze v. Rees*, 128 S. Ct. 1520, 1532-34 (2008). As explained in *Baze*, to prevail on an Eighth Amendment claim, a defendant must show that there is a "'substantial

116

risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.'" *Id.* at 1531 (citing *Farmer v. Brennan*, 511 U.S. 825, 842, 846, and n. 9 (1994)).  Although the risk of future harm can qualify as cruel and unusual punishment, the Constitution "does not demand the avoidance of all risk of pain in carrying out executions." *Baze*, 128 S. Ct. at 1529, 1530.

Referring specifically to the three-drug protocol, the Supreme Court observed that "it is difficult to regard a practice as 'objectively intolerable' when it is in fact widely tolerated." *Baze*, 128 S. Ct. at 1532 (recognizing that thirty-six states that sanction capital punishment have adopted lethal injection as the means and that thirty of those states as well as the Federal Government use the same three-drug protocol).

The Supreme Court explicitly rejected Higgs' argument as to speculative dangers, such as the possibility that the drug will not achieve its intended effect or that human error may occur during administration of the procedure. *Baze*, 128 S. Ct. at 5133-34.  It held that the potential of the execution to cause pain due to an accident, without the suggestion of malevolence, "does not establish the sort of 'objectively intolerable risk of harm' that qualifies as cruel and unusual." *Id.* at 1531; *see also Walker v. Johnson*, 448 F. Supp. 2d 719, 723 (E.D. Va. 2006) (citing *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 464 (1947) (holding that the possibility of an accident in the process of execution cannot constitute substantial risk of harm)).  Thus, although definitive resolution of the issue must await imminent application of the challenged procedure, the Government and Maryland Execution Protocols do not appear to present an Eighth Amendment problem. *See Baze*, 128 S. Ct. at 1532-34.

117

**B.**

Higgs also argues that the U.S. Government Execution Protocol is not statutorily authorized. He reasons thus: Pursuant to 18 U.S.C. § 3596(a), a death sentence should be implemented "in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a) (2006). The Department of Justice has violated this provision by delegating to the Director of the Bureau of Prisons responsibility for promulgating the Bureau's own Protocol for the execution of federal prisoners, *see* 28 C.F.R. § 26.3(a)(4), instead of following procedures prescribed by Maryland law. Indeed, says Higgs, Congress specifically rejected an amendment to 18 U.S.C. § 3596(a) that would have authorized the Attorney General to prescribe a uniform method of execution for federal prisoners. *See* H.R. Rep. 104-879 at 204 (1997). Higgs suggests that the Government Protocol is a "rule" that should have been, but was not subject to the notice and comment provisions of the Administrative Procedure Act. *See* 5 U.S.C. § 553 (2006).

As with the challenge to the method of execution, this claim is improperly raised in a § 2255 action and should, when timely, be brought under 28 U.S.C. § 2241. *See United States v. Little*, 392 F.3d 671, 679 (4th Cir. 2004).[41]

Here too, the challenge to the Government would ultimately seem to be weak on the merits. Article 18 U.S.C. § 3596 requires that execution be implemented in the "manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a) (2006). Significantly, the statute only speaks to the "manner" of implementing the sentence without reference to "procedure." The *manner* of execution authorized by Maryland law is lethal injection. Md. Code Ann., Correctional Services, § 3-905. Because lethal injection has been

---

[41] Whether a *Bivens* action or a federal civil rights claim pursuant to 42 U.S.C. § 1983 are alternative avenues of challenge, is not before the Court. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 397 (1971); *Hill v. McDonough*, 547 U.S. 573, 580 (2006).

deemed permissible, *see Baze*, 128 S. Ct. at 1532-34, the Government appears to be in compliance with the authorizing statute.

C.

Higgs' final contention is that the Maryland Protocol, which he says should be implemented in place of the Government Protocol pursuant to 18 U.S.C. § 3596(a), goes beyond what the underlying Maryland statute, Md. Corr. Serv. section 3-905, authorizes. But again he travels beyond the bounds of a proper federal *habeas* petition, which does not extend to claims that state rules violate state statutes. *See* 28 U.S.C. § 2255(a) (2006) (a petitioner in a *habeas corpus* proceeding must allege that "his sentence was imposed in violation of the Constitution or laws of the United States"); *see also Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983) (citing *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981) (holding a state's interpretation of its rules provides no basis for federal *habeas corpus* relief because no constitutional question is involved)). Accordingly, Higgs challenge to the Maryland Protocol is also rejected.

**CONCLUSION**

Having considered Higgs' various challenges to his conviction and sentence and finding merit in none of them, the Court **DENIES** his Motion for Relief, as well as his Motion for Discovery.

A separate Order will issue.

/s/
_____
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**April 6, 2010**

119