**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | | **CIVIL ACTION NO. PJM 05-3180** |
| **v.** | **:** | **CRIMINAL NO. PJM 98-0520** |
| | | |
| **DUSTIN JOHN HIGGS** | **:** | |

**...oOo...**

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO ALTER OR AMEND
JUDGEMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(E)**

Comes now the United States of America, by and through undersigned counsel, and in response to opposition to the Petitioner, Dustin John Higgs' Motion to Alter or Amend Judgement Pursuant to Federal Rule of Civil Procedure 59(e) states as follows:

**I.      BACKGROUND**

On or about October 11, 2000 a jury convicted Higgs of three counts of first-degree premeditated murder (18 U.S.C. § 1111(a)), three counts of first-degree murder committed in the perpetration or attempted perpetration of a kidnapping, three counts of kidnapping resulting in death (18 U.S.C.A. § 1201(a)(2)), and three counts of using a firearm "during and in relation to [a] crime of violence." (18 U.S.C. § 924(c)) and recommended a death sentence. Higgs was accordingly sentenced to death. In a published opinion, the Fourth Circuit affirmed the conviction and sentence in full. *United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) (hereinafter "*Higgs-I*"). On November 29, 2004, the Supreme Court of the United States subsequently denied *Higgs'* petition for writ of certiorari. *Higgs v. United States*, ___ U.S. ___, 125 S. Ct. 627, 160 L. Ed. 2d 456 (2004).

On November 28, 2005 (364 days after the Supreme Court denied a certiorari from his direct appeal), Higgs filed a 122 page Motion for Relief Pursuant to 28 U.S.C. § 2255 or in the Alternative Pursuant to 28 U.S.C. § 2241 (referred to as "Mot."), which asserted 24 claims of error. On April 7, 2010, this court issued an order and written opinion (referred to as "Op.") denying all of Higgs'

claims.  On May 4, 2010, Higgs filed a motion pursuant to Rule 59 (e) to alter or amend this court's

judgement as to Claim 1-- the court's ruling that the defendant failed to establish a claim of

ineffective assistance of counsel based upon trial counsel's failure to adequately address the

comparative bullet lead analysis ("CBLA") – only.  Mot. at 1.  For the reasons set forth, this court

should deny the defendant's motion.

## II.    ARGUMENT

Federal Rule of Civil Procedure 59 (e) provides the court with authority to alter or amend

a judgement within 28 days after its entry.    Rule 59 (e) motions will be granted in three

circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for

new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest

injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir.1998). Higgs asserts

he is entitled to relief under the third circumstance.

### 1.    Higgs Is Not Entitled to Rule 59(e) Relief Because He Merely Restates His Previously Made Arguments.

It is well settled law that a motion under Rule 59(e) must do something other than merely

reassert arguments which were previously made. *Id; see also, Hooker v. United States*, 2000 Fed.

Appx 237, 2006 WL 2683289 (4th Cir. 2006) (district court did not abuse its discretion in denying

defendant's Rule 59(e) and Rule 60 motions because they merely reasserted previously made

allegations) *citing, United States v. Williams*, 674 F.2d 310, 312-13 (4th Cir. 1982) (noting when a

motion is nothing more than a request the district court change its mind it is not authorized by Rule

60).  A review of the defendant's motion clearly establishes it is nothing more than a reassertion of

the arguments he made in his original petition and therefore his motion should be denied. In his

motion, Higgs argues the court erroneously determined that any error by trial counsel was not

prejudicial.  Higgs asserts the CBLA evidence was essential to the government's case and he was prejudiced by his attorney's failure to adequately attack it.  This is the same argument he made in his original motion to vacate.  *See* Pet. Brief in Supp. of Mot. to Vacate (Docket no. 504)  at 30-31. Given the defendant is merely rearguing the issue, he has failed to satisfy the requirements of Rule 59(e) and his motion should be denied.

