Case 8:98-cr-00520-PJM   Document 551   Filed 05/04/10   Page 1 of 7

_____ FILED  _____ ENTERED
_____ LOGGED _____ RECEIVED

JUL 2 0 2010

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Respondent, | Criminal No. PJM-98-0520 |
| v. | Peter J. Messitte, U.S.D.J. |
| DUSTIN JOHN HIGGS, | Greenbelt Division |
| Petitioner. | |

### PETITIONER'S MOTION TO ALTER OR AMEND THE JUDGMENT
### PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 59(E)

Petitioner Dustin John Higgs respectfully requests that this court alter or amend its judgment pursuant to Federal Rule of Civil Procedure 59(e). This Court may grant relief under Rule 59(e) "to correct a clear error of law or prevent manifest injustice." *Pacific Insurance Co. v. American National Fire Insurance Co.*, 148 F.3d 396, 403 (4th Cir. 1998); *see also* 11 Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d* § 2810.1 (1995). For the following reasons, Petitioner submits that this Court made a number of clear errors with regard to the adjudication of Claim I contained in the Section 2255 Motion. Petitioner requests that this Court alter and amend the judgment to correct these errors.

### Argument

Trial counsel utterly failed to challenge the misleading and false testimony offered by the Government's expert witness with regard to Comparative Bullet Lead Analysis ("CBLA"). The "science" of CBLA has been thoroughly debunked, exposed as a sham and discredited. Nonetheless,

1

Motion "DENIED" this 19 day
of JULY, 2010.

PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

the "science" was a key aspect of the Government's evidence against Mr. Higgs, proving a critical link between bullets found at the murder scene and bullets that the Government said were fired by Mr. Higgs during other violent crimes. The complete failure to challenge this "science" deprived Mr. Higgs the effective assistance of counsel guaranteed by the Sixth Amendment, impacting both the guilt and the sentencing phase of his trial. This Court denied relief on Claim I on the sole ground that any deficient performance by counsel did not prejudice Petitioner. Opinion filed April 7, 2010 at 23-24 (hereinafter "Op.").[1] This was error. Petitioner was prejudiced by the erroneous admission of junk science during the guilt phase. At a minimum, it is reasonably likely that the outcome of the penalty phase would have been different had counsel challenged the admissibility and weight of the CBLA evidence.

At trial, the CBLA evidence was used to draw a link between the homicides and prior shooting incidents at the Chaconia nightclub and on Cherry Lane. That link, in turn, was used to support the Government's theory at the guilt/innocence phase of trial that Mr. Higgs was the shooter, and to support arguments concerning his culpability and propensity for violence at the penalty phase of trial. The prominence of evidence concerning the Chaconia and Cherry Lane shootings both in the Government's evidentiary presentation and closing arguments at both guilt/innocence and penalty phases confirms the significance to the Government of establishing the link between the three incidents.

This Court's assessment that Mr. Higgs was not prejudiced by the faulty and inadmissible

---

[1] Since the prejudice standard for *Strickland* purposes is coextensive with the materiality standard for Petitioner's *Brady* claim, this Court assessed prejudice for counsel's errors as part of the analysis of Petitioner's *Brady* claim. Op. at 20-21.

CBLA evidence because other evidence admitted at trial purportedly supports the link between Mr. Higgs and Chaconia and Cherry Lane crime scenes. Op. at 20-21. However, the other evidence cited by the Court provides no link between Mr. Higgs and the bullets in question, only with *a* .38 caliber gun or *some* .38 caliber bullets.

The Court cites six pieces of evidence that purportedly link Mr. Higgs to the murder weapon and to the prior shooting incidents. However, none of this other evidence matched the CBLA evidence in force and apparent probative value.

First, the Court cites eyewitness testimony linking Mr. Higgs to the firing of a .38 caliber weapon at the Chaconia nightclub. Op. at 20. However, this eyewitness testimony at most showed that Mr. Higgs had fired *a* .38 caliber weapon before, without any specific link the gun or the bullets used and recovered in this case. Only the flawed CBLA testimony provided this – albeit flawed – link.

Second, the Court cites ballistics evidence showing similarities between the bullets used at Chaconia and in the homicides. Op. at 20. However, this Court itself acknowledges that this testimony merely showed that over 1.5 million weapons in existence shared these same similarities. Op. at 46. This evidence created at best a highly tenuous link between the prior shooting and the homicides. Id. The CBLA testimony went much further than either of these two pieces of evidence, by providing an alleged (but flawed) link between Mr. Higgs and the actual bullets fired at one of the victims in this case. Obviously, .38 caliber guns are common, and the fact that Mr. Higgs allegedly previously fired a .38 caliber gun is of minimal consequence in assessing his guilt for a later crime carried out with a .38 caliber weapon.

Third, this Court cited statements by Mr. Higgs implying he owned the .38 used in the

3

Chaconia shooting. Op. at 21. Again, these statements were not probative of Mr. Higgs' use or control of any weapon used in the murder, in the absence of a link between the gun used at Chaconia and the gun or bullets used in the murder case.

The next pieces of evidence cited by the Court are that Mr. Higgs had, in his apartment, .38 caliber bullets, and that Mr. Higgs pled guilty to a crime involving the use of a .38 caliber weapon. Op. at 21. Again, the prior use of a weapon or simple access to bullets are not probative of Mr. Higgs' culpability. Without the flawed CBLA evidence, these bullets have no connection to the murder or any other crime.

