**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| | : | |
| UNITED STATES OF AMERICA, | : | Criminal No. PJM-98-0520 |
| | : | |
| Respondent, | : | Civil No. PJM-05-3180 |
| | : | |
| v. | : | Peter J. Messitte, U.S.D.J. |
| | : | |
| DUSTIN JOHN HIGGS, | : | Greenbelt Division |
| | : | |
| Petitioner. | : | |
| | : | |

**PETITIONER'S REPLY IN SUPPORT OF**
**MOTION FOR CERTIFICATE OF APPEALABILITY**

Pursuant to this Court's Order of September 7, 2016, ECF No. 610, Petitioner Dustin

John Higgs files his reply in support of his motion for a certificate of appealability (COA) from

its decision denying his motion for relief pursuant to *Hazel-Atlas Glass Co. v. Hartford-Empire*

*Co.*, 322 U.S. 238 (1944), and Federal Rule of Civil Procedure 60(d).

**I.    INTRODUCTION**

As part of the original § 2255 proceedings in this Court challenging Mr. Higgs's

convictions and sentences, he alleged that the government did not turn over all of the material

relating to Victor Gloria that it was required to under *Brady v. Maryland*, 373 U.S. 83 (1963),

*Giglio v. United States*, 405 U.S. 150 (1972), and their progeny.  Specifically, Mr. Higgs alleged

that Mr. Gloria was a suspect, but was never charged, in the unrelated homicide of Martrelle

Creighton in Baltimore.  Mot. for Relief, Doc. 492 at 33.  Mr. Higgs further alleged that Mr.

Gloria was not charged with the Creighton homicide at the behest of the government "in an effort

to preserve his status as a testifying witness in this federal capital triple homicide case."  *Id.*  Mr.

1

Higgs alleged that the government's failure to disclose this favorable treatment of Mr. Gloria violated Mr. Higgs's due process rights. *Id.*

While Mr. Higgs had a good faith basis for making these allegations, he had little in the way of hard evidence to support them, as *Brady* claims necessarily involve suppressed information that is uniquely in the possession of the government. Accordingly, he moved for discovery for the purpose of substantiating his *Brady* claim. *See* Mot. for Discovery, ECF No. 509, at 11-12. In response to Mr. Higgs's allegations and discovery request, the government emphatically denied that it had done anything to confer any benefits on Mr. Gloria with respect to the Baltimore homicide. *See* Resp. to Mot. for Discovery, ECF No. 513 at 5; Mot. to Strike and Response, ECF No. 520 at 86, 88.

This Court denied Mr. Higgs's claim without discovery or a hearing, adopting the government's line of argument. The Court ruled that "pure speculation about supposed benefits cannot substitute for hard facts," and that "Higgs, quite simply, has failed to demonstrate any causal connection between Gloria's testimony in this federal case and whatever treatment he may have received in the state jurisdictions." *United States v. Higgs*, 711 F. Supp. 2d 479, 508 (D. Md. 2010) (*Higgs IV*).

Following the denial of relief in the § 2255 proceedings, Mr. Higgs succeeded in obtaining the Baltimore Police Department file regarding the Creighton homicide. That file contained evidence of numerous contacts between multiple federal agencies and Baltimore authorities, including documentation of a gratuitous suggestion from Assistant United States Attorney Deborah Johnston that Mr. Gloria was being framed for the Creighton homicide, which was evidently intended to influence the Baltimore authorities in the conduct of the Creighton

2

investigation.  *See* Mot. for Relief from Judgment, ECF No. 579 at 3, 11-15.  Based on the

contents of that file, Mr. Higgs sought relief from this Court under Fed. R. Civ. P. 60(d) and

*Hazel-Atlas Glass Co.*, and filed a renewed motion for additional discovery.  *Id.*; Renewed Mot.

for Discovery, ECF No. 580.

On June 29, 2016, this Court denied the motions for Rule 60(d) relief and for discovery.

*United States v. Higgs*, No. PJM-98-520, 2016 WL 3541387 (D. Md. June 29, 2016) (*Higgs V*).

On July 25, 2016, Mr. Higgs asked this Court to decide whether he was entitled to a COA

enabling him to appeal that ruling to the Fourth Circuit.  Mot. for Cert. of Appealability, ECF

No. 602 (hereafter "COA motion").  Before this Court ruled on that motion, Mr. Higgs was

forced to file his appeal.  Not. of Appeal, ECF No. 605.  On August 30, 2016, the Fourth Circuit

remanded the case for this Court to issue an order granting or denying COA.  Order, *United

States v. Higgs*, No. 16-15 (4th Cir. Aug. 30, 2016).

