**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | **CRIM NO. PJM 98-520** |
| | ) | **(Capital Case)** |
| | ) | |
| DUSTIN JOHN HIGGS | ) | |

**GOVERNMENT'S REPLY IN FURTHER SUPPORT OF DESIGNATING
INDIANA AS THE STATE SUPPLYING THE LAW FOR IMPLEMENTATION
OF DEFENDANT'S CAPITAL SENTENCE**

The Federal Death Penalty Act of 1994 provides that capital sentences for federal defendants are to be implemented "in the manner prescribed by the law of the State in which the sentence is imposed," but if the law of that state "does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." 18 U.S.C. § 3596(a). Because Maryland law does not provide for implementation of a sentence of death, this Court must now designate another state that will supply the law and location for implementing defendant Dustin Higgs's death sentence. For the reasons stated below, the Court should designate Indiana. The Court can do so either by supplementing the Judgment and Order that it entered in 2001 or, alternatively, by entering a separate, new order.

## BACKGROUND

### I.    Legal Background

When Congress first established the federal death penalty in 1790, it prescribed hanging as the method of execution. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 108-09 (D.C. Cir. 2020) (per curiam). This provision governed until 1937, when Congress determined that the method of execution would be the method prescribed by the laws of the state within which sentence was imposed. *Id.* at 109. After Congress repealed the 1937 provision in 1984, the Attorney General, in 1993, promulgated regulations to "fill this gap." *Id.*[1]

The 1993 regulations provide, in relevant part, that "[e]xcept to the extent a court orders otherwise, a sentence of death shall be executed . . . [o]n a date and at a time designated by the Director of the Federal Bureau of Prisons," "[a]t a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons," "[b]y a United States Marshal designated by the Director of the United States Marshals Service," and "[b]y intravenous injection of a lethal substance or substances in a quantity sufficient to cause death." 28 C.F.R. § 26.3(a). The regulations also direct federal prosecutors to propose a "Judgment and Order" to the

---

[1] The 1993 regulations were also prompted by Congress's passage of the Anti-Drug Abuse Act of 1988, 21 U.S.C. § 848 (1989), which created the death penalty for certain drug-related offenses and established procedures for imposing a sentence of death but did not create rules for implementing a death sentence, such as rules regarding the method of execution. *See Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992) (proposed rule to be codified in 28 C.F.R. part 26). Prior to enactment of the Anti-Drug Abuse Act of 1988, the federal death penalty had lain dormant after *Furman v. Georgia*, 408 U.S. 238 (1972) (per curiam), and *Gregg v. Georgia*, 428 U.S. 153 (1976).

district court stating that "[t]he sentence shall be executed by a United States Marshal designated by the Director of the United States Marshals Service," "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death," "[t]he sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons," and "[t]he prisoner under sentence of death shall be committed to the custody of the Attorney General or his authorized representative for appropriate detention pending execution of the sentence." 28 C.F.R. § 26.2(a). As the Department of Justice explained when it proposed these regulations, "[i]n cases where the court adopts in full the proposed Judgment and Order, the execution will be carried out according to the procedures dictated by both judicial and executive mandates, operating in tandem." *Implementation of Death Sentences in Federal Cases*, 57 Fed. Reg. 56536-01, 56536 (Nov. 30, 1992) (proposed rule to be codified at 28 C.F.R. part 26).

Congress subsequently enacted the Federal Death Penalty Act of 1994, which remains in effect today. That statute provides that "[a] person who has been sentenced to death pursuant to this chapter shall be committed to the custody of the Attorney General until exhaustion of the procedures for appeal of the judgment of conviction and for review of the sentence," and "[w]hen the sentence is to be implemented, the Attorney General shall release the person sentenced to death to the custody of a United States marshal, who shall supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). The statute further provides that "[i]f the law of the

3

State does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death, and the sentence shall be implemented in the latter State in the manner prescribed by such law." *Id.*

## II.  Relevant Factual and Procedural Background

More than two decades ago, defendant Dustin Higgs kidnapped and murdered three women on federal property in Maryland and was convicted by a jury of multiple counts of capital murder. *See, e.g.*, *United States v. Higgs*, 193 F. Supp. 3d 495, 496-97 (D. Md. 2016). The jury determined that Higgs should receive the death penalty, and on January 3, 2001, this Court, in accordance with the Federal Death Penalty Act, sentenced Higgs to death. *Id.* at 498; *see* 18 U.S.C. § 3594.

