**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | No. 98-cr-520-PJM |
| | : | |
| DUSTIN JOHN HIGGS | : | |

_____:

**SURREPLY MEMORANDUM IN OPPOSITION**
**TO MOTION TO AMEND JUDGMENT AND ORDER**

The Government's reply in support of its motion to amend the judgment does nothing to undermine Mr. Higgs's response. The Government now concedes that the Court lacks authority to amend Mr. Higgs's judgment. It instead claims that Mr. Higgs's sentence—clearly delineated as such by this Court—is not actually his sentence. And it argues for the first time in the alternative that the Court can simply make an end-run around its lack of authority by entering a new order that would have the exact same effect as the Government's proposed amendment. The Government's position is meritless. The law is clear that the Court lacks authority to grant the relief requested by the Government; the Court should neither amend the judgment nor designate another state in which to implement Mr. Higgs's death sentence. Should the Court make such a designation, the Government continues to offer no compelling rationale for the selection of Indiana. For the reasons stated below and in Mr. Higgs's response, the Court should deny the Government's motion to amend the judgment.

1

**A.     The Government's reply supports Mr. Higgs's argument that the Court lacks authority to amend the judgment.**

The Government acknowledges in its reply that the Court lacks authority to modify Mr. Higgs's sentence, but claims that it has not asked the Court to do so. ECF No. 644 at 7-8. It instead claims that "the directives in the Court's written Judgment and Order regarding the procedures for implementing Higgs's death sentence—that Higgs be executed by lethal injection, for example, and that certain individuals, such as a spiritual advisor, be permitted to be present at the execution, ECF 640-1, at 3-6—are not a part of Higgs's sentence and therefore are not a part of the judgment." *Id.* at 8.

The Government's contention is flatly contradicted by the record. The judgment states that "the Defendant is sentenced as provided on pages 3-6 of this judgment as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14," which are the capital counts. ECF No. 640-1 at 2. The Court repeated this pronouncement at Mr. Higgs's oral sentencing. Tr. 1/3/01 at 14 ("As pronounced on October 26, 2000, you, the defendant, are sentenced as provided on pages three to six of this judgment, which I will read momentarily," as to the capital counts.) (attached as Exhibit 1). At the top of page three of the judgment, the word "sentence" is written in all capital letters, bolded and underlined. ECF No. 640-1 at 3. And in the header of pages three through seven (but not pages one or two), are the words "Judgment – Page [number] of 7." Yet the Government now claims that pages three through six "are not a part of Higgs's sentence." ECF No. 644 at 8; *see also id.* at 6 ("[T]he Court's directives regarding the implementation of Higgs's death sentence reside in the Court's

order not the judgment."). This is plainly wrong. The Court repeatedly stated, orally and in writing, that pages three through six of Mr. Higgs's judgment constitute his sentence.[1]

The decision in *Berman v. United States*, 302 U.S. 211 (1937), which the Government offers as support, instead fatally undermines the Government's argument because *Berman* emphasizes that the judgment and the sentence are one and the same. *See Berman*, 302 U.S at 212 ("Final judgment in a criminal case means sentence. The sentence is the judgment."); *accord Burton v. Stewart*, 549 U.S. 147, 156 (2007) (per curiam). The Government is requesting an alteration to what is unambiguously part of Mr. Higgs's sentence and, therefore, his judgment. The Court lacks jurisdiction or authority to alter it. *See Dillon v. United States*, 560 U.S. 817, 824 (2010).

The Government further suggests that it is simply requesting that the Court "supplement" the judgment by adding language that will not change or rescind anything in Mr. Higgs's sentence. ECF No. 644 at 8. This suggestion is similarly misplaced. *Berman* made clear that "[i]n criminal cases, as well as civil, the judgment is final for the purpose of appeal when it terminates the litigation between the parties on the merits and leaves nothing to be done but to enforce by execution what has been determined." *Berman*, 302 U.S. at 212-13 (internal quotations and citations omitted). For this reason, the *Berman* Court rejected the district court's attempt to resentence the defendant by adding a one-dollar fine to each count of conviction while otherwise not altering the initial sentence. *Id.* at 212, 214.

