1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

SOUTHERN DIVISION

UNITED STATES OF AMERICA

VS.                          CRIMINAL NO. PJM-98-0520

DUSTIN JOHN HIGGS

DEFENDANT

Greenbelt, Maryland

January 3, 2001

The above-entitled case came on for trial before the Honorable Peter J. Messitte, United States District Judge

SENTENCING

A P P E A R A N C E S

For the Government:

    Deborah A. Johnston, Esquire
    Sandra Wilkinson, Esquire

For Defendant Higgs:

    Harry J. Trainor, Jr., Esquire
    Timothy J. Sullivan, Esquire

Gail A. Simpkins, RPR
Official Court Reporter

P R O C E E D I N G S

THE CLERK:  The matter now pending before this Court is Criminal Action Number PJM-98-0520, United States of America versus Dustin John Higgs.  The matter now comes before the Court for sentencing.

THE COURT:  Counsel, identify yourselves for the government and defendant, please.

MS. JOHNSTON:  Good morning, Your Honor, Deborah Johnston and Sandra Wilkinson for the government.  Seated with us at counsel table is Captain Robert Rule of the Park Police.

MR. TRAINOR:  Good morning, Your Honor, Harry Trainor and Timothy Sullivan representing Dustin Higgs, who is present.

THE COURT:  All right.  Are there any preliminary matters before counsel speaks for disposition?

MR. TRAINOR:  We have objection to the judgment that we --

THE COURT:  Why don't we take that up when we get to that point.  Let me start with the government's statement.  Ms. Johnston.

MS. JOHNSTON:  Your Honor, we have no objections to the presentence report.  If the Court wants to hear us, I'll be glad --

THE COURT:  Well, with regard to the presentence

report, are there any objections that you want to state to that, Mr. Sullivan?

MR. SULLIVAN:  Your Honor, Mr. Higgs and I have had the opportunity to carefully review the presentence report.  There are no substantive additions or modifications that we wish to make at this point.

THE COURT:  All right.  I will hear you on disposition, Ms. Johnston.

MS. JOHNSTON:  Your Honor, I believe in terms of disposition in this case that first and primarily, the jury in this case spoke to disposition on the murder counts and the kidnapping counts when they returned a verdict of a death sentence.  We believe that the Court is required by law to impose that sentence.

In addition to that, the government believes that that is an appropriate sentence in this case for the actions of Mr. Higgs because, quite frankly, but for the actions of Mr. Higgs on that night almost five years ago, there would be three young women who would still be alive today and they were sisters, daughters, aunts and nieces to a number of people who have lost them.

So as a result of Mr. Higgs' actions, I think the jury has, we think the jury has returned an appropriate verdict and we ask the Court to impose a sentence of

death on those counts.

In addition to that, the defendant was convicted of a violation of 924(c), that being the use of a firearm in the commission of a crime of violence.  The statute also mandates the sentence for those convictions.

In terms of Count 5 of the first conviction for use of a firearm, the sentence is five years, to be served consecutively to any terms that the defendant is now serving.

The subsequent counts, Count 10 and 15, the sentence on those counts should be 20 years each, and under the statute those sentences are also to run consecutive to each other, as well as to any sentences the defendant is now serving.  We would ask the Court to impose those sentences as required by law.

In addition to that, Your Honor, the Court would ask -- the government would ask the Court to impose restitution as set forth in paragraph 107 of the presentence report.  We do that although the Court is going to impose a sentence of death, because under the current guidelines of the Federal Bureau of Prisons, the defendant will be housed at the United States Penitentiary in Terre Haute, Indiana in the special confinement unit.

However, the defendant may, depending on his behavior at that unit, be allowed at some point during his stay to work. It is the government's position that he should be ordered to pay restitution so that if he has the opportunity to work, he will be reminded of why he is working, and that is to make restitution to the victims. So we would ask the Court to order restitution as provided in paragraph 107 of the presentence report.

THE COURT: Mr. Trainor.

MR. TRAINOR: Your Honor, just very briefly. We obviously do not agree that the imposition of a death sentence is appropriate. However, we submit on the remaining arguments.

THE COURT: Mr. Higgs, the Court will give you an opportunity now to speak if you choose to.