> **2.    Higgs Has Failed to Establish a Clear Error of Law or a Manifest Injustice.**

Assuming arguendo that Higgs is not merely reasserting his original arguments, his motion to alter or amend the judgement should be denied on its merits as he has failed to establish a clear error of law or a manifest injustice.  Specifically, the petitioner alleges the court made two errors when it denied the petitioner's claim for relief based upon the admission of comparative lead bullet analysis (CBLA) during the guilt phase of petitioner's trial.

In his petition for relief under 2255, the petitioner presented a three fold argument relating to the CBLA evidence; 1) a Brady claim based upon the government's failure to disclose FBI studies; 2) a newly discovered evidence claim based upon the post trial evidence of the lack of reliability of the CBLA; and 3) an ineffective assistance of counsel claim based upon trial counsel's failure to adequately confront the CBLA evidence.  After disposing of the petitioner's first two allegations with respect to the ineffective assistance of counsel claim, the court denied it stating:

> "passing the question of deficiency *vel non* of counsel's performance, the court concludes that there was no reasonable probability that absent counsel's alleged errors, the result would have been different. The multiplicity and the strength of the evidence previously catalogued establish that proposition beyond pre-adventure,"

Op. at 24.

In this motion to amend or alter judgement, the petitioner does not attack this court's ruling with regard to his first two allegations (*Brady* claim and newly discovered evidence), but rather asserts this court committed clear error or a manifest injustice occurred when it determined that petitioner was not prejudiced by counsel's performance in handling the CBLA evidence. Mot. at 2. In his motion, the defendant takes exception with this court's recitation of the trial evidence and asserts that "without the flawed CBLA evidence, these bullets have no connection to the murder or any other crime." Mot. at 4. This assertion is incorrect and defied by the evidence presented at trial and catalogued in this court's opinion. *See* Op at 20-23.

The .38 caliber bullets recovered from two other shooting incidents (Chaconia shooting and the Cherry Lane shooting) were linked to the crime scene bullets based upon evidence of their same caliber, type and rifling characteristics. The first shooting occurred about two months before the murders. Higgs got into an argument outside the Chaconia Nightclub in Washington, D.C., and shot out the windows of a vehicle from his van. During a search of the damaged vehicle, the police recovered a .38 caliber bullet. An accomplice to the shooting, Wondwossen Kabtamu, testfied about this shooting and that after Higgs' threw the gun out the window of the van, they returned to get the weapon at Higgs' insistence. Higgs was later charged with the shooting and Domenick Williams, a jailhouse lawyer, testified that Higgs explained that he did not want to plead guilty to it "because they would try to use the gun in another case." When Williams learned of the Indictment for the murders of the three women, Higgs commented to him, "You see why I can't plead guilty to that charge?"

The second shooting occurred on Cherry Lane in Laurel, Maryland, on December 10, 1995, when Higgs and Haynes fired at a man named Rodney Simms following a verbal dispute over a woman. At the scene, the police later recovered a nine millimeter and .38 caliber bullets and bullet

4

casings. In April 1997, Higgs pleaded guilty to the Cherry Lane shooting. During the plea hearing, the prosecutor stated that Haynes had fired the nine millimeter handgun and that Higgs had fired the .38 caliber handgun. Higgs did not contest the facts of the shooting, but gratuitously asserted that he "didn't have a .38. It was the other way around." While awaiting trial in the D.C. jail, Higgs made comments to Domenick Williams evincing his consciousness of guilt. He told Williams that he had rebuffed an offer to cooperate against Haynes. When Williams said that the authorities would likely extend a similar offer to Haynes, Higgs responded "that his youngan would hold up," and "that the Government wouldn't offer a deal to the trigger man." Higgs asked Williams, in reference to Gloria, what his chances would be "if the witness after the fact wasn't there." Williams told him that "his chances would be good," but Higgs later "explained to [Williams] that he wasn't worrying about the [murder] case because" former D.C. Jail inmates Melvin Grayson and "T" "would be out there to handle anything that he needed."