Only the final piece of evidence cited by this court, the testimony of Victor Gloria, is probative at all of Mr. Higgs' culpability. Op. at 21. However, Mr. Gloria's testimony was impeached at trial, calling into question both the motives for the testimony as well as his opportunity to witness the facts to which he testified. Only the misleading and flawed CBLA evidence corroborated his testimony. Without the CBLA evidence, the jury most likely would not have believed a single impeached and alleged accomplice as evidence supporting a conviction for capital murder. Even if the jury did convict, it is highly likely that at least one juror would have voted for a sentence less than death.

Further, evidence that Mr. Higgs fired a .38 caliber weapon at the Chaconia nightclub and at Cherry Lane was extremely damaging, tending to prejudice him in the eyes of the jury as to both the sentencing and guilt phases of his trial. The evidence of these shootings was *only admissible* because of alleged link between the bullets at Chaconia and those recovered at the murder scene. The Government offered no other argument in support of its admission of evidence of the Chaconia shooting. PTT, 9/22/00, 119. Thus, the Government argued that the Chaconia and Cherry Lane

4

Case 8:98-cr-00520-PJM   Document 551   Filed 05/04/10   Page 5 of 7

shootings were not offered to show violent propensity – prohibited by Rule 404 (b) – but instead to show that Petitioner possessed the same ammunition that was used in the killings.

The Government's use of CBLA directly – but falsely – linked Petitioner to the violent acts, and the Government took full advantage of this evidence (arguing it in its opening, closing and through various witnesses).

This Court further erred when it considered prejudice only as to the guilt phase of Mr. Higgs' trial. Even if the erroneous admission of unchallenged CBLA evidence did not serve to undermine confidence in Mr. Higg's conviction – which it should – it certainly prejudiced him during the sentencing phase. When this Court assessed prejudice, it limited its analysis to asking whether the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Op. at 21, citing *Kyles v. Whitley*, 514 U.S. 419, 435 (1995).[2] The proper question with respect to the penalty phase, however, is different. At capital sentencing, the proper question is whether there is a reasonable probability that counsels' deficient performance could have affected the weighing of even one juror in imposing a sentence of death. *Wiggins v. Smith*, 539 U.S. 510, 537 (2003).

"In assessing the impact of *Brady* violations on the penalty-phase proceedings, the question is whether the withheld evidence would have had an effect on even a single juror because the vote for life of one single juror in the sentencing phase of a capital trial results in the imposition of a life sentence." *U.S. v. Hammer*, 404 F.Supp.2d 676, 796 (M.D. Pa. 2006), appeal and cross appeal dismissed, 564 F.3d 628 (3d Cir. 2009). In *Hammer*, the court denied guilt phase relief on a *Brady*

---

[2]This Court applied *Brady* materiality to the prejudice prong of the ineffective assistance of counsel claim. This was not error, since the assessment of materiality and prejudice are coextensive. *Banks v. Dretke*, 540 U.S. 668, 698 (2004).

claim, but granted penalty relief on the same claim. Thus, even where a petitioner does not establish prejudice with respect to his conviction, a reviewing court must nonetheless consider whether there is prejudice with respect to the death sentence.

Indeed, in *Cone v. Bell*, 129 S. Ct. 1769 (2009), the Court denied guilt phase relief on a *Brady* claim, finding that the suppressed evidence was not material to the finding of guilt. *Id.* at 1785. At the same time, the Court found that the Court of Appeals erred in failing to distinguish between the materiality of the evidence with respect to guilt and the materiality of the evidence with respect to punishment. *Id.* at 1784. Therefore, the Court remanded the case for a full review of the effect of the improperly suppressed evidence regarding the sentence of death. *Id.*

Here, even if this Court does not deem Mr. Higgs entitled to guilt phase relief due to the ineffective assistance of counsel for failing to challenge inadmissible CBLA evidence, he should receive a new penalty hearing. Mr. Higgs' case was a close one, with jurors finding the existence of three mitigating factors. See *United States v. Higgs*, 353 F.3d 281, 295 (2003). It is reasonably likely that exclusion of CBLA evidence upon a proper challenge by trial counsel would have led at least one of the jurors to weigh the aggravating and mitigating circumstances in favor of sparing Mr. Higgs' life.

WHEREFORE, Mr. Higgs respectfully requests that this Court grant his motion to alter or amend the judgment.

Respectfully Submitted,

/s/ Angela Elleman

Angela Elleman
Supervising Assistant Federal Defender
Signing for All Counsel
Michael Wiseman
Chief, Capital Habeas Corpus Unit
Federal Community Defender Office
Eastern District of Pennsylvania
Capital Habeas Corpus Unit
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Dated: May 4, 2010
       Philadelphia, PA

## Certificate of Service

I, Angela Elleman, hereby certify that on this 4th day of May, 2010 I served a copy of the foregoing upon the following persons in the manner indicated:

Deborah A. Johnston
Sandra Wilkinson
Assistant United States Attorneys
Office of the United States Attorney
6500 Cherrywood Lane, Suite 400
Greenbelt, MD 20770-1249
By United States Mail, First Class and
By Electronic Mail

/s/ Angela Elleman
_____

Angela Elleman