## II.     STANDARD FOR ISSUING A COA

The government begins its opposition by suggesting that Mr. Higgs has incorrectly

characterized the Court's denial of his 60(d) motion as a procedural ruling.  Gov't Opp. to Mot.

for Cert. of Appealability, ECF No. 613 (hereafter "Opposition"), at 3-5.  The government's

position is both confusing and incorrect.  As Mr. Higgs made clear in his COA motion, when a

claim is denied on procedural grounds "a COA should issue when the prisoner shows, at least,

that jurists of reason would find it debatable whether the petition states a valid claim of the

denial of a constitutional right *and* that jurists of reason would find it debatable whether the

district court was correct in its procedural ruling."  COA motion at 2-3 (quoting *Slack v.

McDaniel*, 529 U.S. 473, 484 (2000)) (emphasis added).  In other words, when a claim is denied

on procedural grounds, the COA requirement is more, not less, onerous.  It requires that the

district court's procedural ruling be debatable in addition to the merits of the underlying constitutional claim being debatable.

Should the Court view its ruling as a merits decision, Mr. Higgs would certainly not object, but Mr. Higgs maintains that he correctly characterized it as a procedural decision. The Court's analysis focused on whether Mr. Higgs had presented sufficient evidence of a fraud on the court (thus whether the initial denial of relief should be set aside), not on whether the elements of *Brady* had been established. *Higgs V* at *12-16; *see id.* at *16 ("It is therefore unnecessary to discuss at length the issue of materiality"). Ultimately, however, the distinction matters little. As Mr. Higgs noted in his COA motion, both the procedural and the substantive question "essentially turn on the same inquiry: whether the Baltimore Police Department's failure to charge Mr. Gloria with murder was in part based upon the intervention of federal authorities." COA motion at 3. The substantive and procedural questions are thus equally debatable. Because the government's Opposition focuses on the merits of the *Brady* claim, Mr. Higgs adopts a similar focus in this Reply.

## III.   MR. HIGGS HAS MADE A SUBSTANTIAL SHOWING THAT HE WAS DENIED A CONSTITUTIONAL RIGHT.

The three essential elements of a *Brady* claim are as follows: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). Mr. Higgs made a substantial showing as to all three elements.

4

**A.      Mr. Higgs Made a Substantial Showing that the Government Suppressed Favorable Impeachment Evidence.**

To the extent that the Court addressed the first two *Brady* elements (favorability and suppression) it did so in the context of the fraud on the court allegations.  *See Higgs V* at *12-16. The Court denied relief without holding a hearing or allowing discovery.  On the merits of the *Brady* claim, dismissal was only warranted if his "allegations, when viewed against the record [before the court are] so 'palpably incredible,' so 'patently frivolous or false,' as to warrant summary dismissal."  *Blackledge v. Allison*, 431 U.S. 63, 76 (1977) (citations omitted).  Given the contents of the Baltimore Police Department file, his allegations regarding favorability and suppression are easily strong enough to foreclose summary dismissal.

As set forth in the Rule 60(d) motion, we now know that the federal investigative and prosecutorial authorities had numerous contacts with the Baltimore authorities concerning the Creighton homicide investigation, that the federal authorities informed the Baltimore authorities that Mr. Gloria was a critical witness in the instant case, and that the federal authorities suggested to the Baltimore authorities that Mr. Gloria was being framed.  *See* ECF No. 579 at 3, 11-15.  We likewise know that two eyewitnesses who were friends of Mr. Creighton and who would not have shared the purported motive to frame Mr. Gloria also initially described the man matching Mr. Gloria's description as being culpable, yet Baltimore authorities still did not charge him or even interview him.  ECF No. 588 at 5-6 & n.3.  And we know that Baltimore authorities conditioned their charging decision for Mr. Gloria on the receipt of further (as yet undisclosed) information from federal authorities.  ECF No. 579 at 2, 11-15; ECF No. 588 at 1-7. Obviously, none of these facts were disclosed at the time of trial or in response to Mr. Higgs's original § 2255 motion and request for discovery.

While acknowledging that Mr. Higgs had "obtained considerable evidence to support his motion," *Higgs V* at \*17 n.15, this Court ultimately denied relief after its review of the Baltimore Police file documents led it to conclude that it was "more likely that the decision not to charge Gloria was based not on federal intervention, but on the Baltimore authorities' own assessment of strength of the evidence in their case."). *Id.* at \*14.