On January 9, 2001, this Court entered a "Judgment and Order" stating that "the Court hereby imposes upon the defendant a sentence of death" on the capital counts of conviction. ECF 640-1, at 3. Consistent with the 1993 regulations discussed above, the Judgment and Order set forth procedures for carrying out that death sentence, including that "[t]he sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death" and "shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons." *Id.* The Judgment and Order further stated that the death sentence was "also imposed pursuant to" the Federal Death Penalty Act, 18 U.S.C. §§ 3591-3197, "including particularly Sections 3594 and 3596." *Id.* at 2.

At the time this Court entered the Judgment and Order, Maryland law provided for the death penalty. *See, e.g.*, Md. Code, Art. 27, § 413 (2001) (defendants convicted of first-degree murder subject to death penalty); Md. Code, Art. 27, § 627 (2001) (defendants sentenced to death shall be executed by lethal injection). In 2013, however, Maryland repealed its death-penalty statute, and therefore Maryland law no longer provides for the death penalty. *See Bellard v. State*, 157 A.3d 272, 274, 276 (Md. 2017) (discussing repeal).

As a result of Maryland's elimination of its death penalty, the government now requests that this Court, as required by 18 U.S.C. § 3596(a), designate another state that will supply the location and law for implementing Higgs's death sentence. ECF 640, at 1-2. The government specifically requests that this Court designate Indiana, where Higgs is incarcerated and where the government is equipped to carry out the death penalty. The government has requested that the Court implement that designation by amending the Judgment and Order that the Court entered on January 9, 2001. *Id.* at 2.

Higgs has responded that the Court lacks authority to amend the criminal judgment in this case. ECF 641, at 1-4. He also argues that, even if the Court possesses authority to designate a state other than Maryland that will supply the law for implementing his execution, the Court should designate Virginia, not Indiana. *Id.* at 4-8.

**ARGUMENT**

Although the government agrees that this case does not present circumstances that would permit the Court to alter Higgs's criminal judgment, the Court need not alter that judgment in order to satisfy its obligation under the Federal Death Penalty Act to designate a state other than Maryland that will supply the law for implementing Higgs's execution. Rather, the Court may supplement the Judgment and Order that it entered on January 9, 2001. As reflected in its title, that Judgment and Order consists of both a judgment and an order, and the Court's directives regarding the implementation of Higgs's death sentence reside in the Court's order, not the judgment. The Court may now amend its order to designate Indiana as the location and source of law for implementing Higgs's death sentence. The Court may, in the alternative, issue a separate order that designates Indiana as the state that will supply the law and location for Higgs's execution. Higgs does not identify any impediment to issuing a new order designating a state pursuant to 18 U.S.C. § 3596(a). To the contrary, § 3596(a) requires this Court to designate a state now that Maryland does not provide for the death penalty.

The Court should designate Indiana as the state that will supply the law and location for implementing Higgs's death sentence, not Virginia. The facilities and personnel needed to carry out federal executions are in Indiana, where all eight executions since enactment of the Federal Death Penalty have taken place, including five executions within the past two months. Selecting Virginia, in contrast, would create substantial impediments to carrying out the lawful sentence in this case.

Virginia law, for example, permits capital defendants to choose between death by lethal injection or electrocution, and the federal government does not maintain facilities in Virginia to carry out executions, let alone executions by electrocution. Virginia also has no connection to this case or interest in facilitating the implementation of Higgs's lawful death sentence. Designating Virginia pursuant to 18 U.S.C. § 3596(a) would therefore constitute an abuse of discretion.

## I.      The Court Need Not and Should Not Amend the Judgment

"Final judgment in a criminal case means sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212 (1937). The Federal Rules of Criminal Procedure require a written judgment that the court "must sign" and the clerk "must enter" and that "must set forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence." Fed. R. Crim. P. 32(k)(1). "[I]f a conflict arises between the orally pronounced sentence and the written judgment, then the oral sentence controls." *United States v. Rogers*, 961 F.3d 291, 296 (4th Cir. 2020). A court generally may not amend or alter a criminal judgment—*i.e.*, change a defendant's sentence—except in limited circumstances, such as if the Sentencing Commission promulgates a retroactive amendment to the Sentencing Guidelines. 18 U.S.C. § 3582(b); *see, e.g.*, *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020) ("Generally, sentences may not be modified once imposed.").