As the Government has again conceded, "[t]he U.S. Marshal cannot implement sentence based on a non-existent statute." ECF No. 640 at 2. The judgment is therefore now invalid as it

---

[1] The proposed order filed with the Government's motion specifically provides that the Court add language to the judgment after the second full paragraph of page three, approximately one-third of a page down from the "sentence" heading. *See* ECF Nos. 640-1 at 3; 640-2.

pertains to Mr. Higgs's death sentence and cannot be enforced absent the change now requested by the Government. Whether the Government describes this change as a supplement, amendment, modification, or something else is purely a matter of semantics. The fact remains that Mr. Higgs's death sentence cannot now be executed due to the intervening change in Maryland law. If the addition of a one-dollar fine is sufficiently meaningful to constitute a change in sentence, surely the addition of authority to execute someone where none currently exists is as well.

The Government alternatively requests, for the first time in its reply, that the Court may enter an entirely separate order that accomplishes the exact same thing as its proposed amendment. ECF No. 644 at 9. But this elevates form over function. If all that were required to evade the prohibition on amending final judgments was to enter a separate order that is not specifically titled "amended judgment," the prohibition would lose all meaningful effect. The Court should reject this attempted end-around – doubly so because the Government did not request this relief in its motion. *See Clawson v. FedEx Ground Package System, Inc.*, 451 F. Supp. 2d 731, 734 (D. Md. 2006) (The "ordinary rule in federal courts is that an argument raised for the first time in a reply brief or memorandum will not be considered.") (citing *United States v. Williams*, 445 F.3d 724, 736 n.6 (4th Cir. 2006)).

The Government also contends that the language of 18 U.S.C. § 3596(a) compels the Court to designate a new state now that Maryland no longer authorizes the death penalty. ECF No. 644 at 9-11. This argument is meritless. As Mr. Higgs has explained, this Court lacks the jurisdiction or authority to amend Mr. Higgs's sentence. Nothing in section 3596 changes that fact. The Government's view of what that section requires is therefore entirely beside the point.

Finally, the Government complains that the clear law that bars amendment of Mr. Higgs's judgment creates an absurd result that results in a windfall to Mr. Higgs. While Mr. Higgs disputes that the result is absurd and that spending the rest of one's life in federal prison constitutes a windfall, it is in any event a circumstance of the Government's own making.

As the Government points out, it proposed the language of Mr. Higgs's judgment pursuant to its own internal regulations. ECF No. 644 at 2-3. Nothing required the Court to adopt the Government's proposed judgment, and the fact that the Government's regulations turned out to have been ill-conceived is not attributable to Mr. Higgs. To the contrary, Mr. Higgs specifically objected to the Government's proposed judgment precisely because it was cumbersome and over-inclusive. *See* ECF No. 405 (copy attached as Exhibit 2)[2]; *see also* Exhibit 1 at 8 (incorporating letter).

Mr. Higgs pointed out that the Government's proposed judgment "far exceeds" the requirements of the Federal Rules of Criminal Procedure relating to judgments and that the mere fact that the Government's regulations require its attorneys to submit proposed judgments in a certain form "does not alleviate the significant legal issues associated with the proposed judgment and commitment and should in no way be construed to require (sic) the Court lacks discretion in preparing its own judgment and commitment." Exhibit 2 at 1, 2. Mr. Higgs in particular warned that "it is certainly not ripe for any judgment and commitment to contain items such as all of the execution process details." *Id.* at 2. Mr. Higgs instead requested that the Court enter a judgment and commitment "consistent with the sentencing procedures in this district." *Id.* at 3.

---

[2] Mr. Higgs has been unable to locate the filed copy of trial counsel's letter that constitutes ECF No. 405. Counsel believes Exhibit 2 is identical to the filed version of ECF No. 405. To the extent there are any discrepancies, the filed version would of course control.