MR. SULLIVAN: Your Honor, Mr. Higgs has nothing to say to the Court.

(Pause.)

THE COURT: Counsel, if you would come up for a moment, please

(Counsel approached the bench and the following ensued.)

THE COURT: I want you to understand what the format is going to be. I will give you an opportunity

before I make my remarks to make your objections.

MR. TRAINOR:  Your Honor, there is one thing that I noticed that counsel didn't mention in chambers that I would like to tell the Court.

THE COURT:  Do you want to do it at the bench or do you want to do it out loud?

MR. TRAINOR:  Well, I just didn't want to surprise anybody.  I just think that this language, except to the extent a court orders otherwise, in the C.F.R. precedes everything that follows.  What the government has done in this judgment has moved this, unless the President interposes language above that.  I think that --

MS. JOHNSTON:  I don't think that is a problem. The sentence, unless the President interposes, has to do with the prisoner filing a petition for executive clemency.  That is the power of the President, to take action in terms of the executive clemency.

MR. TRAINOR:  Perhaps the Court could not order a stay under those circumstances.

THE COURT:  It seems to me I can order a stay under anything.  That's really the reality.

MR. TRAINOR:  I'll just --

THE COURT:  All right

MR. SULLIVAN:  Judge, one quick thing I forget to

mention.  I don't want to tilt the windmills, but I just want to --

THE COURT:  Please have no conversations, folks.

MR. SULLIVAN:  There is no sense to belabor this, but I just want to preserve the record on the 924(c) and our objection that they should not run consecutive.  I'm aware of the Deal came and the Camp case in the Fourth Circuit.  Given this was one predicate offense, I know the law is different, but God knows what the law will be in the future, that it is inappropriate to run the second or subsequent convictions under 924(c) consecutive.  They should not run that way.  It should be one offense.  I just want to preserve the record.

MS. JOHNSTON:  Your Honor, our position is they are not one predicate offense.

THE COURT:  I think we have gone over this several times.

MS. JOHNSTON:  As we did in the other case.

(Counsel returned to the trial tables.)

THE COURT:  Counsel, there has been submitted to the Court a proposed judgment and order in this case, specifically as to the death counts.  The Court has discussed with counsel the way in which the handgun counts would be imposed, all this really being

obligatory under the law.  The Court has no discretion in the matter.

But, Mr. Trainor and Mr. Sullivan, the Court notes that with regard to the proposed judgment and order that has been submitted by the government, that the defendant did have an objection.  At this time I would like you to state your objection for the record.

MR. TRAINOR:  Thank you, Your Honor.

We have reviewed the judgment and commitment order that has been proposed by the government and we have the following objection.  Actually I would like to incorporate the notice of filing and letter that was dated November 30th and filed in this case on December 1st of 2000.

THE COURT:  This is the letter to Ms. Johnston and Ms. Wilkinson?

MR. TRAINOR:  That is correct, Your Honor.  That sets forth some of our arguments.

Essentially it is our position that particularly beginning with page four of the proposed judgment and commitment, at line five, which begins unless the President interposes, and following through page six to all but the final paragraph on page six, we would object to that language in that it goes beyond what is required by Rule 32 of the Federal Rules of Criminal

Procedure or by the relevant statute.  It goes beyond what is appropriate under the circumstances.

It deals with matters that are essentially Executive Branch functions.  It is an effort, I think, to incorporate the current C.F.R. administrative regulations of the Department of Justice into the judgment and commitment.  It is our position that that would be essentially arbitrary, capricious, to be cruel and unusual.  It is an improper delegation of executive function, a violation of separation of powers and could be also a violation of due process.

I am concerned about the language except to the extent a court orders otherwise and the fact that in the proposed order and commitment the language unless the President interposes, and the business about the stay that follows could be misinterpreted.  So we object to that language.

THE COURT:  Ms. Johnston.

MS. JOHNSTON:  Your Honor, the government has complied with the C.F.R., found at 28 C.F.R. 26.  I think it is .1 through .6.