In addition to this evidence which placed a .38 caliber firearm in Higgs' hand, on two separate occasions prior to the charged murders, in March 2006, approximately two months after the murders, .38 caliber ammunition was recovered including wadcutter bullets which were the same type recovered from the crime scene and used in the shootings (.38 caliber wadcutters). Finally, the testimony of Victor Gloria placed the gun in Higgs possession the night of the murder. As Gloria described Higgs removing the gun from a drawer in Higgs' apartment and subsequently handing it to Haynes moments before Haynes shot the three victims.[1]

Based upon the overwhelming evidence presented, the defendant has failed to establish that this court committed clear error in determining the defendant was not prejudiced by trial counsel's

---

[1]    The government does not reiterate all of the evidence of Higgs guilt, but rather only that evidence which addresses defendant's argument about the prejudicial impact of the CBLA testimony.

5

handling of the CBLA evidence.  Nor is there any manifest injustice given the sheer quantity and quality of the evidence of the defendant's guilt.

The defendant's second and final allegation of clear error is that the court erred because it failed to specifically state that it had considered whether counsel's failure to adequately address the CBLA evidence prejudiced Higgs during the sentencing proceeding.  Mot. at 5.  Preliminarily, it must be noted that in his original motion to vacate his conviction and sentencing, as well as his brief in support of his motion, Higgs did not request a new sentencing proceeding, in the event the trial court denied his request for a new trial based upon the CBLA claim.  *See* Mot. to Vacate, at 20-21; Pet. Brief in Supp. of Mot. to Vacate at 29-32.[2]

Moreover, this court did not commit clear error or a miscarriage of justice by not granting the petitioner a new sentencing based upon the CBLA claim.  In *Wiggins v. Smith*, the Supreme Court applied the same *Strickland* standard of prejudice to a claim of ineffective assistance of counsel in a capital sentencing proceeding, that is  "to establish prejudice, a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Wiggins v. Smith*, 439 U.S. 510, 534 (2003),  *quoting Strickland v. Washington*  466 U.S. 668, 694 (1984).  In *Wiggins*, the court found trial counsel had failed to adequately investigate and present mitigating evidence of the defendant's horrific childhood. *Wiggins*, 439 U.S. at 535.  To determine the prejudicial effect the court "reweigh[ed] the

---

[2]   As this was a claim which should have been made at the time of the original pleading , it cannot be raised by a motion under Rule 59(e) and should be summarily denied. See  *Pac. Ins. Co.*, 148 F.3d  at  403,  *citing* 11 Wright et al., *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995) (The Rule 59(e) motion may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.").

evidence in aggravation against the totality of available mitigating evidence." *Wiggins*, 439 U.S. at 534. The Supreme Court concluded "that had the jury been confronted with this considerable mitigating evidence, there is a reasonable probability that it would have returned with a different sentence." *Wiggins*, 439 U.S. at 536.

Applying this standard it is clear that this court did not commit any error , much less clear error or that its denial of a new sentencing constitutes a manifest injustice. Unlike *Wiggins*, the alleged ineffectiveness of counsel relating to the CBLA evidence, had no impact on the government's aggravating case nor the petitioner's case in mitigation. During the sentencing phase, the jury found that the government had proven beyond a reasonable doubt four statutory aggravating factors: (1) that the deaths occurred during the commission of another crime (kidnapping), for the first-degree murder counts only; (2) that Higgs had a previous conviction of a violent felony involving a firearm, based on Higgs' guilty plea to assault and reckless endangerment for his participation in the Cherry Lane shooting; (3) that Higgs had a previous conviction for a serious federal drug offense, based on Higgs' March 1996 arrest and subsequent conviction for possession with intent to distribute cocaine base; and (4) that the crime for which he was on trial involved multiple killings in a single criminal episode, and two non-statutory aggravators: (1) that Higgs had caused harm and loss to each victim and their families, based on the effect of the offense on the victims, their personal characteristics as individual human beings, and the impact of the death upon the victims and their families ("victim impact"); and (2) that Higgs obstructed the investigation into the kidnappings and murders by tampering or attempting to tamper with evidence and witnesses ("obstruction of justice"). Members of the jury also found three mitigating factors by a preponderance of the evidence: (1) that Higgs was not the sole proximate cause of the victims' deaths (12 jurors); (2) that Higgs was impaired by alcohol and marijuana at the time of the murders