It is at the very least debatable that Mr. Higgs is entitled to relief on the existing record. But a COA is particularly appropriate here, where the Court's conclusion was not reached on the basis of a fully developed record. Rather, Mr. Higgs sought but was denied further discovery consisting of any evidence regarding his allegations contained in the government's own files, ECF No. 580, at 3-4, as well as previously requested discovery from the Baltimore County Public Defender and the Baltimore County prosecutors. *Id.* at 4; ECF No. 509, at 11-12. Mr. Higgs also sought an evidentiary hearing. ECF No. 579 at 4, 30. Such additional factual development was important here, as all of the evidence shedding light on Mr. Higgs's claim was not necessarily written down and placed in the Baltimore Police file. Such evidence likely exists in the United States Attorney's file as well as in the form of witness testimony. The Court, however, denied the Rule 60(d) motion without allowing the requested discovery or evidentiary hearing.

Given the detailed nature of Mr. Higgs's allegations, supported by the contents of the Baltimore Police Department file, this Court's pre-discovery rejection of the *Brady* claim is erroneous. *See, e.g.*, *Blackledge*, 431 U.S. at 78, 81-82 (petitioner's allegations of improperly induced plea agreement were not "so 'patently false or frivolous' as to warrant dismissal"; allegations could be tested through discovery); *Sanders v. United States*, 373 U.S. 1, 19-20

6

(1963) (because "the facts on which petitioner's claim is predicated are outside the record," the "'files and records of the case' . . . could not 'conclusively show' that the claim . . . entitled the petitioner to no relief."); *Machibroda v. United States*, 368 U.S. 487, 494 (1962) (the District Court should not have "made findings on controverted issues of fact without notice to the petitioner and without a hearing."). At the very least, it is subject to debate among jurists of reason whether Mr. Higgs's allegations and supporting documents were sufficient to preclude the denial of relief without first providing the requested factual development.

### B.    Mr. Higgs Made a Substantial Showing of Materiality.

The government relies primarily on this Court's cursory assessment of materiality, which was a reprise of its ruling on the original § 2255 motion. Opposition at 6-7; *Higgs V* at \*16. While this Court has ruled that no prejudice accrued from the failure to disclose the fact that Mr. Gloria was a suspect in a separate murder investigation, and that the local authorities in that investigation decided not to pursue those charges at the behest of the federal authorities prosecuting Mr. Higgs, that ruling is at the very least debatable among jurists of reason.

The lynchpin of the Court's materiality analysis is that Mr. Gloria was so thoroughly impeached that no further impeachment of him could have made any difference. *Id.* That conclusion is highly questionable for several reasons.

First, it is impossible to overstate the importance of Mr. Gloria to the government's case. As the Fourth Circuit noted on direct appeal, "Most of the facts surrounding the murders of the three women were obtained from [Mr. Gloria's] eyewitness testimony." *United States v. Higgs*, 353 F.3d 281, 289 n.1 (4th Cir. 2003); *see also id.* at 313-14 (evidence of kidnapping, felony and premeditated murder is all derived from Mr. Gloria's testimony). While the court noted that Mr. Gloria's testimony was "partially corroborated," *id.* at 289 n.1, by evidence associating the

7

decedents with a car of the type driven by Mr. Higgs, that evidence by itself would have been insufficient to charge Mr. Higgs with any crime, let alone prove his guilt of kidnapping and murder, as the government has admitted.  ECF No. 579 at 1-2 (quoting argument of AUSA Johnston at Mr. Gloria's sentencing hearing that "the government could not have proceeded and obtain[ed] a conviction against Mr. Higgs certainly without the assistance of Mr. Gloria.").  *See also Smith v. Cain*, 132 S. Ct. 627, 630 (2012) (where eyewitness's "testimony was the *only* evidence linking [the defendant] to the crime," impeaching statements "were plainly material"); *Kyles v. Whitley*, 514 U.S. 419, 444 (1995) ("The likely damage is best understood by taking the word of the prosecutor, who contended during closing arguments that Smallwood and Williams were the State's two best witnesses."); *Wolfe v. Clarke*, 691 F.3d 410, 424 (4th Cir. 2012) (materiality  of impeachment evidence is "manifest" where jury had to believe witness to support petitioner's conviction).

Second, given the importance of Mr. Gloria's testimony, it is evident that the jury credited that testimony, regardless of trial counsel's attempts to impeach his credibility.

Third, the assertion that additional impeachment of Mr. Gloria would not have made any difference is both legally and factually erroneous; it is certainly debatable.  As a legal matter, courts have frequently rejected such arguments when reviewing *Brady* claims.  *See, e.g.*, *Banks v. Dretke*, 540 U.S. 668, 702 (2004) (rejecting argument that because witness "was heavily impeached" at trial, his status as an informant would have been "merely cumulative"); *United States v. Parker*, 790 F.3d 550, 562 (4th Cir. 2015) (impeachment value of information known to defendants was far less than fact that witness "may have been testifying in an effort to receive favorable treatment from the government."); *Spicer v. Roxbury Correctional Institute*, 194 F.3d

547, 561 (4th Cir. 1999) (rejecting argument that additional impeachment evidence was not material because witness "had already been impeached with evidence of his prior convictions, as well as the extremely favorable terms of his plea agreement").