Higgs's sentence in this case—as memorialized in the written judgment contained in the Judgment and Order entered on January 9, 2001—is the sentence of death. ECF 640-1, at 3. The government does not ask this Court to modify that

sentence and agrees that the Court lacks authority to do so. However, the directives in the Court's written Judgment and Order regarding the procedures for implementing Higgs's death sentence—that Higgs be executed by lethal injection, for example, and that certain individuals, such as a spiritual advisor, be permitted to be present at the execution, ECF 640-1, at 3-6—are not a part of Higgs's sentence and therefore are not a part of the judgment. Those directives instead reside in the order component of the Court's Judgment and Order. The general rule that a criminal sentence may not be modified once imposed therefore does not prevent this Court from modifying those directives.

To be clear, the Court need not change or rescind any directives in its Judgment and Order regarding the procedures for implementing Higgs's execution. The Judgment and Order is silent with respect to which state's law will prescribe the manner in which Higgs's capital sentence is carried out. The Judgment and Order also does not prescribe a location for carrying out Higgs's death sentence and instead states that Higgs "shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons." ECF 640-1, at 3. Thus, the Court need not alter the directives in the Judgment and Order in order to comply with 18 U.S.C. § 3596(a) by designating a state that will supply the law and location for implementing Higgs's death sentence now that Maryland no longer provides for the death penalty. Rather, the Court, as proposed by the government, need only supplement the Judgment and Order with a sentence stating that, pursuant to 18

U.S.C. § 3596(a), it designates Indiana as the pertinent state. *See* ECF 640-2 (proposed order).

Alternatively, the Court may, rather than supplement the 2001 Judgment and Order, instead enter a new order designating Indiana as the state that will supply the law and location for implementing Higgs's death sentence. As explained, the Court's earlier Judgment and Order does not mention which state's law will determine the manner in which Higgs's death sentence is implemented and does not prescribe a location for carrying out Higgs's death sentence. A new order designating the state that will supply that law, as required by 18 U.S.C. § 3596(a), therefore would not contradict the court's earlier Judgment and Order. The government attaches a proposed order in the event the Court wishes to enter a new order rather than supplement its earlier Judgment and Order.

Higgs asserts that by requesting this Court to designate Indiana in accordance with 18 U.S.C. § 3596(a), "the Government is asking the Court to resentence Mr. Higgs as a result of factual and legal developments that have occurred since his judgment of conviction was entered." ECF 641, at 3. According to Higgs, his "judgment is now invalid as it relates to his death sentence," ECF 641, at 1, and this "Court lacks the authority to amend [that] judgment," ECF 641, at 3. To the extent that Higgs is arguing that his death sentence can no longer be carried out, that would be an absurd result and itself contrary to the sentence of death recommended by the jury and memorialized in the judgment. As explained, the designation of a state other than Maryland to supply the manner of Higgs's execution does not change Higgs's

sentence, which is death. Higgs remains sentenced to death regardless of the procedures for implementing that sentence. The Court therefore can (and must) comply with § 3596(a) without amending Higgs's judgment.

Higgs appears to suggest that the government cannot designate a state other than Maryland to supply the law for carrying out his death sentence—and therefore cannot carry out the death sentence—because Maryland permitted capital punishment at the time the Court entered judgment in 2001 but has since repealed its death-penalty statute. This argument, however, contravenes the language of the Federal Death Penalty Act, which provides that if the law of the state in which sentence is imposed "does not provide for implementation of a sentence of death, the court shall designate another State, the law of which does provide for the implementation of a sentence of death." 18 U.S.C. § 3596(a). The Federal Death Penalty Act therefore makes clear that federal death sentences are valid and will be implemented even when the defendant is sentenced in a state, such as Maryland, that does not provide for the death penalty. By stating that, in those circumstances, a Court "shall" designate another state to supply the law for implementing that sentence, the Federal Death Penalty Act makes designation mandatory. *See, e.g.*, *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998) (explaining that the "mandatary 'shall' . . . normally creates an obligation impervious to judicial discretion"). Moreover, although the Federal Death Penalty Act does not specify when a court must designate an alternative state, the statute provides that "*[w]hen the sentence is to be implemented,*" a United States marshal "shall supervise

implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed," and "[i]f the law of the State *does not* provide for implementation of a sentence of death, the court shall designate another State." 18 U.S.C. § 3596(a) (emphases added). This statutory language, phrased in the present tense, indicates that the relevant inquiry should focus on the time of implementation, not initial sentencing. In short, the Federal Death Penalty Act does not provide a windfall to a defendant, such as Higgs, who is sentenced within a state that provides for the death penalty but then repeals its death-penalty statute prior to implementation of that sentence.