While the fact that Maryland would subsequently abolish the death penalty as a matter of state law was perhaps unforeseeable at the time Mr. Higgs was sentenced, the fact that the form of the judgment would likely lead to legal problems in the future was clearly foreseeable and, in fact, foreseen. The Government cannot now attempt to fix its mistake via authority that this Court does not possess. The Government's motion should be denied.

**B.      The Government's rationale for designating Indiana is not compelling.**

Although the Government acknowledges that this Court has the authority to designate any state that maintains the death penalty under 18 U.S.C. § 3596(a), it claims that designating Virginia would constitute an "abuse of discretion." ECF No. 644 at 11. While the Court should not designate any state for the reasons stated above and in Mr. Higgs's response, it should certainly not designate Indiana.

The Government contends in support of its request to designate Indiana that designating Virginia would "likely impede" the Government from being able to carry out Mr. Higgs's execution. *Id.* at 13. The Government offers two reasons why this is so: because it does not maintain a facility in Virginia where it has the capacity to carry out an execution, and because Virginia permits capital prisoners to choose electrocution instead of lethal injection. *Id.* Neither argument is compelling.

First, the fact that the Government does not maintain an execution chamber on federal property in Virginia is not an insurmountable obstacle. As the Government acknowledges, it may use state facilities for this purpose. *Id.* (citing 18 U.S.C. § 3597(a)). Virginia maintains an execution chamber at the Greensville Correctional Center, where numerous executions have taken place. *See* https://deathpenaltyinfo.org/state-and-federal-info/state-by-state/virginia (last visited September 17, 2020).

The Government dismisses this possibility by suggesting that it could, as a practical matter, give Virginia veto power that would enable it to "nullify" Mr. Higgs's death sentence. ECF No. 644 at 13-14. The Government offers no support for this speculative proposition. Virginia authorizes the death penalty as a matter of state law, *see* Va. Code § 18.2-10(a), and has executed more individuals than any state other than Texas since the modern era of capital punishment began in 1976. *See* https://deathpenaltyinfo.org/executions/executions-overview/number-of-executions-by-state-and-region-since-1976 (last visited September 17, 2020). And while it is true that recent federal executions have taken place at USP Terre Haute, most federal executions had taken place in state facilities throughout the country prior to the creation of the federal death row in the late-1990s. *See* https://www.bop.gov/about/history/federal_executions.jsp (last visited September 17, 2020). The suggestion that Virginia would attempt to "nullify" a federal death sentence by refusing to cooperate is specious.

And even if Virginia were inclined to and successfully did bar the Government from using its execution chamber, the Bureau of Prisons maintains a high-security United States Penitentiary in Virginia, USP Lee. *See* https://www.bop.gov/locations/institutions/lee/ (last visited September 15, 2020). There is no doubt that the Government, with all of its resources, could figure out a way to conduct an execution in either a state or federal facility in Virginia.

Second, the Government claims that the fact that Virginia law permits death-sentenced prisoners to choose between death by lethal injection and electrocution would also likely impede it from carrying out Mr. Higgs's execution. ECF No. 644 at 13. But just two weeks after filing its reply in this matter, the Government represented in the federal lethal injection lawsuit in the United States District Court for the District of Columbia that it "will not execute any plaintiff

whose sentence was issued in federal court in Virginia" without complying with the requirement in Va. Code Ann. § 53.1-234 that permits death-sentenced prisoners to choose electrocution as the means of execution. *See Roane v. Barr*, No. 1:19-mc-00145-TSC (D.D.C.), ECF No. 247 at 5 (attached as Exhibit 3). The Government further explained that although the relevant federal regulation does not authorize electrocution unless required by court order, it has "proposed to amend the regulation so that federal executions may be carried out by lethal injection or by any other manner prescribed by the law of the State in which the sentence was imposed or which has been designated by a court in accordance with 18 U.S.C. § 3596(a)." *Id.* at 5 n.2. It made clear that "[i]f that change becomes part of a final rule (or a court order otherwise requires the use of electrocution for federal inmates sentenced in Virginia or South Carolina who have selected that method), there will be no legal impediment to implementing an inmate's choice of electrocution." *Id.*

There are currently seven federal death row prisoners who were sentenced in Virginia and four who were sentenced in South Carolina, which similarly permits the option of electrocution. *See* https://deathpenaltyinfo.org/state-and-federal-info/federal-death-penalty/list-of-federal-death-row-prisoners (last visited September 17, 2020); S.C. Code § 24-3-530(A). The Government has not explained why it will have no trouble complying with those state laws in other cases, but would be incapable of doing so in Mr. Higgs's case.