In addition to that, in the Fourth Circuit, in the case of United States versus Tipton, found at 90 F.3d 861, although there the court was dealing with a death penalty in a Title 21 case in which the court,

the trial court had issued a stay because Congress didn't authorize a method of execution, in reaching its conclusion, the Fourth Circuit remanded with instructions to enter appropriate orders for the execution in accordance with the regulation promulgated by the Attorney General.

So we believe that there is ample authority for this Court to enter the order as drafted, which is in compliance with the regulations and in accordance with the Fourth Circuit statement in Tipton.

THE COURT:  Well, I have considered the defendant's argument and the government's response.  It is true that under the Code of Federal Regulations, 28 C.F.R., Section 26.1, et seq., that there is a proposed order that the Court should enter in death penalty cases, and the Court is satisfied that the proposed order in this case does conform to the Code of Federal Regulations.

Whether or not those regulations might be changed at some point, obviously there is a safety valve in the order that permits counsel to come back to court and modify.

There is really no practical prejudice, as the Courts sees it now, with regard to incorporating the language of the Code of Regulation which indicates

exactly how the death penalty would be executed.

So the Court will, taking note of the defendant's objection, overrule it, but your record is made with regard to it.

Mr. Higgs, the community has rendered the most severe judgment against you that it is capable of rendering, and it has done so because you have committed terrible crimes. There is little more to be added to the indignation of the jury in what I say to you.

I am going to read to you a rather, in lengthy fashion, what the court sentence is and how the death penalty will be carried out.

I might say that there has been a lot of discussion nowadays about the death penalty and whether it is appropriate, often based on the concern about whether the person who is convicted of the crime in fact committed it. Here, there is absolutely no doubt that you committed this crime, these crimes, these terrible crimes. You are a murderer and that's the way you and, unfortunately, people associated with you and your family will ever be remembered.

I close with you, as I closed in your colleague's case, Mr. Haynes, which is that it would be inappropriate for you to be the last word here. The

last word really belongs to these young women and their families. They will always be remembered as young women who were vibrant and whose lives were ended. You will always be remembered as a cold-blooded murderer and unfortunately, that taint will remain with your family and relatives forever. They didn't deserve that. These girls didn't deserve what they got.

If you will stand, please, sir.

The Court is now going to read the judgment and order with regard to the death penalty cases, counts rather. Then I will make a separate statement regarding the handgun counts.

You, the defendant, Dustin John Higgs, were represented by Harry Trainor of Knight, Manzi, Nussbaum & LaPlaca, at 14440 Old Mill Road, Upper Marlboro, Maryland 20772 and Timothy J. Sullivan, Esquire, with Sullivan & Sullivan at 7305 Baltimore Avenue, Suite 301, College Park, Maryland 20740-3234.

You, the defendant, were found guilty on Counts 1 through 15 by a jury after a plea of not guilty. Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14 are offenses punishable by death. Accordingly, you, the defendant, are adjudged guilty of such counts involving the following offenses.

Under 18 United States Code, Section 1111, first

degree premeditated murder of Tamika Black, an offense concluded on January 27, 1996, Count 1; next, Count 2, in violation of 18 United States Code, Section 1111, first degree murder of Tamika Black, which occurred during the perpetration or attempted perpetration of a felony, namely, kidnapping, again, concluded on January 27, 1996; Count 4, in violation of 18 United States Code, Section 1201(a)(2), the kidnapping of Tamika Black, which resulted in her death, concluded on January 27, 1996; Count 6, in violation of 18 United States Code, Section 1111, the first degree premeditated murder of Mishann Chinn, concluded on January 27, 1996; Count 7, in violation of 18 United States Code, Section 1111, the first degree murder of Mishann Chinn, which occurred during the perpetration or attempted perpetration of a felony, namely, kidnapping, concluded on January 27, 1996, Count 9, in violation of 18 United States Code, Section 1201(a)(2), the kidnapping of Mishann Chinn, which resulted in her death, concluded on January 27, 1996; Count 11, in violation of 18 United States Code, Section 1111, the first degree premeditated murder of Tanji Jackson on January 27, 1996; Count 12, in violation of 18 United States Code, Section 1111, the first degree murder of Tanji Jackson, which occurred during the perpetration

or attempted perpetration of a felony, namely, kidnapping, which concluded on January 27, 1996, and Count 14, in violation of 18 United States Code, Section 1201(a)(2), kidnapping of Tanji Jackson, which resulted in her death, concluded on January 27, 1996.