(2 jurors); and (3) that a sentence of death would have an adverse impact on Higgs' son (4 jurors). The jury also unanimously rejected three additional mitigating factors: (1) that Haynes was an equally culpable defendant who had not been sentenced to death for the murders; (2) that Higgs' family history, including the abandonment by his father and the death of his mother at a young age, influenced the direction his life had taken; and (3) that other factors in Higgs' background, record, or character or other circumstances of the offense mitigated against imposition of the death sentence. *See, United States v. Higgs*, 353 F.3d 281, 295 (4th Cir. 2003).

As noted previously, while the CBLA evidence connected the various bullets to Higgs and therefore the murder weapon, there was abundant independent evidence which made this connection and established Higgs involvement. This evidence included the rifling characteristics of the bullets, Higgs admission and guilty plea to the Cherry Lane shooting, his admissions to Dominick Williams relating to the Chaconia shooting and the observations of Kabtamu and Gloria placing the gun in his hand. *See, United States v. Higgs*, 353 F.3d at 289-295.

Moreover, the aggravating factors were not impacted by the CBLA evidence. For example, the aggravating factor relating to the Cherry Lane shooting was proven by a certified copy of Higgs guilty plea. The Chaconia shooting was pertinent to the sentencing as there was evidence that Higgs had attempted to influence Kabtamu. None of this evidence would have been weakened by the omission of the CBLA. Similarly, the omission of the CBLA would not have strengthened Higgs' mitigation case. Given all of the evidence, there is not a reasonable probability that the jury would have returned a different sentence. Consequently, the defendant has failed to establish that this court

8

clearly erred or there was a manifest injustice created by this court's failure to grant a new sentencing.[3]

## III.    CONCLUSION

For all of the foregoing reasons, the United States of America respectfully requests that this Court deny Higgs' Motion to Alter or Amend Judgement Pursuant to Federal Rule of Civil Procedure 59(e) .

Respectfully submitted,

Rod J. Rosenstein
United States Attorney


By:_____
Deborah A. Johnston
Assistant United States Attorney

---

[3]   In support of his motion, the defendant cites two cases which are readily distinguishable from this case. In *Cone v. Bell*, 128 S.Ct. 1769 (2009), the Supreme Court reversed and remanded with instructions to the court to determine if the suppressed evidence regarding the defendant's extensive drug use when coupled with the other mitigating evidence would have resulted in a different sentence.  In *United States v. Hammer*, 404 F.Supp. 2d 676, 796 (M.D.Pa. 2006), the district court vacated the death sentence and ordered a new sentencing proceeding finding that "the failure of the Government to disclose the 302 statements undermines our confidence in the jury's determination that Mr. Hammer engaged in substantial planning and premeditation and the jury's sentencing recommendation."  In *Hammer,* the government argued that the defendant's actions of making ropes out of sheets was evidence of the statutory aggravator of substantial premeditation and planning.  The suppressed evidence included statements from other inmates that the ropes made from braiding sheets together were used for consensual sex acts.  *Id.* at 799.  In both of these cases there was  suppressed evidence which had a  direct bearing on the presence of either a statutory aggravating factor or a mitigating factor. That is not the case here.

CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2010, a copy of Government's Response to Petitioner's

Motion to Alter or Amend Judgement Pursuant to Federal Rule of Civil Procedure 59(e) was

electronically filed in this case and was served by ECF to defense counsel.

_____/s/_____
Deborah A. Johnston
Assistant United States Attorney