And as a factual matter, the Court's materiality ruling understates the value of the undisclosed impeachment material and overstates the degree to which Mr. Gloria was actually impeached at trial.  While there are cases in which additional impeachment, even of a crucial witness, is so cumulative of evidence already presented that it is immaterial because it "would have  provided only marginal additional support for [the] defense," *United States v. Bartko*, 728 F.3d 327, 339 (4th Cir. 2013) (citations and quotation marks omitted), this is not such a case. Here, the suppressed impeachment evidence was different in force and in kind from the impeachment developed at trial.

While this Court pointed out that at trial, Mr. Gloria was revealed to have an "extensive criminal history" and to be thoroughly self-serving, the suppressed evidence gave him an additional motivation – of which the jury was not aware – to curry favor with the government. That motivation was to escape being charged with first degree murder, the most serious charge one can face.  That additional, powerful motivation is not merely cumulative of any existing impeachment material, including the knowledge that Mr. Gloria was motivated to avoid more serious punishment in the instant case.

But there was more.  A jury informed that Mr. Gloria may have committed a separate homicide would have stronger grounds to question Mr. Gloria's true role in the instant case.  The idea that Mr. Higgs had a reason to wish to kill the decedents came solely from Mr. Gloria, as did the account of the actions of Mr. Higgs and Mr. Haynes.  Aside from what it heard from Mr.

9

Gloria on the witness stand, the jury had no way of knowing who did what on the night in question. The jury could then have questioned whether Mr. Gloria himself had a greater role in the homicides than he claimed and thus that Mr. Higgs had a lesser role.

The jurors could also have reasonably questioned whether the government was truly seeking justice or was following a win-at-all-costs approach. It is well recognized that evidence that could cause the jury to question the "thoroughness and even the good faith of the investigation," *Kyles v. Whitley*, 514 U.S. 419, 445 (1995), is especially powerful and material. No such evidence was developed at trial, because it was suppressed by the government.

Finally, this Court has overstated the degree to which Mr. Gloria's testimony was impeached at trial. Although the Court stated that "any evidence that Gloria may have received consideration for his testimony beyond that disclosed by the Government could not have further undermined his already low credibility," *Higgs V* at *16, that view was not shared by the Fourth Circuit. The Fourth Circuit's assessment of Mr. Gloria was that his "eyewitness testimony provided compelling and convincing details of the events of that evening and of Higgs's involvement them." *United States v. Higgs*, 663 F.3d 726, 741 (4th Cir. 2011). The fact that the Fourth Circuit described Mr. Gloria's testimony as "compelling and convincing," while this Court described his credibility as being so low that it was incapable of further tarnishing, is empirical proof that the materiality question is debatable among jurists of reason.

For all of these reasons, it is at least subject to debate among jurists of reason whether the suppressed evidence was material under *Brady*. Accordingly, this Court should grant Mr. Higgs a COA enabling him to raise these issues on appeal to the Fourth Circuit.

WHEREFORE, for the reasons set forth above and in Mr. Higgs's prior submissions, Mr.

Higgs respectfully requests that the Court grant COA.

Respectfully Submitted,


/s/ Matthew C. Lawry                                            /s/ Stephen H. Sachs
Matthew C. Lawry                                               Stephen H. Sachs
Federal Community Defender Office                              WilmerHale LLP
   for the Eastern District of Pennsylvania          Five Roland Mews
Curtis Center, Suite 545-West                                  Baltimore, MD 21210
601 Walnut Street                                              (410) 532-8405
Philadelphia, PA 19106                                         Steve.Sachs@wilmerhale.com
215-928-0520
Matthew_Lawry@fd.org


Dated: October 27, 2016

## CERTIFICATE OF SERVICE

I, Stephen H. Sachs, hereby certify that on this 27th day of October, 2016, I electronically

filed the foregoing motion using the Court's CM/ECF system.  Electronic notice will be provided

to the following individuals:

> James A. Crowell IV
> Sujit Raman
> Deborah A. Johnston
> Sandra Wilkinson
> Assistant United States Attorneys
> Office of the United States Attorney
> 6500 Cherrywood Lane, Suite 400
> Greenbelt, MD 20770-1249

> /s/ Stephen H. Sachs
> Stephen H. Sachs