## II.    The Court Should Designate Indiana as the State Supplying the Law for Implementing Higgs's Death Sentence

Higgs argues that even if this Court possesses the authority to designate an alternative state under 18 U.S.C. § 3596(a), the Court should designate Virginia, rather than Indiana. ECF 641, at 4-8. Although this Court retains discretion to determine which state to designate pursuant to § 3596(a), designating Virginia, in the circumstances of this case, would constitute an abuse of discretion. The Court should designate Indiana as requested by the government.

Numerous factors weigh in favor of designating Indiana as the state that will supply the law and location for implementing Higgs's execution. The facilities for carrying out federal executions are located at the Federal Correctional Complex in Terre Haute, Indiana (FCC Terre Haute). Declaration of Tom Watson (Watson Decl.) ¶ 4. Federal defendants sentenced to death, including Higgs, are, with few exceptions, incarcerated in the Special Confinement Unit at FCC Terre Haute pending their

11

execution. *Id.* All eight federal executions that have taken place since the enactment of the Anti-Drug Abuse Act of 1988 and the Federal Death Penalty Act of 1994 have taken place at FCC Terre Haute, including five executions that took place between July 14, 2020, and August 28, 2020. *Id.* ¶ 5. The Bureau of Prisons maintains staff responsible for assisting with important aspects of carrying out executions at FCC Terre Haute. *Id.* ¶ 6. During the five executions at FCC Terre Haute within the past two months, for example, the Bureau of Prisons maintained an execution team consisting of approximately 40 staff members trained and experienced in performing key functions in an execution. *Id.* ¶ 8. The physical facilities at FCC Terre Haute are also designed to carry out executions. For example, executions take place in a separate building at FCC Terre Haute, which, among other things, permits the secure entry of members of the public who wish to witness the execution—including victim witnesses, the press, and witnesses chosen by the defendant, such as defense attorneys, spiritual advisors, and friends or family members. *Id.* ¶ 7.

For these reasons, and others, Indiana is overwhelmingly the most sensible state to designate when, as in this case, a federal defendant has been sentenced within a state that does not provide for the death penalty. Accordingly, the district court designated Indiana as the state that would supply the law and location for carrying out the execution of federal defendant Dustin Honken, who was sentenced in a state (Iowa) that does not provide for the death penalty, and Honken was executed at FCC Terre Haute on July 17, 2020. The same procedure is warranted here.

Virginia, in contrast, is not a viable alternative. Designating Virginia pursuant to § 3596(a) would likely impede the government from carrying out Higgs's execution, which is plainly not the purpose of the Federal Death Penalty Act. To start, the Bureau of Prisons does not maintain a facility in Virginia where it has the capacity to carry out an execution. Watson Decl. ¶ 4. Moreover, Virginia's death-penalty statute permits a capital defendant to choose between lethal injection or electrocution. *See* Va. Code § 53.1-234. Because the Federal Death Penalty Act provides that a death sentence "shall be implemented . . . in the manner prescribed by" the law of the designated state, 18 U.S.C. § 3596(a), if the execution were to take place in Virginia, Higgs may argue that he is entitled to choose electrocution as his method of execution. *See In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d at 112 (holding that the Federal Death Penalty Act requires adherence to execution procedures set forth in state statutes and regulations, not only the state's top-line choice among execution methods). Federal regulations, however, permit execution only by lethal injection and at federal facilities, unless a court orders otherwise. *See* 28 C.F.R. § 26.3(a). And even if this Court were to order the government to perform Higgs's execution in a Virginia state facility using, if necessary, state personnel, *see* 18 U.S.C. § 3597(a) (providing that the federal government may use state facilities and personnel to carry out a federal execution), Higgs's execution in that circumstance could proceed only if Virginia were to agree to permit the United States to use its facilities and personnel. Designating Virginia pursuant to 18 U.S.C. § 3596(a) could therefore, as a practical matter, give Virginia

veto power over Higgs's execution and could nullify a lawfully imposed federal death sentence for murders that occurred in a different state, Maryland, with no connection to Virginia. It would be an abuse of discretion to apply § 3596(a) in this manner.