The remainder of the Government's argument in support of designating Indiana comprises a series of reasons why the Government would find it more convenient to conduct the execution there. ECF No. 644 at 11-12, 14. But the logistical and security concerns invoked by the Government are not weighty. It is the BOP's central mission to safely and securely house federal prisoners. *See* https://www.bop.gov/about/agency/agency_pillars.jsp (last visited

September 17, 2020). Accomplishing this mission routinely involves prisoner transportation for a variety of reasons; Mr. Higgs has been transported off the grounds of USP Terre Haute on multiple occasions to receive outside medical treatment, for example. The Government does not allege that Mr. Higgs poses any unique security risk aside from simply being on death row. And whatever additional risks or logistical challenges may be present are outweighed by the benefits of holding the execution in a place that is more conveniently located for the most directly affected parties in this case.

Lastly, the Government notes that the Bureau of Prisons has adopted measures to protect visitors and execution attendees at the Terre Haute Federal Correctional Complex from COVID-19. *See* ECF No. 644 at 18. It alleges that "it is uncertain whether the Bureau of Prisons would be able to extend the same protective measures that it currently offers at FCC Terre Haute" were the execution to take place in Virginia. *Id.* While the Government has identified certain protective measures it has been taking at FCC Terre Haute, they are clearly not working. Two prisoners have died there just this week and, as of yesterday, fifty-three prisoners and one staff member have confirmed cases of COVID-19. *See* Michael Balsamo, *2 dead of virus at US prison where executions are scheduled*, WASHINGTON POST, Sept. 15, 2020, *available at* https://www.washingtonpost.com/politics/2-dead-of-virus-at-us-prison-where-executions-are-scheduled/2020/09/15/b2b1ef12-f7a1-11ea-85f7-5941188a98cd_story.html (last visited September 17, 2020); *see also* https://www.bop.gov/coronavirus/ (last visited September 17, 2020).

The Government has offered no compelling reason to designate Indiana, and the Court should instead designate Virginia to the extent it has authority to do so.

WHEREFORE, for the reasons stated above and in Mr. Higgs's response, the Court should deny the Government's motion to amend the judgment. To the extent any source of authority permits the Court to do so, it should designate Virginia as the state in which to implement Mr. Higgs's execution.

Respectfully submitted,

| | |
|---|---|
| /s/ Matthew C. Lawry | /s/ Stephen H. Sachs |
| Matthew C. Lawry | Stephen H. Sachs |
| Federal Community Defender Office | Roland Park Place |
|    for the Eastern District of Pennsylvania | 830 W. 40th Street, Apt. 864 |
| Curtis Center, Suite 545-West | Baltimore, MD 21211 |
| 601 Walnut Street | (410) 243-4589 |
| Philadelphia, PA 19106 | stephenhsachs@gmail.com |
| 215-928-0520 | |
| Matthew_Lawry@fd.org | |

Dated: September 18, 2020

## CERTIFICATE OF SERVICE

I, Stephen H. Sachs, hereby certify that on this 18th day of September, 2020, I electronically filed the foregoing document using the Court's CM/ECF system. Electronic notice will be provided to the following individuals:

Sandra Wilkinson
Debra Dwyer
Office of the United States Attorney
36 S. Charles St., Fourth Floor
Baltimore, MD 21201

James Crowell, IV
United States Department of Justice
Executive Office for United States Attorneys
950 Pennsylvania Ave., NE, Room 2443
Washington, DC 20530

Sujit Raman
Office of the United States Attorney
6500 Cherrywood Lane, Ste. 400
Greenbelt, MD 20770

/s/ Stephen H. Sachs
Stephen H. Sachs