As pronounced on October 26, 2000, you, the defendant, are sentenced as provided on pages three to six of this judgment, which I will read momentarily, as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14. The judgment as to Counts 5, 10 and 15, the handgun counts, will be entered in a separate order.

The sentence as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14 is also imposed pursuant to Title 18 United States Code, Sections 3591 through 3597, including particularly sections 3594 and 3596.

It will be ordered that you pay to the United States a special assessment of a hundred dollars for Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14, which shall be due immediately.

The special assessment as to Counts 5, 10 and 15 will be addressed in a separate order.

This is the sentence.

Based upon the special findings and decision of the jury on October 26, 2000, pursuant to the conviction of you, the defendant, Dustin John Higgs,

under Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14, the Court hereby imposes upon you a sentence of death as to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14.  I will not impose a fine due to your inability to pay.

This sentence shall be executed by a United States Marshal, designated by the Director of the United States Marshal Service.  The sentence shall be executed by intravenous injection of a lethal substance or substances in a quantity sufficient to cause death.

The sentence shall be executed on a date and at a place designated by the Director of the Federal Bureau of Prisons, which date shall be no sooner than 60 days from the entry of the judgment of death.

If the date designated for execution passes by reason of a stay of execution, then a new date shall be designated promptly by the Director of the Federal Bureau of Prisons when the stay is lifted at a federal penal or correctional institution designated by the Director of the Federal Bureau of Prisons by a United States Marshal designated by the Director of the United States Marshal Service, assisted by additional personnel selected by the Marshal and the Warden of the designated institution and acting at the direction of the Marshal, and by intravenous injection of a lethal substance or substances in a quantity sufficient to

cause death, such substance or substances to be determined by the Director of the Federal Bureau of Prisons and to be administered by qualified personnel selected by the Warden and acting at the direction of the Marshal.

Unless the President interposes, the United States Marshal shall not stay execution of the sentence on the basis that the prisoner has filed a Petition for Executive Clemency.

Except to the extent that a court orders otherwise, the Warden of the designated institution shall notify the prisoner under sentence of death of the date designated for execution at least 20 days in advance, except when the date follows a postponement of fewer than 20 days of a previously scheduled and notice date of execution, in which the case the Warden shall notify the prisoner as soon as possible.

Beginning seven days before the designated date of execution, the prisoner shall have access only to his spiritual advisors, not to exceed two, his defense attorneys, members of his family, and the officers and employees of the institution.  Upon approval of the Federal Bureau of Prisons, the Warden may grant access to such other proper persons as the prisoner may request.

In addition to the Marshal and the Warden, the following persons shall be present at the execution:

Necessary personnel selected by the Marshal and Warden; two, those attorneys of the Department of Justice whom the Deputy Attorney General determines are necessary; three, not more than the following number of persons selected by the prisoner, one spiritual advisor, two defense attorneys, three adult friends or relatives, and not more than the following members of persons selected by the Warden, eight citizens and ten representatives of the press.

No other person shall be present at the execution, unless leave for such person's presence is granted by the Director of Federal Bureau of Prisons. No person younger than 18 years of age shall witness the execution.

The Warden should notify those individuals described in paragraph C of this order, of this section rather, as soon as practicable before the designated time of the execution. No photographic or other visual or audio recording of the execution shall be permitted.

After the execution has been carried out, qualified personnel selected by the Warden shall conduct an examination of the body of the prisoner to

determine that death has occurred and shall inform the Marshal and Warden of his determination.

Upon notification of the prisoner's death, the Marshal shall complete and sign the return hereunder or any similar document and shall file such document with the sentencing court.

The remains of the prisoner shall be disposed of according to the procedures established by the Director of the Federal Bureau of Prisons. No officer or employee of the Department of Justice shall be required to be in attendance at, or to participate in any execution if such attendance or participation is contrary to the moral or religious convictions of the officer or employee, or if the employee is a medical professional who considers such participation or attendance contrary to medical ethics.

For purposes of this section, the term participation includes personal preparation of the condemned individual and the apparatus used for execution, and supervision of the activities or other personnel in carrying out such activities.