Furthermore, requiring Higgs's execution to take place in Virginia would raise a host of logistical and security concerns arising from the need to transport Higgs to Virginia. Watson Decl. ¶ 9. Transporting a capital defendant is a costly undertaking that raises security risks, all of which could be exacerbated by the last-minute nature of capital litigation. *Id.* If a court were to issue a last-minute stay of execution, for example, the government would have to transport Higgs back to Terre Haute or house him for an extended period of time in Virginia, where the government lacks facilities for housing capital defendants. It would be an abuse of discretion to increase the risks and costs associated with carrying out Higgs's capital sentence when a preferable alternative is readily available by designating Indiana, where Higgs has long been incarcerated.

Despite Higgs's arguments to the contrary (ECF 641, at 4-8), the district court's designation of New Hampshire as the location and source of the law for the defendant's execution in *United States v. Sampson*, 300 F. Supp. 2d 278 (D. Mass. 2004)—a case in which the defendant was sentenced to death in federal court in Massachusetts, which does not provide for the death penalty—provides scant support for designating Virginia here. To start, although the district judge in *Sampson* initially designated New Hampshire as the state that would supply the law and location for Sampson's execution, Sampson subsequently obtained a new sentencing

14

hearing and was again sentenced to death, and the newly assigned district judge ordered, pursuant to 18 U.S.C. § 3596(a), that Sampson's death sentence shall be implemented "in the State of Indiana, in the manner prescribed by the law of the State of Indiana." *United States v. Sampson*, No. 01-CR-10384, Dkt. 2917, at 2 (D. Mass. Feb. 6, 2017). The court found that Sampson "cite[d] no legal authority, nor any factual basis, that would support a finding that the Court's selection of Indiana as the location of his future execution places any burden on him (separate and apart from the burden of his lawfully imposed death sentence)." *United States v. Sampson*, No. 01-CR-10384, Dkt. 2982, at 69 (D. Mass. Aug. 15, 2017). The court also noted that "Indiana is the location of the federal death row, and is the state in which all three [now eight] previous federal executions conducted since the enactment of the FDPA have taken place," and [u]nder Indiana law, the only available method of execution is lethal injection, Ind. Code § 35-38-6-1(a) (2017), a method which the Supreme Court recently upheld against an Eighth Amendment challenge." *Id.* at 70 n.44. Sampson's execution will therefore take place at FCC Terre Haute. This Court should likewise designate Indiana in this case.[2]

The reasoning underlying the district court's earlier designation of New Hampshire in *Sampson* also does not support the selection of Virginia here. The court emphasized two reasons it "selected New Hampshire, rather than Indiana, as the site

---

[2] Although the defendant's death sentence has been vacated for other reasons, we note that the district court presiding over the Boston-Marathon-bombing case also designated Indiana as the state that would provide the law and location for implementing the defendant's death sentence. *See United States v. Tsarnaev*, No. 13-CR-10200, Dkt. 1618 (D. Mass. Jan. 14, 2016).

for Sampson's execution." 300 F. Supp. 2d at 280. Neither factor supports the selection of Virginia, rather than Indiana, in this case.

First, the court in *Sampson* concluded that selecting New Hampshire would ensure that litigation involving Sampson's case was consolidated in the First Circuit, which would "serve the interests of justice." *Id.* It is questionable whether selection of New Hampshire affected the venue of the legal proceedings in *Sampson*, but regardless, there is no basis to conclude that the selection of Virginia would have that effect here. The Fourth Circuit has exercised jurisdiction over Higgs's criminal case and has affirmed his conviction and sentence on direct and collateral review. *See United States v. Higgs*, 353 F.3d 281 (4th Cir. 2003) (affirming on direct appeal); *United States v. Higgs*, 95 Fed. Appx. 37 (4th Cir. 2004) (unpublished) (affirming denial of motion for a new trial and sentencing hearing); *United States v. Higgs*, 663 F.3d 726, 730 (4th Cir. 2011) (affirming denial of relief under 28 U.S.C. § 2255); Order, *In re Higgs*, No. 20-2 (Feb. 6, 2020) (denying Higgs's request for authorization to file a second or successive § 2255 motion). Moreover, while a petition for habeas relief under 28 U.S.C. § 2241 may be brought where § 2255 "is inadequate or ineffective to test the legality of [the defendant's] detention," 28 U.S.C § 2255(e), such petitions are brought in the district of the defendant's confinement, not conviction, and federal capital defendants generally are housed at FCC Terre Haute regardless of which state's laws will govern implementation of the defendant's execution under 18 U.S.C. § 3596(a). Accordingly, the Seventh Circuit has ruled on habeas petitions raised by federal capital defendants, *see, e.g.*, *Lee v. Watson*, 964 F.3d 663 (7th Cir.