The Defendant, Dustin John Higgs, is hereby committed to the custody of the Attorney General or her authorized representative for appropriate detention pending exhaustion of the procedures for appeal of the

judgment of conviction and for review of the sentence and pending execution of this sentence.

I sign this now, January 3, 2001.

This is followed by a return to be executed by the U.S. Marshal when the sentence is imposed.

There is a separate judgment that the Court now enters with regard to the handgun counts, having imposed the death sentence with regard to Counts 1, 2, 4, 6, 7, 9, 11, 12 and 14.

With regard to Count 5, the Court imposes a sentence of five years consecutive to all sentences that are currently being served in this case and consecutive to the death sentence that has been imposed in each of counts, the counts referred to previously. To the extent that the Court makes death sentences consecutive, the Court does so.

With regard to Count 10, also a handgun count, the Court impose as term of 20 years consecutive to its sentence in Count 5.

With regard to Count 15, the Court imposes a term of 20 years consecutive to Count 10.

Now there is some theoretical possibility that for some reason the sentence of death might not be carried out and the defendant some day might be released; although, that is not the way the law reads

today.

As a further precaution in the matter, should the defendant be released, the Court sentences the defendant to three years supervised release as to Counts 5, 10 and 15, with special conditions of participating in a substance and/or alcohol abuse program, which may include evaluation, counseling and testing, as deemed necessary by the probation officer.

There is a special assessment fee of $750 that is due and payable at this time.

The Court imposes no fine by reason of inability to pay. However, the Court does impose a restitution term in the amount of $13,687.22 in the following amounts:

$3,850 for the representative of Tamika Black, $5,114.09 for the representative of Mishann Chinn, and $4,723.13 for the representative of Tanji Jackson.

Because of the financial, the Bureau of Prisons Inmate Financial Responsibility Program, the Court believes that you are able to make payments in installments of $50 each during the term of your imprisonment. Restitution would be payable through the Financial Litigation Unit of the U.S. Attorney's Office in Baltimore.

Any payments that are made, any payment made that

is not a payment in full will be divided proportionately among the persons named.

Is there anything further from the government?

MR. JOHNSTON:  Your Honor, just so that the record is clear, I believe in the judgment and order for the sentence of death, on page two, it says a special assessment of a hundred dollars.  That should say $50 because this crime happened in January of 1996.

THE COURT:  The total is $750.

MS. JOHNSTON:  That total, $750, is on all of the counts.

THE COURT:  Right.

MS. JOHNSTON:  I believe the Court ordered $50 and I don't think that --

THE COURT:  I didn't hear that.

MS. JOHNSTON:  I believe the Court ordered payments in the restitution of $50.

THE COURT:  $50 per month.

MS. JOHNSTON:  I didn't hear what the term was.

THE COURT:  If I didn't speak that clearly.

MR. TRAINOR:  Is the restitution joint and several, Your Honor, with Mr. Haynes?

THE COURT:  The restitution?

MR. TRAINOR:  Would that be joint and several with Mr. Haynes?

THE COURT:  If that is the way it was ordered in the earlier case.  It would be joint and several. That's is right.  I will make the change on page two.

All right.  Is there anything further from either the government or defendant?

MR. TRAINOR:  Nothing further, Your Honor.

THE COURT:  Ms. Johnston.

MS. JOHNSTON:  Your Honor, I believe that there are only 12 counts of conviction, so that the special assessment should be $600.  There were three counts that were alternative counts that we are not proceeding on.  So there were 12 counts of conviction, four counts for each victim, Your Honor.  So it should be $600 for the special assessment as opposed to $750.

THE COURT:  I will accept that.  Anything further?

MR. TRAINOR:  Nothing from the defense, Your Honor.

THE COURT:  All right.  Thank you.

(The proceeding concluded.)

## REPORTER'S CERTIFICATE

I hereby certify that the foregoing transcript in the matter of United States of America vs. John Dustin Higgs, Defendant, Criminal Action No. PJM-98-0520, before the Honorable Peter J. Messitte, United States District Judge, on January 3, 2001 is true and accurate.

Gail A. Simpkins

Official Court Reporter