2020); *Purkey v. United States*, 964 F.3d 603 (7th Cir. 2020), and, in fact, that court has already ruled on civil proceedings brought by Higgs, *see Higgs v. United States Park Police*, 933 F.3d 897 (7th Cir. 2019) (FOIA request). There is no need to designate Virginia in order to consolidate legal proceedings; if anything, consolidating legal proceedings further militates in favor of designating Indiana, the place of Higgs's confinement.

Second, the district court in *Sampson* selected New Hampshire because it felt that holding the execution in New Hampshire would make it "as accessible as possible to the people most interested in it and impacted by it." 300 F. Supp. at 280. The court determined that holding the execution in New Hampshire "should" be more convenient for relatives or friends of Sampson or his victims who might wish to attend the execution and also "should" make it easier for the local press in Massachusetts to report on the execution. *Id.* at 282. Higgs contends (ECF 641, at 5-7) that the same is true in this case and that any inconvenience in holding the execution in Indiana would be exacerbated by the COVID-19 pandemic. The government has carried out five executions since July 14, 2020, however, and witnesses and the press have been present at each of those executions. Watson Decl. ¶¶ 7, 12. Higgs does not identify any member of the public or press who wants to attend his execution but would not be able to do so if it is held in Indiana. And even if he could, such circumstances would not outweigh the factors that support carrying out his execution in Indiana. The government has a strong interest in the timely enforcement of capital sentences, *see Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019), and although certain members of

17

the public may be present to witness an execution, *see* 28 C.F.R. § 26.4(c), witnesses do not possess the right to require the Bureau of Prisons to schedule an execution when they are willing or able to attend, *see Peterson v. Barr*, 965 F.3d 549, 553 (7th Cir. 2020). Moreover, the Bureau of Prisons has established measures at FCC Terre Haute, in light of the COVID-19 pandemic, to protect those who visit and meet with capital defendants and those who attend the execution. Watson Decl. ¶¶ 10-12. If the execution were to take place in Virginia, where the government does not maintain a federal facility to carry out executions, it is uncertain whether the Bureau of Prisons would be able to extend the same protective measures that it currently offers at FCC Terre Haute.[3]

Notably, the district court in *Sampson* emphasized that New Hampshire had "a uniquely strong interest in the punishment imposed on Sampson." 300 F. Supp. at 281. After committing two murders in Massachusetts—the murders for which he received the federal death penalty—Samson then traveled to New Hampshire, where he committed a third murder. *Id.* Samson was charged in New Hampshire with committing the third murder, and federal prosecutors introduced evidence about the third murder as an aggravating factor supporting the death penalty for the prior two murders in Massachusetts. *Id.* The court determined that executing Sampson in New Hampshire would "vindicate [that state's] interest in his being punished" for the third

---

[3] Courts have rejected attempts to delay executions as a result of COVID-19. *See Peterson*, 965 F.3d at 551; *United States v. Lee*, No. 97-CR-243, 2020 WL 3921174, at *5 (E.D. Ark. July 10, 2020).

murder. *Id.* Virginia, in contrast, is unconnected to the murders Higgs committed, and Virginia lacks an interest in carrying out his execution.

For all these reasons, the Court, in accordance with 18 U.S.C. § 3596(a), should designate Indiana, not Virginia, as the state that will supply the law and location for Higgs's execution. The federal facilities and employees responsible for carrying out federal executions are in Indiana. The government has carried out every execution since the enactment of the Federal Death Penalty Act in Indiana, and it has carried out five executions since July 14, 2020, with witnesses and the press present at each. Virginia, in contrast, permits death by electrocution, which could impede the government's ability to carry out Higgs's sentence. Virginia also lacks an interest in carrying out the execution and could effectively exercise veto power over Higgs's lawful federal death sentence.

## CONCLUSION

The Court should supplement the Judgment and Order it entered on January 9, 2001, or enter a new order, pursuant to 18 U.S.C. § 3596(a), designating Indiana as the state that will supply the law and location for implementing Higgs's death sentence.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:  _____/s/_____
Sandra Wilkinson
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on September 1, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

_____/s/_____

Sandra Wilkinson
Assistant United States Attorney
